Judge_PENN, J.

21-90-99
#1
17/52-99/3

# CRIMINAL CASE NO. 85-**0033**

## UNITED STATES

vs.

1. _George A. Nader_

2. _____

3. _____

4. _____

5. _____

| DEPOSITIONS |  |
|---|---|
| TRANSCRIPTS |  |
| EXHIBITS |  |

2 Counts

**CHARGE:** 18:1461, 1462, 2. Mailing obscean Matter, transportation of Obscene Matter & Aiding & abetting

G. Atty.:_____

1. Bond: $_____, Surety:_____, Atty.:_____

2. Bond: $_____, Surety:_____, Atty.:_____

3. Bond: $_____, Surety:_____, Atty.:_____

4. Bond: $_____, Surety:_____, Atty.:_____

5. Bond: $_____, Surety:_____, Atty.:_____

| DATE | COURT CLERK'S MEMORANDUM | JUDGE |
|---|---|---|
| **JAN 29 1985** | PRESENTMENT AND INDICTMENT FILED | |
| 2·11·85 | Arr: PNG, status call set 3-4-85, mos to be filed by 3-4-85; deft rel on PR (Present: deft, AUSA Behr & Maslinvar) (Rep: C. Reliavick) | Penn, J |
| 3·4·85 | Status call: further status call set 4·1·85, deft has until 3·25·85; Court makes finding excluding time from 3·4·85 to 4·1·85 purs to STA. rel deft PR. (Present: deft, AUSA Behr & Pewick) (Rep: J. McGinn) | Penn, J |
| 4·1·85 | Status call: Gov't to respond to mos by 4·22·85, hrg on mos set 5·6·85 at 10:30 am, deft PR (Present: deft, AUSA Behr & Covich) (Rep: J. McGinn) | Penn, J |

5-6-85   Mot. Hearing cont'd to 5-7-85 at 1:30pm. (Rep. J. McGinn)   Penn, J

5-7-85   Mo. to suppress heard and taken under advisement; deft PR.
Present deft, AUSA Behr, Pavick + Hoffman (Rep. J. McGinn Penn, J

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,          :

        Plaintiff          :

     vs.          :          Criminal No. 85-00033

GEORGE A. NADER,          :

        Defendant.          :

_____          :

## PRAECIPE

**FILED**

FEB  5 1985

**JAMES F. DAVEY, Clerk**

Will the Clerk of Court please enter the appearance of
Gwynneth M. Moolenaar, Attorney At Law, 1101 Fourteenth St.,
N. W., Suite 1000, Washington, D.C.  20005, as counsel for
the Defendant.

                Respectfully Submitted,

                Gwynneth M. Moolenaar
                1101 Fourteenth St. N.W.
                Suite 1000
                Washington, DC   20005
                (202) 289-7777
                269738

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Praecipe was
served on Mr. Douglas J. Behr, Assistant United States Attorney,
United States Attorney's Office, Constitution Ave. and 3rd St., NW
Washington, DC  20001, on this 5th day of February, 1985, by First
Class Mail, postage prepaid.

COURTRAN

                Gwynneth M. Moolenaar

United States of America

v.

Geo. NADER
*Defendant's name*

Case No. 85-33

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

2019 Conn. Ave. N.W., W.D.C.
*Defendant's address*

(w) 296-4948
(H) 234-7211
*Defendant's phone no.*

### YOU ARE RELEASED ON THE FOLLOWING ADDITIONAL CONDITIONS INDICATED BELOW:

| | | | |
|---|---|---|---|
| **PERSONAL PROMISE** | ☒ | **PERSONAL RECOGNIZANCE.** Your personal recognizance, provided that you promise to appear at all scheduled hearings, trials, or otherwise as required by the Court. | |
| **MONEY BOND** — OF — $ | ☐ | **UNSECURED APPEARANCE BOND.** Your personal unsecured appearance bond, to be forfeited should you fail to appear as required by the Court. | **FILED** |
| | ☐ | **CASH BOND.** Upon execution of appearance bond, to be forfeited should you fail to appear as required by the Court, secured by a deposit, such deposit to be returned when the Court determines you have performed the conditions of your release. You will deposit in the registry of the Court _____%. | FEB 11 1985 |
| | ☐ | **SURETY BOND.** Upon execution of appearance bond with approved surety. | JAMES F. DAVEY, Clerk |

### YOU ARE HEREBY RELEASED ON THE CONDITIONS INDICATED BELOW:

| | | |
|---|---|---|
| ☐ 1) | **SUPER-VISORY CUSTODY** | You hereby agree to be placed in the custody of _____ who agrees (a). to supervise you in accordance with the conditions below, (b). to use every effort to assure your appearance at all scheduled hearings, trials, or otherwise, and (c). to notify the D.C. Pretrial Services Agency immediately in the event you violate any condition of release or disappear. Agency telephone — 727-2800. |

Custodian's name
Custodian's address

► SIGNATURE OF CUSTODIAN                         Custodian's phone no.

| | | |
|---|---|---|
| ☒ 2) | **YOU ARE TO REPORT** | ☐ weekly  ☒ twice weekly *other-specify*  ☐ in person  ☒ by phone **TO**  ☒ THE D.C. PRETRIAL SERVICES AGENCY AT 727-2800.  ☐ Your attorney, whose name and address is shown below. |
| ☒ 3) | **YOU ARE TO LIVE** | ☒ at 2019 Connecticut Ave. N.W., WASH. DC *address*  234-7211 *phone no.*  ☐ with _____ *name and relationship to defendant* _____ *phone no.*  ☐ at _____ *address* _____ *phone no.* being in at night by _____ P.M. *time* |
| ☐ 4a) | **YOU ARE TO WORK** | ☐ by obtaining a job within _____ days and reporting it to the D.C. Pretrial Services Agency at 727-2800.  ☐ by maintaining your job at _____ *Employer's name and address* |
| ☐ 4b) | **YOU ARE TO STUDY** | ☐ by enrolling in school at _____ *name and address*  ☐ by maintaining your student status at _____ *name and address* |
| ☐ 5) | **YOU ARE TO STAY** | ☐ away from the complaining witness.  ☐ Within the D.C. area. |
| ☐ 6) | **NARCOTICS** | |
| ☐ 7) | **OTHER CONDITION** | COURTRAN |
| ☐ 8) | **REARREST** | Any rearrest on probable cause for any subsequent offense may result in revoking your present bond and setting it at |

You are further instructed that any violation of a condition of release may subject you to fine or imprisonment for contempt of Court. If you willfully fail to appear as required before a judge or other judicial officer you will be subject to prosecution under the Bail Reform Act, (18 USC  3150) and subject to the following penalties upon a finding of willfully failing to appear in Court: (IF FELONY CHARGE) a fine of not more than $5,000 or imprisonment for not more than 5 years or both; (IF MISDEMEANOR CHARGE) a fine of not more than the maximum provided for the offense with which you are presently charged or imprisonment for not more than one year or both.

| | | |
|---|---|---|
| **NEXT DUE BACK** | in Courtroom 17 at 930 AM on March 4, 1985 or when notified and you must appear at all subsequent continued dates. You must also appear | **YOUR ATTORNEY** Surgmeister Morleman  1101 (something) St N.W. Suite 1000  259-7777  Wash D _____ address 20005  *phone no.* |

| | |
|---|---|
| **DEFENDANT'S SIGNATURE** ✗ *George R. Nader* | I understand the penalties which may be imposed on me for willful failure to appear or for violation of any condition of release and agree to comply with the conditions of my release and to appear as required. |

WITNESSED BY _____                         (title and agency)

**IMPORTANT:** YOU ARE TO NOTIFY **IMMEDIATELY** THE D.C. PRETRIAL SERVICES AGENCY, 500 INDIANA AVE., N.W., FIRST FLOOR, TELEPHONE NUMBER 727-2800, OF ANY CHANGE OF ADDRESS, EMPLOYMENT, OR CHANGE IN STATUS OF ANY RELEASE CONDITIONS.

WHITE—TO COURT PAPERS
BLUE—TO DEFENDANT
GREEN—TO D.C. PRETRIAL SERVICES AGENCY
CANARY—TO DEFENSE ATTORNEY
PINK—TO U.S. ATTORNEY
GOLDENROD—TO JUDGE

Date Feb 11, 1985

► _____
**SO-ORDERED**
Signature of Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.                                        Criminal No. 85-0033

GEORGE A. NADER

FILED

FEB 12 1985

O R D E R

JAMES F. DAVEY, Clerk

The defendant appeared before the Court for arraignment on

February 11, 1985                    .  After giving consideration

to the representations made by counsel for the government and

counsel for the defendant, it is hereby

ORDERED:

1.  The parties and their counsel shall appear for a status

hearing on        March 4, 1985            at    9:30 a.m.       .

2.  The defendant shall file any motions on or before

                    March 4, 1985                              .

3.  At the status hearing, the parties shall be prepared

to set a date for a hearing on any pending motions and a date

for trial.

4.  That seven days prior to the date set for trial, the

parties shall file their proposed questions for voir dire

examination.

5.  That seven days prior to the date set for trial, the

parties shall file their proposed jury instructions.  Where

they request standard jury instructions, they need only cite the

Court to the instruction number in Criminal Jury Instructions

for the District of Columbia (Redbook).  Where they request

special instructions, they shall file a copy of the proposed



- 2 -

special instructions, together with any authority in support thereof.

6. That seven days prior to trial, the parties shall advise the Court of any unusual problems or requests, including, but not limited to, Fifth Amendment issues, Brady requests, etc.

7. That in the event the defendant is incarcerated, counsel for the defendant shall advise the Court not less than seven days prior to trial whether the defendant requests that arrangements be made to allow the defendant to change into regular clothing for all appearances before the jury.

Date:  FEB 1 2 1985


JOHN  GARRETT  PENN
United States District Judge

PRAECIPE

# United States District Court
## for the District of Columbia

the _____26th_____ *day of* _____February_____ / _____ 19_85

United States of America

|  | *vs.* |
|---|---|

George A. Nader

**FILED**

**FEB 27 1985**

**JAMES F. DAVEY, Clerk**

~~Civil~~/Criminal
*Action No.* 85-00033

*The Clerk of said Court will* Enter the appearance of David Povich
and Richard S. Hoffman of Williams and Connolly, as
counsel for the defendant.

839 Seventeenth Street, N.W.
*Address* Washington, DC 20006

*Phone No.* 331-5000

*Attorney for* Defendant

**COURTRAN**

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Praecipe was served on Mr. Douglas J. Behr, Assistant United States Attorney, United States Attorney's Office, Constitution Ave. and 3rd St., NW, Washington, DC  20001, on this 26th day of February, 1985, by First Class Mail, postage prepaid.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

FEB 27 1985

**JAMES F. DAVEY, Clerk**

United States of America      )
                              )
                              )
        v.                    )        Criminal No. 85-00033
                              )        Judge John Garrett Penn
                              )
George A. Nader               )        Motion for Extension of Time
                              )        For Filing Preliminary Motions
_____      )

          Defendant, George A. Nader, by and through his

undersigned counsel, hereby moves this court for an extension

of time to file preliminary motions in this matter from

March 4, 1985 until March 25, 1985 and requests that the status

conference currently scheduled for March 4 be rescheduled

accordingly.  In support of this motion defendant states as

follows:

          1.  Defendant's counsel, Williams & Connolly,

are newly retained as of February 19, 1985, and need additional

time to familiarize themselves with the facts of the case,

particularly the search conducted by the government which

yielded the material that is the subject of the indictment,

and the circumstances surrounding the purported statements

made by defendant to certain government agents.

          2.  From the limited amount of information presently

available to counsel, we believe that substantial and novel

questions of law and fact are present concerning the legality

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

of the search conducted in this case, the circumstances surrounding the purported statements made by defendant, and whether the statute under which Mr. Nader was indicted was intended to apply in the circumstances of this case.

3.   Defense counsel are currently meeting with the government informally to obtain the material necessary to adequately prepare and present preliminary motions and believe this process can be accomplished without the necessity of motions pursuant to Fed. R. Crim. P. 16.

4.   Defense counsel with primary responsibility for preparing preliminary motions has a longstanding commitment to be out of town from March 1 until March 9.

Defendant requests that this additional time for the filing of preliminary motions be excluded under the Speedy Trial Act pursuant to 18 U.S.C. § 1361(h)(8) on the grounds that, for the reasons set forth above, the ends of justice are served by granting the continuance.  A waiver of rights under the Speedy Trial Act executed by Mr. Nader is attached hereto.  We are authorized to say that the Assistant United States Attorney responsible for this case consents to the extension of time requested.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

Respectfully submitted,

WILLIAMS & CONNOLLY

By _____
David Povich
Richard S. Hoffman

839 Seventeenth Street, N.W.
Washington, D.C.  20006
(202) 331-5000

Attorneys for George A. Nader

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

-3-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

**FEB 27 1985**

**JAMES F. DAVEY, Clerk**

United States of America          )
                                  )
                                  )
        v.                        )     Criminal No. 85-00033
                                  )     Judge John Garrett Penn
                                  )
George A. Nader                   )
_____ )

## WAIVER OF RIGHTS UNDER SPEEDY TRIAL ACT

        I have reviewed the motion for an extension of
time to present preliminary motions filed by my attorneys and
I have discussed this motion with my attorneys.  I have no
objection to having the period of time from March 4, 1985
to March 25, 1985 excluded from computation under the Speedy
Trial Act.  I hereby waive any rights I might have under the
Speedy Trial Act for that period of time.

Date: 26 Feb. 85              _____
                              George A. Nader

Date: 2/26/85                 _____
                              David Povich
                                 Attorney for Defendant

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America        )
                                )
                                )
        v.                      )        Criminal No. 85-00033
                                )        Judge John Garrett Penn
                                )
George A. Nader                 )
_____)


ORDER

The motion of defendant George A. Nader for an
extension of time to file preliminary motions and accompanying
waiver by the defendant of his rights under the Speedy
Trial Act having been read and considered, and with the
consent of the attorney for the United States, it is this
_____ day of February, 1985,

HEREBY ORDERED that the time for defendant to file
preliminary motions is extended from March 4, 1985 to March 25,
1985 and the interests of justice being served and good
cause being shown such time is excluded from computation
under the Speedy Trial Act pursuant to 18 U.S.C. § 1361(h)(8).

                                _____
                                John Garrett Penn
                                United States District Judge

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice and Motion for an Extension of Time was served on Mr. Douglas J. Behr, Assistant United States Attorney, United States Attorney's Office, Constitution Ave. and 3rd St., NW, Washington, DC  20001, on this 26th day of February, 1985, by First Class Mail, postage prepaid.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America      )
                             )
                             )
        v.                   )      Criminal No. 8500033
                             )      Judge John Garrett Penn
                             )
George A. Nader              )      Notice of Motion
                             )
_____ )

To:  Douglas J. Behr, A.U.S.A.
     United States Attorneys Office
     Constitution Ave. and 3rd Street, N.W.
     Washington, D.C.  20001

Sir:

        PLEASE TAKE NOTICE that on February 27, 1985,

George A. Nader, through his undersigned attorneys, will

file before the Honorable John Garrett Penn, United

States District Court, Washington, D. C., a Motion For

Extension of Time For Filing Preliminary Motions in the

above case, a copy of which is attached.

                        Respectfully submitted,

                        WILLIAMS & CONNOLLY

                        By _____
                           David Povich
                           Richard S. Hoffman

                           839 Seventeenth Street, N.W.
                           Washington, D. C.  20006
                           (202) 331-5000

                        Attorneys for George A. Nader

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

COURTRAN

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FILED

MAR 1 3 1985

UNITED STATES OF AMERICA

JAMES F. DAVEY, Clerk

v.

Criminal No.  85-33

GEORGE A. NADER

O R D E R

The defendant appeared before the Court for arraignment on

February 11, 1985                    .  After giving consideration

to the representations made by counsel for the government and

counsel for the defendant, it is hereby

ORDERED:

1.  The parties and their counsel shall appear for a status

hearing on       April 1, 1985              at   9:30 a.m.       .

2.  The defendant shall file any motions on or before
March 25, 1985                                                       .

3.  At the status hearing, the parties shall be prepared

to set a date for a hearing on any pending motions and a date

for trial.

4.  That seven days prior to the date set for trial, the

parties shall file their proposed questions for voir dire

examination.

5.  That seven days prior to the date set for trial, the

parties shall file their proposed jury instructions.  Where

they request standard jury instructions, they need only cite the

Court to the instruction number in Criminal Jury Instructions

for the District of Columbia (Redbook).  Where they request

special instructions, they shall file a copy of the proposed



- 2 -

special instructions, together with any authority in support
thereof.

6.   That seven days prior to trial, the parties shall advise
the Court of any unusual problems or requests, including, but
not limited to, Fifth Amendment issues, Brady requests, etc.

7.   That in the event the defendant is incarcerated, counsel
for the defendant shall advise the Court not less than seven days
prior to trial whether the defendant requests that arrangements
be made to allow the defendant to change into regular clothing
for all appearances before the jury.

Date:   MAR 1 3 1985


JOHN GARRETT PENN
United States District Judge

**FILED**

**MAR 2 5 1985**

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 85-33 |
| v. | ) | Criminal No. ~~8500033~~ |
| | ) | |
| GEORGE A. NADER | ) | Judge John Garrett Penn |
| | ) | |
| _____ | ) | |

### STIPULATED MOTION FOR EXTENSION OF TIME

Defendant, George A. Nader, by and through his undersigned counsel, and the United States, hereby jointly move this Court for extension of time for defendant to file preliminary motions in this matter from March 25, 1985 to April 1, 1985.  The purpose of this extension is so that the parties can further explore a pre-trial disposition of this matter.

Defendant requests that this additional time be excluded under the Speedy Trial Act, pursuant to 18 U.S.C. § 3161(h)(1)(I) and (h)(8), for consideration of a possible plea agreement, and consents to such exclusion.

Respectfully submitted,

WILLIAMS & CONNOLLY

By _____
David Povich
Richard S. Hoffman
839 Seventeenth Street, N.W.
Washington, D.C. 20006
(202) 331-5000

Attorneys for George A Nader

JOSEPH DiGENOVA
UNITED STATES ATTORNEY

By _____
Douglas N. Behr
Assistant U.S. Attorney
United States Courthouse
Constitution Ave. & 3rd St., N.W.
Washington, D.C.  20006

-2-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA       )
                               )
        v.                     )        Criminal No. 8500033
                               )
GEORGE A. NADER                )
                               )        F I L E D
_____    )

                                        MAR 2 6 1985

              O R D E R                 JAMES F. DAVEY, Clerk

        The joint motion of the United States and the

defendant for an extension of time to file preliminary

motions having been read and considered, it is the ___25__

day of March, 1985,

        HEREBY ORDERED that time for defendant to file

preliminary motions is extended from March 25, 1985 to

April 1, 1985 and the interests of justice being served and

good cause being shown such time is excluded from computation

under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(I)

and (h)(8).

                        _____
                        JOHN GARRETT PENN
                        United States District Judge



U.S. Department of Justice
U.S. Attorneys

# United States District Court
# for the District of Columbia

UNITED STATES OF AMERICA      :

v.      :

GEORGE NADER      :    Case No.  85-33

      :

**FILED**

APR 1 1985

JAMES F. DAVEY, Clerk

## O R D E R

1. Upon a representation by the United States that the defendant has never been the subject of "routine processing" (booking, fingerprinting, photographing) in this case;

2. It is this ____1st____ day of ____APRIL, 1985____ ORDERED:

3. That if the defendant is released on bond that he or she be accompanied on ____4/1/85____ by ____Postal INspector Robert Northrop____ to the Central Cell Block of the Metropolitan Police Department, to the United States Marshal's Office and to ____Inspector Northrop's office____ ____ for "routine processing," and that this be a condition of being released on bond;

4. That if the defendant is not released on bond, the United States Marshal shall release the defendant to the custody of _____ for the purpose of "routine processing," and at the conclusion thereof to return the defendant to the custody of the Marshal.

_____
Judge (U.S. Magistrate)

CR-85 FILED

**SEARCH WARRANT INVENTORY**

**REPORT AND RETURN**

APR 1 1985

JAMES F. DAVEY, Clerk

The following list constitutes an official inventory of items seized from _Ho Brand (Cong.) (ub._

_Place B.P.B 2019 Connecticut Pr. NW Wind DC, Point_
(person, premises, conveyance)

on _4-12-84_ at _3:50_ p.m., as a result of a U.S. District Court Search Warrant
(Date)        (Time)

by the U.S. Postal Inspection Service _and the U.S. Customs Sept._

This search warrant inventory was prepared by Inspector _Sherwin Crown & Robt_
_Linden C/A USCS_ and in the presence of Inspector _A Martin, Lile Higgins_

U.S. Postal Inspection Service.

I hereby acknowledge receipt of a copy of the attached inventory as presented to me by a member
of the U.S. Postal Inspection Service.

_____          _4-12-84_
(Signature of Recipient)                          (Date)

☐ *NOTE:* Check block if location of search warrant was unoccupied and copy left in conspicuous
location.

_____

*(This section to be completed only on official return to issuing Judge)*

_____

I swear that this inventory is a true and detailed account of all the property taken by me on the
warrant.

_____
(Signature of Inspector)

Subscribed and sworn to and returned before me this _____ day of

_____ , 19 _____ .

_____
U.S. District Court Judge/Magistrate

District of _____

DISTRIBUTION
ORIGINAL COPY — Issuing Judge
YELLOW COPY — Inspector
PINK COPY — Recipient

ge __1__ of __4__

Item # __1__   PRIMARY LOCATION: _2019 Connecticut Ave NW, WDC, Nadir's B_

SPECIFIC LOCATION: _Blue Suitcase on the bottom Shelf_
_of cabinet right behind the door_

DESCRIPTION: _Numerous Obscene magazines, films, photos of_
_young boys_



Item # __2__   PRIMARY LOCATION: _2019 Connecticut Ave NW WDC. Naders Bedroom_

SPECIFIC LOCATION: _Man's dresser drawer, 2nd drawer from Top_


DESCRIPTION: _A gray Lenscaphone (Carrying case) containing_
_numerous Obscene magazines and films of young_
_boys_



Item # __3__   PRIMARY LOCATION: _2019 Connecticut Ave NW: WDC. Naders Bedroom_

SPECIFIC LOCATION: _Man's Dresser, Top drawer_


DESCRIPTION: _One Envelope And 3. addressed to Mark Nader_
_And 3, eight Milimeter movies_




Item # __4__   PRIMARY LOCATION: _2019 Connecticut Ave NW WDC. Naders Bedroom_

SPECIFIC LOCATION: _Mens Dresser 4th drawer from top_


DESCRIPTION: _One packs Records and Tape bag containing_
_2 eight milimeter movies_




PREPARER'S INITIALS _____

Item # __5__  PRIMARY LOCATION: 2019 Connecticut Ave NW/WDC Madison Room

SPECIFIC LOCATION: ___ Mens Dresser Bathroom Counter top

DESCRIPTION: A brown wallet and 1 "Master" American
bag #1152 with potentially other Miscellaneous articles
all taped together.

Item # __6__  PRIMARY LOCATION: 2019 Connecticut Ave. NW/WDC Madison Bedroom

SPECIFIC LOCATION: Mens Dresser Top of Dresser

DESCRIPTION: Black Picture Frame with Numerous Photo's in it.
Assorted pictures and negatives all in a red and white
photo package from the "Kelly Film Express lab" Roll # 35mm
used Film, Laboratory Receipts, Miscellaneous travel papers

Item # __7__  PRIMARY LOCATION: 2019 Connecticut Ave NW WDC Madison Bedroom

SPECIFIC LOCATION: Chair to the right of the dresser

DESCRIPTION: 4 photo albums, one Manilla package marked
Georgetown, and one gold picture frame with photos
all in a big bag marked "Games of the XX IIIrd Olympics"

Item # __8__  PRIMARY LOCATION: 2019 Connecticut Ave NW WDC Madison Bedroom

SPECIFIC LOCATION: Night stand to the right of the bed
on top

DESCRIPTION: 3 packages of film all taped together

PREPARER'S INITIALS _M Kroe_

ge _3_ of _4_

Item # _9_    PRIMARY LOCATION: 2011 Connecticut New, W.DC. Naders Bedroom

SPECIFIC LOCATION: Nite stand to the right of Naders bed.
2nd drawer of nite stand.

DESCRIPTION: A Photo sealed in plastic with the
"Normandy High School" "Invaders" Parma Ohio
on it.

Item # _10_    PRIMARY LOCATION: _____

SPECIFIC LOCATION: _____

DESCRIPTION: _____

Item # _____    PRIMARY LOCATION: _____

SPECIFIC LOCATION: _____

DESCRIPTION: _____

Item # _____    PRIMARY LOCATION: _____

SPECIFIC LOCATION: _____

DESCRIPTION: _____

PREPARER'S INITIALS _____

Item # __11__   PRIMARY LOCATION: _____

SPECIFIC LOCATION: _Desk along south wall, of 4th floor bed_
_room Commonwealth side of house_

DESCRIPTION: _Assorted magazines, books, advertising books,_
_photos, photos albumn, cassette tape, video tape,_
_clock books, letters, cordings papers-plate negative_

_NVR 4/12/84_

Item # __12__   PRIMARY LOCATION: _____

SPECIFIC LOCATION: _Books Color located along east wall_
_of 4th floor bed room on Comm Ave side of house_

DESCRIPTION: _Assorted cards childs tan_
_(material non-toxic)_  NVR
4/12/84

__RJR__
6-12-84

Item # __13__   PRIMARY LOCATION: _____

SPECIFIC LOCATION: _____

DESCRIPTION: _____
RJR 4/12/84

Item # __14__   PRIMARY LOCATION: _____

SPECIFIC LOCATION: _Leaded Chair Couch etc in_
_NE corner room_

DESCRIPTION: _Ca conf or all_
_names Freddy's blkt, blue willow cr..._
_leaves_   RJR
G   4/12/84

PREPARER'S INITIALS __RJR__

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          )
                                  )
                Plaintiff,        )          Criminal No. 85-00033
                                  )          Hon. John Garrett Penn
        v.                        )
                                  )
GEORGE A. NADER                   )
                                  )          FILED
                Defendant.        )
_____)        APR 1 1985

                                             JAMES F. DAVEY, Clerk


MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO SUPPRESS



                              WILLIAMS & CONNOLLY
                              David Povich
                              Richard S. Hoffman

                              839 Seventeenth Street, N.W.
                              Washington, D.C.  20006
                              (202) 331-5500

                              Attorneys for George A. Nader


LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---:|
| INTRODUCTION | | 1 |
| FACTUAL STATEMENT | | 2 |
| ARGUMENT | | 4 |
| I. | THE SEARCH OF DEFENDANT'S HOME WAS CONDUCTED PURSUANT TO AN UNCONSTITUTIONAL GENERAL WARRANT | 4 |
| II. | THE CUSTOMS SERVICE VIOLATED FEDERAL LAW IN THE INITIAL SEARCH OF THE ENVELOPE AND BY IGNORING MANDATORY FEDERAL PROCEDURES FOR THE SEIZURE OF ALLEGEDLY OBSCENE MATERIAL | 11 |
| | A. The Initial Border Search Was Contrary To Statute | 11 |
| | B. The Subsequent Delivery Of The Material Seized By Customs Officials Violated The Mandatory Procedures Of Federal Law | 14 |
| | C. The Government's Violation of Federal Law Requires The Suppression of Evidence Obtained In The Subsequent Search | 21 |
| III. | THE STATEMENTS ALLEGEDLY MADE BY THE DEFENDANT WERE THE FRUIT OF THE UNLAWFUL SEARCH | 27 |
| IV. | THE DEFENDANT'S STATEMENTS WERE OBTAINED AS A RESULT OF MATERIAL MISPRESENTATIONS BY GOVERNMENT AGENTS | 30 |
| CONCLUSION | | 34 |

EXHIBITS

     A.  Affidavit of Agent Donald Bludworth
     B.  Search Warrant
     C.  Search Warrant Inventory Report

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

## Introduction

The defendant, George A. Nader, has been charged in a two count indictment with importing and mailing obscene material in violation of 18 U.S.C. §§ 1461, 1462 (1980).  The indictment concerns a single envelope mailed to J. Nader at 2019 Connecticut Ave., N.W., containing four magazines, a film and one advertisement which the government alleges are obscene.  For the reasons set forth below, the material seized during a search of defendant's home and subsequent statements obtained from the defendant must be suppressed:  (1) the search of defendant's home was conducted pursuant to a general warrant in violation of the First and Fourth Amendments to the United States Constitution; (2) the envelope was seized by Customs agents without "reasonable cause" as required by federal law; (3) the envelope was subsequently delivered by Customs agents in New Jersey to agents in the District of Columbia in clear violation of a federal statute; (4) the statements which the government will allege were made by defendant were the direct result of the unlawful search and seizure; and (5) the defendant's statements were obtained as a result of material misrepresentations by government agents in violation of his Fifth and Fourteenth Amendment rights.

## Facts

On March 26, 1984, a Customs inspector in New Jersey, acting without a warrant, opened a sealed letter class envelope addressed to "J. Nader."  <u>See</u> Exh. A, Affidavit of Donald

LAW OFFICES
**WILLIAMS & CONNOLLY**
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

Bludworth ("Bludworth Aff."). According to the affidavit, inside the envelope was one eight millimeter film, four magazines and one advertisement which the Customs agent determined were obscene. Id. The envelope was resealed and sent to the Customs Service in Reston, Virginia where it was again inspected by agent Bludworth.

On April 10, certain of the material from the envelope was shown to a United States magistrate in Washington, D.C., presumably in preparation for issuance of a warrant. Two days later, an affidavit was filed in support of a warrant to search defendant's home. The affidavit described the contents of the envelope and also contained the hearsay statements of a second Customs agent that in "his experience" persons possessing the type of material described in the application "generally have a large quantity of pornographic material which is usually of foreign origin." Bludworth Aff. at 2.

After twice unsuccessfully attempting to deliver the envelope, the agents succeeded in having defendant's landlord[1] accept it. The affidavit discloses that delivery was made on April 12, 1984 at "1340 hours." Apparently, fifteen minutes later a warrant was issued. See Exh. B, Search Warrant Dated April 12, 1984, 1:55 p.m. The warrant authorized the seizure not only of the film and magazines particularly described, but also

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

---

1/ Defendant rents a room from an older couple in a private home.

of "other photographs, magazines, writings and documents which are evidence of violations of [the federal obscenity laws] Title 18, U.S. Code Section 1461 and 1462." Exh. B.

Immediately upon entry into the home, the agents discovered the envelope, containing all of the materials particularly described in the warrant, sitting unopened in the hallway of the home. The agents were told by defendant's landlord that Mr. Nader was out of town, first at the time the envelope was delivered and again fifteen minutes later when they entered to conduct the search. Three agents seized the envelope and proceeded to defendant's room where they searched all of his possessions and confiscated enough material to fill fourteen large plastic bags. Among the material seized were a number of magazines and books which the agents presumably thought were obscene. In addition, the agents seized the following items: newspaper articles; handwritten correspondence between the defendant and a number of people; the defendant's address book; a bag full of Christmas cards; undeveloped film; the defendant's personal photo album containing pictures of his travels and friends; a stuffed animal; and a toy truck.[2] With the exception of the contents of the envelope, none of the material seized from the

---

[2] This description is based upon counsel's inspection of the seized material at the United States Attorney's office. An inventory of the search was prepared and is attached, but it is largely illegible and fails to list much of what was seized. See Exh. C.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 3 -

premises was listed or particularly described in the agent's affidavit.

ARGUMENT

I.   THE SEARCH OF DEFENDANT'S HOME
     WAS CONDUCTED PURSUANT TO AN
     UNCONSTITUTIONAL GENERAL WARRANT.

The warrant issued in this case is a classic invalid general warrant permitting the government agents to rummage unfettered through defendant's home and make discretionary judgments about what he should or should not read.  The agents in this case made full use of their unconstitutional authority.  After seizing the package that contained the only items described with particularity in the warrant from a downstairs hallway in the home, they proceeded to tear apart defendant's room, overturning the carpeting, upending the bed, and taking whatever suited their fancy.  They seized eleven large bags of written and printed material, including personal correspondence, family photo albums, children's toys, heterosexual adult magazines and a variety of other written and printed material.  It is for this very reason that the Supreme Court in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979), held that a warrant almost identical to the one in this case violated the basic Fourth Amendment prohibition against general warrants.

In Lo-Ji Sales, police presented a magistrate with two films purchased at an adult book store.  Upon viewing the films, the magistrate determined that there was probable cause to

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

believe they were obscene and issued a warrant.   442 U.S. at

321.   The warrant application also stated the belief of the offi-

cers, based on their examination of material at the store, that

there was other "similar" material present on the premises.   The

warrant authorized the seizure of the two films and "similar"

material that was not described.   The magistrate accompanied the

police on the search in order to make an independent examination

of each article prior to seizure to determine probable

obscenity.   Id. at 320-21.

A unanimous Supreme Court held the warrant and accom-

panying search unconstitutional:

> This search warrant and what followed the
> entry on petitioner's premises are reminiscent
> of the general warrant or writ of assistance
> of the 18th century against which the Fourth
> Amendment was intended to protect.   See
> Marshall v. Barlow's, Inc., 436 U.S. 307, 311
> (1978); Stanford v. Texas, 379 U.S.   476, 481
> (1965); Marcus v. Search Warrant, 367 U.S.
> 717, 724 (1961).   Except for the specification
> of copies of the two films previously pur-
> chased, the warrant did not purport to 'par-
> ticularly describ[e] . . . the . . . things to
> be seized.'   U.S. Const., Amdt. 4.   Based on
> the conclusory statement of the police
> investigator that other similarly obscene
> materials would be found at the store, the
> warrant left it entirely to the discretion of
> the officials conducting the search to decide
> what items were likely obscene and to
> accomplish their seizure.   The Fourth
> Amendment does not permit such action.

422 U.S. at 325.

The particularity requirement of the Fourth Amendment is

expressly designed to prevent "general exploratory rummaging in a

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 5 -

person's belongings," <u>Coolidge</u> v. <u>New Hampshire</u>, 403 U.S. 443, 467 (1971 , and "the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." <u>Marron</u> v. <u>United States</u>, 275 U.S. 192, 196 (1927).

The Court in <u>Lo-Ji Sales</u> recognized that where the sub-ject of the warrant is allegedly obscene material, the particu-larity requirement of the warrant is especially important.  422 U.S. at 327.  <u>See also</u> <u>Roaden</u> v. <u>Kentucky</u>, 413 U.S. 496, 501 (1973)("The Fourth Amendment proscription against unreasonable . . . seizures . . ., must not be read in a vacuum.  A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material").  In <u>Stanford</u> v. <u>Texas</u>, 379 U.S. 476 (1965), the Court reviewed the history of the Fourth Amendment in detail and concluded:

> In short, what this history indispensably teaches is that the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis of their seizure is the ideas which they contain . . . No less a standard could be faithful to First Amendment freedoms.

379 U.S. 485 (citations omitted).

Thus, "[b]ecause of the First Amendment, the seizure of all publications must meet higher procedural standards than nor-mal. . . The importance of protecting First Amendment freedoms

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

precludes police officers from making <u>ad hoc</u> determinations at the scene as to which materials are probably obscene." <u>United States</u> v. <u>Sherwin</u>, 572 F.2d 196, 200 (8th Cir. 1977), <u>cert. denied</u>, 437 U.S. 909 (1978); <u>accord</u>, <u>United States</u> v. <u>Guarino</u>, 729 F.2d 864, 866-69 (1st Cir. 1984)(en banc); <u>United States</u> v. <u>Kelly</u>, 529 F.2d 1365, 1372-73 (8th Cir. 1976).  It is for that reason that the Court in <u>Lo-Ji Sales</u> held that it is unconstitutional for the magistrate to permit government agents "to seize all 'similar' items as well, leaving determination to the officer's discretion."  422 U.S. at 327.

The warrant in the instant case suffers from the same deficiencies as the warrant in <u>Lo-Ji Sales</u>.  After permitting the seizure of particular items described to the Court in advance, it authorized the seizure of anything else the officers determined, in their sole discretion, violated the federal obscenity laws. The statement last year by the First Circuit <u>en banc</u> in practically identical circumstances applies equally to this case:

> To tell the officers to seize anything which, in their opinion, meets the omnibus legal definition of obscenity is not 'scrupulous exactitude.'  Nor does it become such by adding 'of the same tenor' as three named magazines, especially when the sameness is so broadly defined as to include any communicative material, from books to prints to motion pictures.

<u>United States</u> v. <u>Guarino</u>, 729 F.2d at 867 (emphasis in original).

In this case, the agents exercised their authority with a vengeance, seizing practically every written or printed item

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

owned by the defendant -- from letters to his friends to undeveloped photographs of his vacation in Europe.  Courts have not hesitated to strike down warrants that authorized such overbroad seizure of written or printed material on numerous occasions.  See, e.g., United States v. Abrams, 615 F.2d 541 (1st Cir. 1980)(warrant authorizing seizure of certain medical and billing records that evidence a violation of U.S.C. § 1001, held unconstitutionally overbroad); In Re Application of Lafayette Academy, Inc., 610 F.2d 1 (1st Cir. 1979)(warrant "framed to allow seizure of most every sort of book or paper at the described location, limited only by the qualification the seized items be evidence of violations" of certain statutory sections, failed to meet particularity requirement of Fourth Amendment).

Moreover, the procedure utilized in this case is more offensive than that in Lo-Ji Sales for four important reasons.

First, in Lo-Ji Sales the magistrate accompanied the police on the search and made an initial determination of prob-able obscenity.  Although the Court held that this procedure was inadequate, there was at least some determination of probable obscenity prior to the seizure.  Here, by contrast, the agents exercised unfettered discretion without even an attempt at judicial intervention.

Second, Lo-Ji Sales involved a commercial establishment and the sale of obscene material constituted a crime under the applicable New York penal law.  Here, regardless of whether the

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

"similar" materials seized from defendant's home are obscene or not, his possession in his home of those materials for personal non-commercial use is protected by the First Amendment. Stanley v. Georgia, 394 U.S. 557 (1969)(First Amendment and general privacy rights prohibit criminal prosecution for possession of obscene material in the home).

Third, the court in Lo-Ji Sales held that permitting the seizure of other material not particularly described in the affidavit was unconstitutional in spite of the fact that the officers based their conclusion that there was "similar" material on personal observation of the magazines at the place to be searched prior to obtaining the warrant. Here, the sole basis for authorizing seizure of other "pornographic" material was the hearsay statement of a Customs officer who had never seen defendant with any such material and had no information about the defendant other than that his name was on an envelope that contained some such material.

Fourth, the warrant in this case was for search of a private residence, not a commercial establishment which sold the material to the public. Although the Court in Lo-Ji Sales held that even a commercial establishment had a protectable privacy interest, the legitimate expectation of privacy is much greater in a private residence. The Supreme Court has stated forcefully and often that the invasion of privacy accompanied by a search of a private dwelling "is the chief evil against which the wording

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 9 -

of the Fourth Amendment is directed." <u>Welsh</u> v. <u>Wisconsin</u>, 104

S.Ct. 2091, 2097 (1984); <u>see also</u> <u>Payton</u> v. <u>New York</u>, 445 U.S.

573 (1980); <u>United States</u> v. <u>United States District Court</u>, 407

U.S. 297, 313 (1972); <u>Johnson</u> v. <u>United States</u>, 333 U.S. 10, 13-

14 (1948).  For that reason, a warrant such as the one in the

present case, which authorizes a general rummaging through

defendant's personal possessions for material not described, and

leaves to the officers the determination what to seize, is

especially offensive.

Because the warrant was invalid on its face, the search

of defendant's home was unlawful and all of the evidence obtained

as a result of the search must be suppressed.  As explained in

<u>United States</u> v. <u>Burch</u>, 432 F. Supp. 961, 964 (D. Del. 1977),

<u>aff'd</u>, 577 F.2d 729 (3d Cir. 1978), the fact that there may have

been probable cause to enter the premises to seize some partic-

ularly described items does not affect the suppression remedy

where a general warrant was obtained and executed:

> [T]he Fourth Amendment has a second and
> distinct objective -- to ensure that those
> searches which are authorized are as limited
> in scope as the justification for them.
> "Here, the specific evil is the 'general
> warrant' abhorred by the colonists, and the
> problem is not that of intrusion <u>per se</u>, but
> of a general, exploratory rummaging in a
> person's belongings." <u>Coolidge</u> v. <u>New
> Hampshire</u>, <u>supra</u>, at 467.  It is in this
> second respect that the warrant failed.  The
> inclusion of the specific reference to tires
> afforded no protection to [the defendant's]
> right to be free from a general search.  The
> search which the warrant authorized, and the
> search which in fact occurred, was no more
> narrow by reason of the inclusion of that
> reference than it would have been in its
> absence. . . . In sum, there was only one

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

search, that search, unlimited in scope as it was, violated the Fourth Amendment, and the tires were the fruit of that search. Accordingly, they must be suppressed.

So too here, the description of the contents of the envelope no more limited the search than if the warrant authorized the agents to seize anything they found that they believed was "pornographic."  Accordingly, all of the evidence obtained as a result of the search must be suppressed.[3]

II.   THE CUSTOMS SERVICE VIOLATED FEDERAL LAW
      IN THE INITIAL SEARCH OF THE ENVELOPE AND
      BY IGNORING MANDATORY FEDERAL PROCEDURES
      FOR THE SEIZURE OF ALLEGEDLY OBSCENE MATERIAL.

A.   The Initial Border Search
     Was Contrary To Statute.

The affidavit of U.S. Customs Agent Donald Bludworth filed on April 12 in support of an application for a search

_____

[3]  Even if the warrant were limited to the items particularly described, to "condone what happened here is to invite a government official to use a seemingly precise and legal warrant only as a ticket to get into a man's home, and, once inside, to launch forth upon unconfined searches and indiscriminate seizures as if armed with all the unbridled and illegal power of a general warrant."  Stanley v. Georgia, 394 U.S. 557, 572 (1969) (Stewart, J. concurring).  As the D. C. Circuit recognized, citing Justice Stewart in Stanley, "[c]learly the plain view exception must be defined in such a way as to preclude using a document search warrant as authority to search for and seize all evidence of wrongdoing in the form of documents which happen to be located at the search cite." In re Search Warrant Dated July 4, 1977, 667 F.2d 117, 144 (D.C. Cir. 1981), cert. denied, 456 U.S. 926 (1982)(Wald, J. concurring, but stating the opinion of the majority of the court on this issue).  In this case, the scope of the search so exceeded the scope of any lawful construction of the warrant, that the entirety of the material seized must be suppressed.  United States v. Rettig, 589 F.2d 418, 423 (9th Cir. 1978).

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 11 -

warrant of defendant's home states that the envelope addressed to
"J. Nader" was opened on March 12, 1984 pursuant to "customary,
normal border searches of incoming mail."  See Exh. A, Affidavit
of Donald Bludworth.  The law does not permit random or "normal"
searches of incoming letter class mail.  By statute and regula-
tion a warrantless search of incoming letter class mail may be
conducted only upon a "reasonable cause to suspect" the presence
of material improperly being imported into the United States.
Because the mailed article which the subject of this indictment
and basis for the search was illegally searched, the evidence
obtained by reason of the Customs search and later search of
defendant's home must be suppressed.

It is well settled, and we do not dispute, that Congress
has the power to authorize the Customs Service to search incoming
material at the border without first obtaining a warrant and upon
less than probable cause.  United States v. Ramsey, 431 U.S. 606
(1977).  The authority of Customs inspection, however, is derived
from a statute and the search must be conducted pursuant to the
statutory requirements.  Id. at 615; DeVries v. Acree, 565 F.2d
577 (9th Cir. 1977).  The authority to search incoming mail is
established by 19 U.S.C. § 482, which reads in pertinent part:

> Any officer of the officers or persons
> authorized to board or search vessels may
> . . . search any trunk or envelope, . . . in
> which he may have a reasonable cause to sus-
> pect there is merchandise which is imported
> contrary to law.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

(Emphasis supplied); see United States v. Ramsey, 431 U.S. at 610-13.

The material addressed to J. Nader was contained in a sealed letter class envelope. See Exh. A, Bludworth Aff. Section 482 prohibits the opening of such mail on a random basis absent a particularized suspicion that the envelope contains contraband or illegally imported merchandise. In DeVries the Ninth Circuit expressly rejected the argument that the Customs Service may make random searches of incoming mail:

> The sweeping power over international mail that United States v. Ramsey (1977), 431 U.S. 606, said was not asserted by the Government in that case is sought here. If the Government's argument were sustained, every piece of first class letters (sic) from abroad addressed to any person or corporation in the United States could be opened and searched by Customs officers at will or whim. We reject the Government's contention on statutory grounds[.]

565 F.2d at 578.

The court in DeVries, relying on Ramsey, held that Customs regulations necessarily incorporated the reasonable cause to suspect test adopted by the statute. Id. at 578. In 1978, in response to Ramsey and in order to remove any doubt about the standard to be applied to opening letter class mail, [4/] the

_____

4/  Prior to the regulation enaction in 1978, there was a dispute in the courts whether 19 U.S.C. § 1582, permitting the search of "persons and baggage" by Customs officers without any individualized reasonable suspicion was a source of authority for 9 C.F.R. 142 governing the search of incoming mail. Compare DeVries v. Acree, supra (holding § 1582 did not apply to mail importation) with United States v. Odland, 502 F.2d (continued)

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 13 -

Department of the Treasury promulgated regulations which explicitly state that letter class mail cannot be searched at the border without a "reasonable cause to suspect" that the particular article in question contains contraband or dutiable merchandise imported contrary to law.  9 C.F.R. § 145.3 (1984).

The affidavit submitted by Agent Bludworth describing the Customs search contains no statement regarding a particularized "reasonable cause" with respect to the envelope addressed to J. Nader and we do not believe there was any.  If it is necessary to reach this issue, in light of the other independent grounds for suppression stated herein, defendant requests that the government produce at an evidentiary hearing the records which the Customs inspector is required to keep to determine the reasons, if any, for the challenged search.

B.   The Subsequent Delivery Of The Material
     Seized By Customs Officials Violated
     The Mandatory Procedures Of Federal Law

Title 19, Section 1305(a) of the United States Code prohibits the importation of "any obscene book, pamphlets, paper, writing, advertisement, circular, print, picture, drawing or other representation."  The statute goes on to say that:

> Upon the appearance of any such book or
> matter at any customs office, the same shall

---

148 (7th Cir.), cert. denied, 419 U.S. 1088 (1974)(holding random searches of incoming mail permissable).  The regulatory amendment in 1978 makes this debate irrelevant as it applies to sealed letter class mail because it makes the requirement of "reasonable cause" explicit.  See 9 C.F.R. § 145.3.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 14 -

be seized and held by the appropriate customs
officer to await the judgment of the district
court as hereinafter provided; and no protest
shall be taken to the United States Customs
Court from the decision of such customs offi-
cer.  Upon the seizure of such book or matter
such customs officer shall transmit informa-
tion thereof to the United States attorney of
the district in which is situated the office
at which such seizure has taken place, who
shall institute proceedings in the district
court for the forfeiture, confiscation, and
destruction of the book or matter seized.
Upon the adjudication that such book or matter
thus seized is of the character the entry of
which is by this section prohibited, it shall
be ordered destroyed and shall be destroyed.
Upon adjudication that such book or matter
thus seized is not of the character the entry
of which is by this section prohibited, it
shall not be excluded from entry under the
provisions of this section.

In any such proceeding any party in
interest may upon demand have the facts at
issue determined by a jury and any party may
have an appeal or the right of review as in
the case of ordinary actions or suits.

19 U.S.C. § 1305(a)(1980)(emphasis supplied).

The plain language of the statute and the cases inter-

preting it make clear that the detailed procedures set forth in

§ 1305 are mandatory and, indeed, constitutionally required, when

allegedly obscene material is seized.  The government in this

case completely disregarded the statutory procedure and without

authority shipped the material to Reston, Virginia and delivered

the envelope to 2019 Connecticut Ave.  Thus, even if the initial

border search was lawful, the subsequent delivery of the envelope

to the District of Columbia was in violation of a federal

statute.  It is that delivery which provides the sole basis for

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 15 -

the search of the home where defendant lived.  See Exh. B, Search Warrant; Exh. A, Bludworth Aff.

The procedures required by § 1305 were set forth in detail by the Second Circuit in United States v. Various Articles of Obscene Merchandise, 562 F.2d 185, 186 (2d Cir. 1977):

> The customs employee is directed to seize the in-his-opinion offending article to wait the judgment of a district court thereon.  To this end, the customs employee must transmit the article "to the district attorney of the district in which is situated the office at which such seizure has taken place", and he, undoubtedly through one of his assistants, "shall institute proceedings in the district court" for the confiscation and destruction of the matter seized.

> Some Assistant United States Attorney prepares a complaint whereby he demands judgment that the article is obscene and declares that he wants it destroyed.  He attaches a schedule of all seized items (usually a week's collection) and prays that all interested persons be duly cited to answer.  To all addressees he then sends a notice, giving them 20 days in which to file a claim, together with a form for such claim and answer.  Upon receipt of such claims, if any, the matter is set for a so-called hearing before a District Judge.  The notice to the addressees does not appear to advise them of their right to a trial by jury, but this right can be claimed.  (Emphasis supplied).

See also, United States v. One Book Entitled "The Adventures of Father Silas," 249 F. Supp. 911 (S.D.N.Y. 1966).

Section 1305 dates back to 1873 and was part of the original Comstock Act, entitled "An Act for the Suppression of Trade in, and Circulation of, Obscene Literature and Articles of Immoral Use."  See United States v. One Package, 86 F.2d 737, 739

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

(2d Cir. 1936)(Augustus Hand, J.).  The procedures to be followed upon seizure of allegedly obscene material were passed at the same time that it was made a crime to import obscene material by what is now 18 U.S.C. § 1462.  See Manual Enterprises v. Day, 370 U.S. 478, 506 (1962)(Brennan, J., concurring).

The Supreme Court on numerous occasions has held unconstitutional statutes permitting administrative seizures of allegedly obscene material.  In Freedman v. Maryland, 380 U.S. 51 (1965), the Court held unconstitutional the Maryland system of film censorship because there was no assurance of prompt judicial review of the censor's preliminary judgment that a film was obscene.  That rule was applied to seizures made of allegedly obscene material found in the mails by a unanimous Supreme Court in Blount v. Rizzi, 400 U.S. 410 (1971).  In Blount the Supreme Court struck down a federal statute that permitted the Postal Service to refuse to process the mailing of any material relating to the purchase of obscene matter.  400 U.S. at 411-14.  The Court held that procedures for the seizure of mailed material

> violate the First Amendment unless they
> include built-in safeguards against
> curtailment of constitutionally protected
> expression, for Government 'is not free to
> adopt whatever procedures it pleases for
> dealing with obscenity . . . . without regard
> to the possible consequences for constitu-
> tionally protected speech.'  Marcus v. Search
> Warrant, 367 U.S. 717, 731 (1961).  Rather,
> the First Amendment requires that procedures
> be incorporated that ensure against the
> curtailment of constitutionally protected
> expression, which is often separate from
> obscenity only by a dim and uncertain line
> . . . .  Our insistence that regulations of

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

> obscenity scrupulously embody the most
> rigorous procedural safeguards. . .  is . . .
> but a special instance of the larger principle
> that the freedom of expression must be ringed
> about with adequate bulwarks. . . . <u>Bantam</u>
> <u>Books, Inc</u>. v. <u>Sullivan</u>, 372 U.S. 58, 66
> (1963).

400 U.S. at 416-17.

Under the criteria established in <u>Freedman</u>, to avoid

constitutional infirmity a statute permitting seizure must:

> place the burdens of initiating judicial
> review and of proving that the material is
> unprotected expression on the censor; require
> prompt judicial review -- a final judicial
> determination on the merits within a
> specified, brief period[.]

<u>Id</u>. at 417.  The Postal regulatory scheme in <u>Blount</u> failed this

test because it had "no statutory provision requiring govern-

mentally initiated judicial participation in the procedure which

bars the magazines from the mails, or even any provision assuring

prompt judicial review."  <u>Id</u>. at 417-18.

In <u>United States</u> v. <u>Thirty-Seven Photographs</u>, 402 U.S.

363 (1971), the Supreme Court "saved" § 1305 from a finding that

it was an unconstitutional infringment upon First Amendment

rights by reading into the statute strict time limitations upon

the institution of the proceedings required by the statute.

Absent the judicially imposed time limit, the Court stated that

the whole statutory framework permitting the Customs Service to

seize allegedly obscene matter would be unconstitutional.  <u>Id</u>. at

372 ("The only alternative would be to hold § 1305(a)

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 18 -

unconstitutional in its entirety[.]").  Citing Blount v. Rizzi,
400 U.S. 410 (1971); Freedman v. Maryland, 380 U.S. 51 (1965).

The legislative history reviewed by the court in Thirty-
Seven Photographs and the language of statute support the view
that the forfeiture proceedings are mandatory.  Justice White
pointed out that there was great resistance in the Senate to any
law that would vest an administrative officer with power to
confiscate written material, because, in his judgment, it was
obscene or indecent.  402 U.S. at 370.  The determination was
made that a judgment on obscenity should be left to the Court and
jury, and that judicial proceedings should be commenced and
concluded promptly.  Id. at 371.  Two comments by supporters of
§ 1305 are instructive:  one Senator noted "that a customs
officer seizing obscene matter 'should immediately report to the
nearest United States district attorney having authority under
the law to proceed to confiscate . . ." id. at 371 (emphasis in
original), and another "noted that officers would be required to
go to court 'immediately.'" Id.

Based on this history the court held that a prompt
determination by a court as to the question of obscenity was
intended by the legislature, and construed the statute "to
require intervals of no more than 14 days from seizure of the
goods to the institution of judicial proceeding for their for-
feiture and no longer than 60 days from the filing of the action
to final decision in the district court."  Id.  at 373-74.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 19 -

There is no exception from these mandatory procedures where the government intends to prosecute a case criminally. Nor is there any possibility that in passing this procedure or construing it Congress and the Court were not congnizant of the possibility of criminal proceedings. As previously stated, § 1305 was enacted as part of the same statute that made importation of obscenity a crime, and <u>Thirty-Seven Photographs</u> was decided the same day that the court upheld the constitutionality of making it a crime to send obscenity through the mail. <u>See United States</u> v. <u>Reidel</u>, 402 U.S. 351 (1971). The statute is consistent with the government's ability to initiate proceedings under § 1462. But it establishes <u>mandatory</u> procedures for handling allegedly obscene material when the seizure is made by Customs officers.

The government in this case completely ignored the statute. No transmition of the article was made to the United States Attorney in New Jersey; no proceeding against the article was instituted; no notice of the seizure was sent to the addressee; no decision as to obscenity was made in the constitutionally required period of time. Instead, without authority, the seized material was sent to Washington so that it could be delivered by the government to the address on the package and provide the basis for a search warrant to enter the premises. The material was reseized from defendant's home on April 12, 1984. For over nine months the government did nothing except deprive defendant of the material seized. It was not until January 29, 1985 --

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 20 -

more than nine months later -- that this indictment was returned.  The procedure is a flagrant violation of the statute and of the defendant's First Amendmend rights.  In the one hundred and twelve year history of the importation provision of the Comstock Act we have not found a single case where the Customs Service seized allegedly obscene material and sent it to another agent outside the jurisdiction while utterly ignoring the mandatory provisions of § 1305.[5]  Moreover, because the constitutionality of the statutory framework under which the material was seized depends upon following the procedures set forth in Thirty Seven Photographs, the seizure and subsequent delivery to defendant's address were unconstitutional.

   C.   The Government's Violation Of Federal
        Law Requires The Suppression Of
        Evidence Obtained In The Subsequent
        Search.

        Where government agents violate a federal statute in obtaining evidence, the exclusionary rule requires suppression of

---

[5]  This is not a case where the initial seizure was made under authority of a warrant.  Compare Heller v. New York, 413 U.S. 483 (1973).  In Heller, the Court held that there was no constitutional violation where the initial seizure is made pursuant to a warrant and the defendant is afforded a prompt post-seizure hearing on the obscenity issue.  Here, in contrast, the initial seizure was made without a warrant pursuant to a statute, the express terms of which were violated.  As discussed below, the subsequent warrant cannot be utilized to sanitize the violation of federal law.  See pp 21 - 27, infra.  In this situation suppression of the seized material is the appropriate result even if the material is ultimately found to be obscene.  Roaden v. Kentucky, 413 U.S. 496 (1973)(warrantless seizure of film resulted in suppression).

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

the evidence seized and the fruits of the search.  Wong Sun v.
United States, 371 U.S. 471, 484-88 (1963).

In Miller v. United States, 357 U.S. 301 (1958), the
Court held that evidence obtained in violation of a federal
statute setting forth procedures for police entry into a home
required that the evidence seized be suppressed.  Miller
recognized that Congressional limits on government power must be
enforced by the courts.  357 U.S. at 313; see also Rea v. United
States, 350 U.S. 214, 217 (1956)(applying exclusionary rule
indirectly by enjoining federal agent from testifying in state
proceeding where agent violated federal "Rules prescribed by this
Court and made effective after submission to the Congress
. . . .  The power of the federal courts extends to policing
those requirements and making certain that they are observed.");
Nardone v. United States, 302 U.S. 379 (1937)(suppression for
violation of statute regulating wire interception).

In the recent case of United States v. Chemaly, 741 F.2d
1346 (11th Cir. 1984), the court applied this principle to sup-
press evidence obtained in violation of the customs law governing
searches of outgoing passengers.  In rejecting the government's
argument that suppression was unnecessary because the
Constitution permits warrantless border searches, the court
stated:

> But what the Constitution does or does not
> require is not the issue in this case.  The
> Constitution provides the outer limit of the
> government's ability to act upon the individ-
> ual.  Congress, as the enunciator of national

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

> policy and regulator of government officials,
> can more severely restrict the customs service
> in its encounters with citizens than would be
> required by the Constitution.

741 F.2d at 1351-52 (emphasis in original).  And in United States

v. Soto-Soto, 598 F.2d 545 (9th Cir. 1979), the Ninth Circuit

recognized that suppression was the appropriate remedy where the

statutory authority for conducting border searches was violated

because the search was conducted by the FBI rather than Customs

agents.

> Here, the FBI agent's action violated
> federal statutes.  He ignored the divisions of
> authority which Congress carefully legis-
> lated.  As in Miller, supra, the exclusionary
> rule is applicable.

598 F.2d at 550.  Cf:  United States v. Caceres, 440 U.S. 741,

755 n.21 (1979)(holding that violations of agency regulations did

not justify suppression and distinguishing Miller because "no

statute was violated by the" conduct of the government agent).

Moreover, the federal statute violated in this case is

of constitutional dimensions and is designated to protect the

rights of the addressee of the allegedly obscene material.  As

previously discussed, Congress in passing the prohibition upon

importation of obscene material enacted the mandatory forfeiture

procedure in part to protect the addressee's right to notice and

a prompt determination as to the legality of the imported mate-

rial.  The Supreme Court recognized that absent the procedure

enacted by Congress, engrafted with a strict time requirement for

initiating those procedures, the authority of Customs officers to

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

seize allegedly obscene material would violate the First
Amendment.  See discussion at pp. 15 - 20.  Thus, the illegal
government conduct in this case directly affected the
constitutional rights of this defendant.  Compare United States
v. Payner, 447 U.S. 727 (1980).

Finally, the Court should suppress the evidence obtained
here not only to enforce the requirement of federal statutory
law, but on the basis of its supervisory powers.  See United
States v. Cortina, 630 F.2d 1207 (7th Cir. 1980).  In Cortina the
Seventh Circuit invalidated a warrant and ordered the exclusion
of evidence seized during a search where the defendant estab-
lished that the agent who secured the warrant lied in his
affidavit to the magistrate.  As the Seventh Circuit explained:

> The court has inherent authority to regu-
> late the administration of criminal justice
> among the parties before the bar.  McNabb v.
> United States, 318 U.S. 332 (1943).  Our
> exercise of the supervisory powers here rests
> firmly on the Constitution and Supreme Court
> authority.  As the Court states in United
> States v. Payner, [447 U.S. 727, 735 n. 7
> (1980)], "[f]ederal courts may use their
> supervisory power in some circumstances to
> exclude evidence taken from the defendant by
> willful disobedience of law."  See, e.g.,
> McNabb v. United States (supervisory power
> used to exclude confession taken from
> defendant after two days of interrogation
> without being taken before a magistrate, in
> violation of statute); Elkins v. United
> States, 364 U.S. 206 (1960) (supervisory power
> is basis of rule excluding evidence obtained
> by state officers in search which, if con-
> ducted by federal officers, would have vio-
> lated Fourth Amendment); Rea v. United States,
> 350 U.S. 214 (1956) (federal court may enjoin
> federal agent from testifying in state court
> trial about information obtained during search

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 24 -

conducted without probable cause and evidence seized on a warrant based on unsworn statements); Hampton v. United States, 425 U.S. 484, 493 (1976) (Powell, J., concurring in judgment) (supervisory power should be available to bar convictions, when entrapment not available as a defense, because of outrageous police conduct.)

630 F.2d at 1214.

The conduct at issue here is different than Cortina, but no less deserving of sanction. In Cortina an agent lied to the court in order to get a warrant; here experienced Customs agents disregarded the plain requirements of federal law for the same purpose. 6/

Nor does the fact that a warrant was obtained, based on the evidence uncovered by an illegal search or received in Washington in violation of § 1305, save the evidence found in the search of defendant's home. In United States v. James, 418 F.2d 1150 (D.C. Cir. 1969), the court announced the rule that if unlawfully obtained evidence provided the basis for a subsequent search warrant, the warrant was invalid and the evidence seized must be suppressed unless the warrant could be sustained based on the remaining portion of the application. In United States v.

---

6/   In Cortina, the agent's misconduct was demonstrated during a pre-trial hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). In the case at bar, because of the statutory violation, no hearing is necessary to demonstrate the invalidity of the subsequent warrant. Suppression in this case rests on the well settled principle that evidence illegally obtained cannot be sanitized by using it to subsequently obtain a warrant based upon the unlawfully obtained evidence. See United States v. James, 418 F.2d 1150 (D.C. Cir. 1969).

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

_Watson_, 307 F. Supp. 173, 175 (D.D.C. 1969), Judge Gasch applied the _James_ rule to exclude evidence where the basis for the warrant was obtained in violation of a federal statute:

> A search warrant issued on the basis of information which has been obtained other than by lawful means is not a valid warrant.  Consequently, a defendant is entitled to have suppressed any items seized during the execution of such a warrant, unless the finding of probable cause underlying the warrant was based upon other "untainted" information which alone would have supported the finding of probable cause.

_See also_ _United States_ v. _Giordano_, 416 U.S. 505, 529-533 (1974) (evidence obtained from extension of wiretap order excluded where initial tap conducted in violation of the requirement of federal statute regarding necessary approval from Assistant Attorney General); _United States_ v. _Taheri_, 648 F.2d 598 (9th Cir. 1981).

In this case it is clear that absent the violation of the statute, there was no probable cause to search defendant's residence.  The mere fact that the government learned that defendant was the addressee of the package does not suffice to establish cause for a search of his residence.

> [T]he fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of the crime.  'If that were so, there would be no reason to distinguish search warrants from arrest warrants, and cases like _Chimel_ v. _California_, 395 U.S. 752 (1969), would make little sense.' _United States_ v. _Lucarz_, 430 F.2d 1051, 1055 (9th Cir. 1970). _See generally_, 1 La Fave, _Search and Seizure_, § 3.7 at 706-708 (1978).  We have consistently held that facts must exist in the affidavit

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

> which establish a nexus between the house to
> be searched and the evidence sought.

United States v. Freeman, 685 F.2d 942, 949 (5th Cir. 1982).  The

accepted rule is that to "justify the search of a residence, the

facts supporting the warrant must show probable cause to believe

that the evidence is presently in the place to be searched."

United States v. Foster, 711 F.2d 871, 878 (9th Cir. 1983), cert.

denied, 104 S.Ct 1602 (1984).  In United States v. Hendricks, 743

F.2d 653, 655 (9th Cir. 1984), cert. denied, 53 U.S.L.W. 3617

(1985), the Court held that where the basis for a warrant is that

the person occupying the premises to be searched is the recipient

of contraband, there is no probable cause unless there is reason

to believe that the contraband is currently on the premises.  See

also United States v. Flanagan, 423 F.2d 745, 747 (5th Cir.

1970)(same).

Thus, it is clear that absent the violation of the

mandatory procedures of § 1305 there would have been no basis for

the warrant to search defendant's home.  Accordingly, the

evidence seized in that search must be suppressed.

### III. THE STATEMENTS ALLEGEDLY MADE BY THE DEFENDANT WERE THE FRUIT OF THE UNLAWFUL SEARCH.

The exclusionary rule "bars the introduction at trial

not only of evidence seized in violation of the Fourth Amendment,

but also of evidence obtained as an indirect result of the

illegal seizure -- the fruit of the poisoned tree."  United

States v. Scios, 590 F.2d 956 (D.C. Cir. 1978); Wong Sun v.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

United States, supra.  Where a defendant makes statement after

being confronted with evidence seized in an unlawful search,

"there is little doubt as to what the result should be."

> In the typical case in which the
> defendant was present when incriminating
> evidence was found in an illegal search or in
> which the defendant was confronted by the
> police with evidence they had illegally
> seized, it is apparent that there has been an
> 'exploitation of that illegally' when the
> police subsequently question the defendant
> about that evidence or the crime to which it
> relates.  This is because 'the realization
> that the 'cat is out of the bag' plays a
> significant role in encouraging the suspect to
> speak.'

3 W. LaFave, Search and Seizure, § 11.4(c) at 639 (1978)

(citations omitted).  As explained by the Illinois court, in

People v. Robbins, 54 Ill. App. 3d 298, 369 N.E.2d 577, 581

(1977), statements made based on the presence of illegally seized

evidence are more suspect even than statements made after an

illegal arrest, because

> confronting a suspect with illegally seized
> evidence tends to induce a confession by
> demonstrating the futility of remaining
> silent.  On the other hand, the custodial
> environment resulting from a false arrest is
> merely one factor to be considered in
> determining whether a confession is
> inadmissible.

Thus, numerous cases have recognized that statement made

by a defendant after being confronted with illegally seized

evidence cannot be admitted as evidence.  See, e.g., Ruiz v.

Craven, 425 F.2d 235 (9th Cir. 1970); Amdor-Gonzales v. United

States, 391 F.2d 308 (5th Cir. 1968); United States v. Nikrasch,

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

367 F.2d 740 (7th Cir. 1966); United States v. Marrese, 336 F.2d 501 (3d Cir. 1964).

There is no doubt in this case that the statements which the government will contend were made by defendant were the direct result of the illegal search.[7]  The basis for the interview at which defendant is alleged to have made certain incriminatory admissions was to review the material seized during the search.[8]  Agents Bludworth and Northrop told Mr. Nader and his counsel that if they would appear and review with them the material seized, it would be returned to him.  The entire discussion between Mr. Nader and the agent was in the course of reviewing the bags of material taken from Mr. Nader's home.

Near the end of the interview, the agents read Mr. Nader his rights and obtained a written Miranda waiver.  But, "it is crystal clear that giving the defendant the Miranda warnings will not break the causal chain between an illegal search and a subsequent confession." 3 W. LaFave, supra at 640.  In Brown v. Illinois, 422 U.S. 590 (1975), the Supreme Court held that the

---

[7]  The result is the same whether the search is found invalid because the product of an unlawful general warrant or because the warrant was obtained in violation of federal law.

[8]  We say "alleged statements" because the interview memorandum prepared by the agent contains statement never made by defendant concerning subjects not even discussed during the interview.  Nevertheless, under the fruit of the poisonous tree doctrine, whatever statements were made by defendant in reaction to the illegally seized evidence must be suppressed.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 29 -

Miranda warnings did not purge the taint of an illegal arrest in obtaining subsequent statements from a defendant.  See Wong Sun v. United States, supra.  "[T]he warnings have even less impact when the prior Fourth Amendment violation was a fruitful illegal search."  3 W. LaFave, supra.  As explained in People v. Johnson:

> If Miranda warnings were held to insulate from the exclusionary rule confessions induced by unlawfully obtained evidence, the police would be encouraged to make illegal searches in the hope of obtaining confessions after Miranda warnings even though the actual evidence seized might later be found inadmissible.  . . .  To so hold would result in the Miranda warnings -- intended to protect the defendant's rights to counsel and to remaining silent . . . and to prevent exploitive police practice . . . -- becoming the instrument of a bootstrap operation to insulate unlawful police activities from the effects of the exclusionary rule.

70 Cal. 2d 541, 550, 450 P.2d 865, 871 (1969), cert. denied, 395 U.S. 969 (1969).  In this case the warnings were especially meaningless because they were provided to a defendant who already had counsel and after he had been questioned about the illegally seized material.

### IV.   THE DEFENDANT'S STATEMENTS WERE OBTAINED AS A RESULT OF MATERIAL MISREPRESENTATIONS BY GOVERNMENT AGENTS.

Defendant is prepared to prove at an evidentiary hearing pursuant to Jackson v. Denno, 378 U.S. 368 (1964), that the statements made by the defendant were obtained as a result of material misrepresentations by government agents and prior to giving him Miranda warnings and were therefore involuntary. Shortly after the search, Mr. Nader was contacted by postal

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

inspector Northrop who indicated he wanted to discuss the
material seized with the defendant.   Defendant's attorney called
Northrop regarding the purpose of such a meeting.   Northrop
advised counsel that if the defendant came in for an interview
the government would return to him the material seized at his
home.   Northrop said he wanted to review the material with the
defendant prior to returning it and explain to him why he should
not have the material the agents found obscene.   Counsel was
further advised that Mr. Nader would not be arrested and no
prosecution was planned.[9]

On April 16, 1984, a meeting was held at government
offices between the defendant, his counsel Gweneth Moolenaar,
agent Northrop, and agent Bludworth.   Consistent with the agent's
statements prior to the meeting, defendant was not read his
Miranda rights at the outset of the interview.   It was only after
one and a half hours of discussion when defendant refused to
initial the envelope which forms the basis for this prosecution
that the agents first informed defendant and his counsel that
there was a possibility of prosecution and decided to give the
Miranda warnings.   No statements germaine to this case were made
by the defendant after his rights were read and the waiver form
was signed.   The agents then refused to return any of the seized

---

[9]   The agent's statement that no prosecution was planned was
      especially credible because prosecution for receipt of
      obscene material where there is no evidence of intent to
      distribute or actual involvement in sexual offenses is
      contrary to Justice Department guidelines.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 31 -

property[10/] and the government now intends to introduce statements it alleges were made by the defendant during the course of the meeting.

A statement obtained from a criminal defendant is "involuntary" within the meaning of the Fifth Amendment if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by exertion of any improper influence." Hutto v. Ross, 429 U.S. 28, 30 (1976)(brackets in original)(emphasis supplied), quoting Bram v. United States, 168 U.S. 532, 542-43 (1897).

It is now well settled that a statement is involuntary if it is obtained by "fraud," United States v. Powe, 591 F.2d 833, 841 (D.C. Cir. 1978); Robinson v. Smith, 451 F. Supp. 1278, 1291-92 (W.D.N.Y. 1978), or by "a promise of leniency." McLallen v. Wyrich, 498 F. Supp. 137 (W.D.Mo. 1980). In McLallen, the court granted a writ of habeas corpus where a statement was obtained after the defendant was told he would be "better off" if he confessed. The court held that the comments amounted "to a promise of leniency and was an important consideration in [his] decision to make a statement[.]" Id. at 138. Therefore, "under the doctrine laid down in Bram v. United States, supra, the prosecutor's statement to the defendant must be regarded as a direct or implied promise which induced the petitioner to give a

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

10/ Subsequently, a few of the items taken in the search were returned to the defendant.

confession which he would not have otherwise given and that it was unconstitutionally admitted against him . . ." Id. at 139.

The promise of leniency need not be a binding plea agreement.  It is enough that the government agent induced the defendant to believe his statement would not be used against him.  In the leading case of Grades v. Boles, 398 F.2d 409 (4th Cir. 1968), the court suppressed statements made by the defendant after the prosecutor advised him that if he cooperated on one charge, "as the matter stood at that time, he would be tried only on one case . . . [and] if he were tried or entered a plea of guilty [on this robbery charge], he would not be tried on any other indictment."  398 F.2d at 411 (brackets in original).  The court rejected the government's argument that these statements were merely expressions of policy and held that the statements were a "direct or implied promise, unconstitutionally inducing and thus rendering inadmissible" the defendant's statements.  398 F.2d at 412, 414.  The same rule applies where the inducement is supplied by a law enforcement agent or even someone working on his behalf.  United States v. Gonzalez, 736 F.2d 981, 982 (4th Cir. 1984).

Here the defendant's statements were obtained as a direct result of the agent's representation that the purpose of the interview was merely to review the seized property prior to returning it to defendant and that there was no intention to prosecute.  Evidence procured by such statements "can no more be regarded as the product of a free act of the accused than that

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 33 -

obtained by official physical or psychological coercion."

Shotwell Manufacturing Co. v. United States, 371 U.S. 341, 347-48

(1963).

### CONCLUSION

For the reason stated here, the Court should suppress
the evidence seized from defendant's home and the statements
obtained from the defendant as a result of the illegal search.
In the alternative, defendant requests an evidentiary hearing on
the circumstances of the initial Customs search and the
subsequent statements obtained from the defendant by government
agents.

Respectfully submitted

WILLIAMS & CONNOLLY

By _____

David Povich
Richard S. Hoffman

839 17th Street, N.W.
Washington, D.C.   20006
(202) 331-5000

Attorneys for defendant.

April 1, 1985

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

Ex A

CR - 85-33

FILED

APR 1985

JAMES F. DAVEY, Clerk

ANDREWS OFFICE PRODUCTS WASHINGTON DC

b 106
ev 3/82

AFFIDAVIT FOR SEARCH WARRANT

## United States District Court

| | DISTRICT   of Columbia |
|---|---|

| United States of America | DOCKET NO. 85-33 | MAGISTRATE'S CASE NO. 84-0241 |
|---|---|---|

vs.

2019 Connecticut Avenue
Described as a 4-story residence with white
stone exterior on 1st floor.  Red brick ex-
terior on 2nd & 3rd floor and a greenish
slate roof with white trim on 4th floor.  Front
door on left ground side of front with a black barred foyer.  2019 is clearly visible.

NAME AND ADDRESS OF JUDGE[1] OR U.S. MAGISTRATE

The undersigned being duly sworn deposes and says: That there is reason to believe that

| ☐ on the person of     ☒ on the premises known as | DISTRICT   of Columbia |
|---|---|

2019 Connecticut Avenue, described as a 4-story residence with white stone exterior on
1st floor.  Red brick exterior on 2nd & 3rd floor and a greenish slate roof with white
trim on 4th floor.  Front door on left ground side of front with a black barred foyer.
2019 is clearly visible.

The following property (or person) is concealed:

1 8MM Movie "File #11 Lover boys Rick & Tony," 1 Magazine, Piccalo Extra #15,,
1 magazine "Fucking Children," 1 Magazine "Lolli Pops #2," 1 Magazine "Bambino #1 and
Advertisement for Movie of Joe and Tom #3," in addition to other photographs, magazines,
and writings and documents which are evidence of violations of Title 18, U.S. Code,
Section 1461, 1462.

Affiant alleges the following grounds for search and seizure[2]

FILED

APR 1 1985

JAMES F. DAVEY, Clerk

☒ See attached affidavit which is incorporated as part of this affidavit for search warrant

Affiant states the following facts establishing the foregoing grounds for issuance of a Search Warrant

(SEE ATTACHED AFFIDAVIT)

| SIGNATURE OF AFFIANT  Donald Bludworth | OFFICIAL TITLE, IF ANY  Special Agent, U.S. Customs Service |
|---|---|

| Sworn to before me, and subscribed in my presence: | |
|---|---|
| DATE   April 12, 1984 | JUDGE[1] OR US MAGISTRATE |

[1]United States Judge or Judge of a State Court of Record.
[2]If a search is to be authorized "at any time in the day or night" pursuant to Federal Rules of Criminal Procedure 41(c), show reasonable cause therefor.

84-0241M

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR
2019 CONNECTICUT AVENUE, NW, WASHINGTON, DC  20008

Donald Bludworth is your affiant and is a Special Agent with U.S. Customs

The affiant has been informed that:

On or about March 27, 1984, Andrew Taylor, Customs Inspector, Special Processing, while performing customary, normal border searches of incoming mail at the Jersey City, NJ Mail Processing Plant for Incoming Mail, performed a customs inspection on a first-class letter addressed to Mr. J. Nader c/o International Insight, 2019 Connecticut Avenue, NW, Washington, DC 20008, U.S.A.  The customs declaration disclosed that it contained books.  The letter itself is described as a brown mailing pack type envelope, approximately 12" by 8 1/2" bearing the above-named address and a return address of Ralf Zonatz, 1012 LK Amsterdam, Domrak, 42-43 Holland, bearing two green postage stamps from the Netherlands. The envelope was also marked "book" twice on the front side.  This was handwritten in a black pen.  The package was opened as per the authority of the U.S. Customs Department, upon which the following items to which affiant has probable cause to believe are obscene, were discovered and seized:

1.  One (1) 8 MM Movie "Film #11 Lover boys Rick & Tony"
2.  One (1) Magazine "Piccalo Extra #15"
3.  One (1) Magazine "Fucking Children"
4.  One (1) Magazine "Lolli Pops #2"
5.  One (1) Magazine "Bambino #1"
6.  One (1) Advertisement for movie of Joe & Tom #3

This seizure occurred at approximately 8:30 a.m. on March 26, 1984, and was given Seizure No. 84-46-01-00281.

Also received were one magazine entitled "Boy No. 53" containing photos of nude and dressed boys, one magazine entitled "Sweet Little 16, Volume 3, No. 8" and two black and white pictures of nude boys.

The material was reenclosed in the original container and then mailed to Special Agent Carol Hawkins, Office of Investigations, U.S. Customs Service, 12310 Pinecrest Road, Suite 202, Reston, VA 22091, via Registered Mail.  The package was mailed under Registered Mail No. R070-949-069.  The material was delivered to the Customs Office in Reston and personally opened by Special Agent Don Bludworth.  An inventory of the materials contained in the original package was made by Agent Bludworth, and it was the same as the original inventory conducted by the Customs Inspector in New Jersey.  The material is currently in the possession of Agent Bludworth.

84 - 0 2 4 - M

The magazines entitled "Piccalo Extra No. 15", "Lolli Pops No. 2" and "Bambino No. 1" listed as Nos. 2, 4, and 5 above contain color and black and white photographs of young boys committing acts of masturbation, and fellatio. Additionally, magazines "Piccalo Extra No. 15" and "Lolli Pops No. 2" listed above as Nos. 2 and 4 show young boys engaged in anal intercourse.

The magazines entitled entitled "Fucking Children" contains color photographs of young boys and girls committing fellatio, masturbation and intercourse. The back cover of the magazine has an advertisement for "Lolita" and "Perverse Kinder" magazines described as "Lolita" magazines and "Children Making Love..."

The eight millimeter movie entitled "Film No. 11, Lover Boys Rick and Tony" is contained in a wrapper, depicting two boys, who appear to be pre-pubescent, committing anal intercourse and fellatio. The text of the wrapper describes the boys as ages 11 and 14. Your affiant was informed by Customs Agents in New Jersey that they viewed the film and that it contained scenes consistent with the photographs on the wrapper.

The advertisement for the movie "Joe and Tom No. 3" shows two boys who appear to be pre-pubescent committing mutual masturbation and fellatio. The text of the advertisement says "having seen this film, who in the world could deny that kids of 10 are not interested in sex..."

On April 10, 1984, the originals of the items listed above were shown to U.S. Magistrate Patrick J. Attridge. Copies of the items are attached hereto and incorporated by reference.

Affiant interviewed S/A Walter E. Hekala, Jr., of the U.S. Customs Service who during the period 1975 - 1980 conducted approximately 150 investigations of illegal importation of pornography, particularly pedophelia. In S/A Hekala's experience, persons who order pedophelia material from overseas retain copies of order blanks and catalogs for such material and evidence of payment for it. Hekala stated that payment is generally made by U.S. Postal Money Order or bank money order in American dollars. Hekala states that during the period of his investigation, pedophelia magazines typically cost $15 each and 8MM films typically run $50 - $75 per film.

Hekala further states that in his experience pedophiles keep records of all purchases to keep track of the reliability of suppliers. Hekala further states that in his experience, pedophiles generally have large quantities of pornographic material which is usually of foreign origin.

On April 12, 1984, at 1340 Hours, the above described items were delivered in the original package to 2019 Connecticut Avenue, NW, Washington, DC 20008.

84-0241M

Based on the above described facts, your affiant has probable cause to believe that there is currently secreted inside of 2019 Connecticut Avenue, NW, Washington, DC 20008, items described herein as well as other photographs, magazines, writings and documents which are evidence of violations of Title 18 USC 1462 and 1461.

Donald Bludworth
Special   Agent,   U.S.   Customs

Sworn to and subscribed before me this 12
day of April 1984.

United States Magistrate

*Ex B*

CR-85-33

FILED

APR   1985

JAMES F. DAVEY, Clerk

ANDREWS OFFICE PRODUCTS WASHINGTON DC

AO 93
(Rev. 8/82)

SEARCH WARRANT ON WRITTEN AFFIDAVIT

# United States District Court

**DISTRICT** of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>2019 Connecticut Avenue, N.W.<br>Described as a 4-story residence with<br>white stone exterior on 1st fl.  Red<br>brick exterior on 2nd & 3rd Fl. and<br>greenish slate roof with white trim on<br>4th fl.  Front door on left ground side | **DOCKET NO.** 85-33    **MAGISTRATE'S CASE NO.** 84-0241M |
| | TO: Agent of U.S. Customs Service |

of front with a black barred foyer

Affidavit(s) having been made before me by the below-named affiant that he/she has reason to believe that (~~on the~~ ~~person of~~) (on the premises known as) __2019 Connecticut Avenue, N.W., Washington, D.C.__

in the_____ District of __Columbia_____ there is now being concealed certain property, namely  1 8MM Movie "Film #11 Lover boys Rick & Tony", 1 Magazine "Piccalo Extra #15", 1 Magazine "Fucking Children", 1 Magazine "Lolli Pops #2," 1 Magazine "Bambino #1, and 1 Advertisement for Movie of Joe and & Tom #3," in addition to other photographs, magazines, writings and documents which are evidence of violations of Title 18, U.S. Code, Section 1461 and 1462.

FILED

APR 1 1985

JAMES F. DAVEY, Clerk

and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above-described and the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s),

YOU ARE HEREBY COMMANDED to search on or before _____ April 22, 1984 _____
(not to exceed 10 days) the person or place named above for the property specified, serving this warrant and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) (~~at any time in the day or night~~)* and if the property be found there to seize it, leaving a copy of this warrant and receipt for the property taken, and prepare a written inventory of the property seized and promptly return this warrant to _____
_____ as required by law.
U.S. Judge or Magistrate

| NAME OF AFFIANT | SIGNATURE OF JUDGE** OR US MAGISTRATE | DATE/TIME ISSUED |
|---|---|---|
| Donald Bludworth | | April 12, 1984 |

*If a search is to be authorized "at any time in the day or night" pursuant to Federal Rules of Criminal Procedure Rule 41(c), show reasonable cause therefor.

**United States Judge or Judge of a State Court of Record

*Ex C*

CR 85-33

FILED

APR    1985

JAMES F. DAVEY, Clerk

ANDREWS OFFICE PRODUCTS WASHINGTON DC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR 1 1985

JAMES F. DAVEY, Clerk

UNITED STATES OF AMERICA )
)
)
v.                        )
)
)
GEORGE A. NADER           )
_____)

Criminal No. 85-00033
Judge John Garrett Penn

<u>Motion To Suppress Evidence</u>

Defendant, George A. Nader, by and through his under-signed counsel, hereby moves this Court pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure for an order suppressing evidence obtained during a search of defendant's home and statements allegedly made by the defendant thereafter.

The grounds for this motion are:

1.   The search of defendant's home was conducted pursuant to a general warrant in violation of the defendant's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

2.   Customs agents lacked "reasonable cause" for the initial search of the envelope addressed to the defendant as required by 19 U.S.C. § 482.

3.   The subsequent delivery of the envelope to defendant's home was in violation of federal law.  19 U.S.C. § 1305.  Absent the unlawful delivery, there was no probable cause for issuance of a search warrant.

LAW OFFICES
**WILLIAMS & CONNOLLY**
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000



4.    The statements allegedly made by defendant were a direct result of the unlawful search and seizure of material from the defendant's home.

5.    The statements allegedly made by defendant were obtained in violation of his Fifth and Fourteenth Amendment rights because they were induced by material misrepresentations by government agents.

In support of this motion, defendant relies on the constitutional and statutory provision cited above, the memorandum of law attached hereto, and the arguments of counsel and evidence produced at any hearing ordered by the court.

Because the warrant is facially invalid and was obtained in violation of federal law, no evidentiary hearing is necessary to suppress the evidence obtained during the unlawful search. Moreover, we believe there will be no factual dispute that the statements allegedly obtained from the defendant were a direct result of confronting the defendant with the material seized during the search and must, therefore, also be suppressed. If, however, the Court denies the motion with respect to the facial validity of the warrant and the violation of federal law, a hearing is hereby requested on the separate issues of the legality of the initial border search and the circumstances under

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

which the government obtained the statements allegedly made by the defendant.  See Jackson v. Denno, 378 U.S. 368 (1964).

Respectfully submitted,

WILLIAMS & CONNOLLY

By _____
David Povich
Richard S. Hoffman

839 Seventeenth Street, N.W.
Washington, D.C.  20006
(202) 331-5000

Attorneys for George A. Nader

April 1, 1985

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

## Certificate of Service

I hereby certify that a copy of the attached Motion to Suppress Evidence and the Memorandum in support thereof, were mailed first-class mail, postage prepaid, on April 1, 1985 to Douglas J. Behr, Assistant United States Attorney, Constitution Avenue & 3rd Street, NW, Washington, DC  20001.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

*Penn. J.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

**FILED**

APR 19 1985

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, :
          : CRIMINAL NO.:  85-33
  v.      :
          :
GEORGE A. NADER   :
          :
_____:

## MOTION FOR ENLARGEMENT OF TIME IN WHICH TO FILE MOTIONS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests this Court to enlarge the time in which we may file oppositions to defendant's motions.  In support of our request, we note the following:

1.  The defendant has pending before the Court motions to suppress evidence and statements.  The responses of the United States are currently scheduled to be filed on April 22, 1985.  The United States requests this Court to allow the United States to file its motions on Wednesday, April 24, 1985.

2.  The United States has been diligently working on its responsive pleadings.  However, the Offices of the United States Attorney are being moved over the weekend of April 20 - 21, 1985, and counsel and his staff will be unable to complete the motions in the scheduled time because of the move.

3.  Counsel for the United States has spoken to counsel for the defendant and was informed that the defendant has no objection to our request.

COURTRAN

– 2 –

Respectfully submitted,

JOSEPH E. DIGENOVA
United States Attorney

BY:

DOUGLAS J. BEHR
Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a copy of the foregoing upon defendant by mailing copies thereof to his attorneys, David Povich, Esquire and Rick Huffman, Esquire, WILLIAMS & CONNOLLY, Hill Building, Washington, D.C. 20006, on this 19th day of April, 1985.

DOUGLAS J. BEHR
Assistant Untied States Attorney
U.S. District Courthouse
Room 3836
Washington, D.C.  20001
633-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR 24 1985

CLERK, U.S. DISTRICT COURT,
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :

            :

       v.                :     Criminal No. 85-00033

                         :      (Judge Penn)

                         :

GEORGE A. NADER           :

## OPPOSITION TO DEFENDANT'S MOTION TO SUPRESS EVIDENCE

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, relies on the following points of authorities in opposition to the defendant's motion to suppress physical evidence and statements.

This cases arises out of the seizure by Customs Officials of a package containing merchandise mailed from Amsterdam to the defendant in the District of Columbia. The package was opened in at a mail processing plant in New Jersey and found to contain child pornography in the form of commercially produced magazines and films primarily of boys. The package was forwarded from New Jersey to customs authorities in the District of Columbia and delivered under controlled circumstances to the defendant's address. Shortly after the delivery, a United States Magistrate's search warrant was executed at the defendant's residence resulting in the seizure of the package as well as similar magazines and films, among other things. The defendant seeks to have supressed the items contained in the package, the items found during the course of the search warrant — including the items in the package, and all statements made by the defendant in a subsequent meeting between himself and his counsel and investigators for the Government. We respectfully disagree.



FACTS

On March 26, 1984, Andrew Taylor, a mail specialist with the United States Customs Service, while working at a customs facility in Jersey City, New Jersey, conducted a customs review of a package addressed to "Mr. J. Nader c/o International Insight, 2019 Connecticut Ave., N.W., Washington, D.C." The return address on the package was "Ralph Zonatz, 1012 LK, Amsterdam/DOIMRAK 42-43/Holland". According to the green Customs declaration attached to the package, the contents were books being sent as a gift.[1] Based on Taylor's knowledge that Amsterdam is source city for pornography, as well as, the declaration which indicated the package contained books, Taylor opened the package to determine the nature of its contents. Taylor found in the package magazines and one 8 milimeter film all which contained child pornography. The package was seized and later released to Special Agent Padlo of the United States Customs Service.

Special Agent Padlo came into custody of the package on March 29, 1984. On March 30, 1984, Padlo notified the United States Assistant United States Attorney about the seizure. Padlo received permission to forward the seized package and its contents to the U.S. Customs office in Reston, Virginia so that a controlled delivery to the addressee could be accomplished in order to further investigate that individual. Padlo then sent the package by registered mail

---

[1] A xerox copy of the Customs declaration is attached hereto as Exhibit A.

to the customs office in Reston where it came into the possession of Special Agent Donald Bludworth.

Bludworth prepared an affidavit in support of a search warrant for the premises of the addressee of the package and presented it along with Xeroxed copies of the contents of the package to United States Magistrate Attridge.[2/] Bludworth was informed by the Magistrate that it was the Magistrate's belief that once the package was delivered to the addressee's premises, probable cause existed to search the premises for the contents of the package as well as other related items.

The affidavit submitted by Special Agent Bludworth, which is attached hereto as Exhibit B, indicates that the package addressed to the defendent contained one 8 milimeter film "Film #11, Lover Boys Rick and Tony" as well as six magazines entitled, "Piccalo Extra Number 15", "Fucking Children", "Lolli Pops" #2", "Bambino #1" "Boy #53", "Sweet Little 16, volume 3, number 8". The affidavit goes on to describe in some detail, the photographs contained in each of the magazines, which can be accurartely described as child pornography. The affidavit contains the following additional information:

> Affiant interviewed S/A Walter E. Heckala, Jr., of the United States Customs Service who during the period of 1975-1980 conducted approximately 150 inves-tigations of illegal importation of pornography, particularly pedophilia. In S/A Heckala's experience, persons who order pedophilia material from overseas retain copies of order blanks and catalogs for such

---

2 / The Magistrate maintains the xerox copies of the material under seal. The copies are available to the Court upon request.

material and evidence of payment for it.
Heckala stated that payment is generally
made in U.S. Postal Money Order or bank
money order in American dollars. Heckala
states that during the period of his inves-
tigation, pedophilia magazines typically
cost $15 each and 8 MM run $50-70 per film.

Heckala further states that in his
experience pedophiliacs keep records of
all purchases to keep track of the
reliability of suppliers. Heckala
further states that in his experience,
pedophiliacs generally have large
quantities of pornographic material
which is of foreign orgin.

On April 12, 1984, the above described package was delivered
to the defendant's landlord. Shortly thereafter, a search warrant
was issued for the defendant's premises.

The search warrant, a copy of which is attached hereto as
Exhibit C provided for the seizure of

1 8mm Movie "Film #11 Lover boys Rick
& Tony," 1 Magazine "Piccalo Extra #15,
1 Magazine "Fucking Children," 1 Magazine
"Lolli Pops #2," 1 Magazine "Bambino #1,
and 1 advertisement for movie of Joe and Tom
#3' in addition to other photographs,
magazines, writings and documents which are
evidence of violations of Title 18, U.S.
Code, Section 1461 [Mailing Obscene Matter]
and 1462 [Importation of Obscene Matters].

The search warrant was executed by Special Agent Bludworth
in the company of Special Agent Robert Northrop, United States
Postal Service among others. Inspector Northrop has extensive
experience in the investigation of individuals involved in child
pornography and pedophiliac activities. At the time of the
execution of the search warrant, the investigators became aware
that the defendant only rented a room at 2019 Connecticut, N.W.

The execution of the search warrant was therefore limited to the seizure of the described package, which had been left on a table in the hallway by the landlord and the search of the defendant's room.  Seized from the defendant's room were numerous foreign produced magazines and films similiar in kind to those discovered in the package, films, the wrappers of which indicate that they show boys involved in sexual activity brochures offering foreign produced pornography for sale, financial materials believed to be related to the ordering of such materials, envelopes from Amsterdam, photo albums which included the defendant with boys who appeared not to be relatives, address books and childrens toys.*/  More specifically, among the magazines seized from the defendant's room were, in approximate numbers, 2 copies of "Super Piccalos" , 3 copies of "Boys", 1 copy of "Joy Boy", 2 copies of "Lover Boy" , 4 copies " Super Boy", seventeen copies "Wonder Boy", 1 copy each of "Action Kids", "Fawn" "Show Boy", "Golden Boys", "Dream Boy", "Geil-Boys", "Teen Sex", 3 copies of "Pan  - a magazine about boy-love."  All the magazines are clearly marked as having been produced outside of the United States.  No two magazines were duplicated.  Also were recovered assorted photographs of naked boys.

The day after the search, Gwynneth Moolenar, Esquire, acting as counsel for the defendant contacted Postal Inspector Northrop

---

*/  A copy of the inventory of the search is attached hereto as Exhibit D.

and a meeting was scheduled for April 16.  On April 16, defendant
and his attorney met with federal agents to discuss the investiga-
tion.  During the course of the interview, the defendant admitted
ordering and importing child pornography.

After extensive discussion between the parties, the defendant
was indicted for violations of 18 U.S.C. §1461, 1462 and 2.

Defendant now challenges the search of his room, the opening
of the package, the handling of the package and his interview.  We
do not feel that there exists any basis for these challenges and
respectfully suggest that the defendant's motion should be denied.

## I.  SEARCH OF THE DEFENDANT'S ROOM WAS LAWFUL

### Introduction

The defendant  seeks  to  have  supressed  the  items  seized
from 2019 Connecticut Ave., N.W. as being the result of impermis-
sable search based on a "general" search warrant.  The defendant
argues that since the search was conducted pursuant to a "general
warrant" it was illegal ab initio and thus the seizure both the
specifically described items (the package contents) as well as
the items seized from the defendant's room must be supressed.

Initially, we note that the defendant ignores the fact that
the package and its content were seized from a different place
than the other items.  It is the position of the United States
that the defendant lacks standing to object to the seizure of
the package, and its contents, because it was not in his room.

Second, we submit that the search warrant was not a "general warrant" either as drafted or when read in conjunction with the supporting affidavit. Third, we submit that if the wording was unprecise, the good faith action of the investigators in relying on the warrant makes supression inappropriate.

A.   Standing

Defendant lacks standing to object to the seizure of the package from a table in the hall in the house in which he rents a room.

Defendant has the burden of showing "standing" to contest the seizure of the package. United States v. Salvucci, 448 U.S. 83 (1980); Rakas v. Illinois, 439 U.S. 128, 131 n.1 (1977). Defendant has not alleged the facts upon which he claims "standing" nor is he able to.

Although the agents entered the premises with a warrant for the entire house, they became aware that defendant only had exclusive control over a bedroom. It was this bedroom which became the focus of the search. While going to the bedroom, the agents found on a table in the hall of the landlord's house the package which had been previously searched. The package was seized. The area from which the package was seized was not one in which the defendant had a "legitimate expectation of privacy."

The instant situation is analogous to that of a boarding house in which there are private and common areas. The area in which the table was located was, from the defendant's point of

view, a common area and the defendant does not have a "consitu-
tionally protected reasonable expectation of privacy." United
States v. Anderson, 533 F.2d 1210, 1214 (D.C. Cir. 1976).

B.   The Warrant

The defendant challeges the warrant in this case as not
complying with the particularity requirement of the Fourth Amend-
ment.  Defendant claims that such failure resulted in a general
search in violation of the Fourth Amendment and that suppression
of the package and the evidence seized from the defendant's room
is required.  We disagree.

The Fourth Amendment requires that a warrant issue "particu-
larly describing the. . . things to be seized."  These requirements

> make general searches. . . impossible and
> prevent the seizure of one thing under a
> warrant describing another.  As to what is
> to be taken, nothing is left to the discretion
> of the officer executing the warrant.

Andresen v. Maryland, 427 U.S. 463,400(1976) quoting Stanford vs.
Texas, 379 U.S. 485.  However, "the degree of specificity required
is flexible and may vary depending on the circumstances and the
type of items involved." United States v. Muckenthaler, 584 F.2d
240, 245 (8th Cir. 1978).

The instant warrant provides for the seizure of one named film,
four named magazines, one described advertisement "in addition to
other photographs, magazines, writings and documents which are evi-
dence of violations of Title 18 U.S. Code Section 1461 and 1462."

Defendant, relying primarily on <u>Lo-Ji Sales Inc. v. New York</u>, 422 U.S. 319 (1979) asserts that the instant warrant called for "[t]he seizure of anything else the officers determined in their sole discretion, violated federal obscenity laws. "Defendants motion P.7.  However this case differs greatly from <u>Lo-Ji</u>.

The <u>Lo-Ji</u> warrant, a copy of which is attached as Exhibit E, allowed for its completion after issuance and while at the scene of the search.  The police took the magistrate with them and he became actively involved in the execution of the warrant. The Supreme Court rejected the search on a totality of the circumstances: the wording of the warrant, including its open ended nature; the execution of the warrant including the presence and participation of the magistrate; the lack of probable cause for anything other than the two named films; and the public nature of the premises which led it to conclude that the execution of the warrant had became a general search.

In contrast, the warrant in this case provided for the seizure of specific magazines; of documentary evidence of specified criminal laws; and magazines and photographs which were evidence of illegally imported pornography or mailed pornography.  Since document searches are valid, <u>e.g.</u>, <u>United States</u> v. <u>Espinoza</u>, 641 F.2d 153 (4th Cir. 1981); <u>United States</u> v. <u>Torch</u>, 609 F.2d 1088 (4th Cir. 1970), <u>cert</u>. <u>denied</u>, 446 U.S. 957 (1980); <u>United States</u> v. <u>Jacobs</u>, 513 F.2d 564, 567 (9th Cir. 1975), the only infirmity could arise out of the authorization of the seizure of "magazines and pictures".  By the wording of the warrant, however, those magazines or pictures have to be foreign produced and/or

evidence having been mailed. These directs are sufficiently specific.[3]

Even if the language of the warrant was overbroad, it can be narrowed when read in light of the accompanying affidavit. In the light of the warrant it is clear that the search is for foreign pro-duced pedophelia material.

Our Court of Appeals has approved the reading of search war-rants in conjunction with the underlying affidavit. Although the instant warrant does not specifically incorporate the affidavit by reference, it does state

> I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above-described and the grounds for application for issuance of the search warrant exist <u>as stated in the supporting affidavits</u>.

(Emphasis added.)

---

[3] Defendant points to the execution of the warrant to prove its general nature. Defendant claims the agents took eleven large bags of evidence. However, these eleven bags, used to segregate evidence by place of seizure, fit into two boxes approximately 12 x 24. While the execution of a sufficiently particularized warrant can become unlawfully general, <u>United States</u> v. <u>Hubbard</u>, 493 F. Supp. 209, 224 (D.D.C. 1979) <u>aff'd, 650 F.2d 293 (D.C. Cir. 198). such is not the case here. Inspector Northrop was aware, based in his experience and training that pedophiles engage in sexual molestation of children. Northrop was further aware that such individuals often keep photographs and other information about their victims. Based on the materials discovered during the execution of the search warrant, there was no question that the defendant is a pedophile. Northrop thus believed that it was probable that photograph of the defendant and younger boys portray-ed victims of sexual assault and that the children's toys in the defendant's room were instrumentalities of criminal conduct.

In <u>United States</u> v. <u>Thompson</u>, 495 F.2d 165, 170 (D.C. Cir.

1974), Judge Leventhal observed that

> [W]e have construed the terms of a warrant
> by reference to the underlying circumstances
> disclosed in the accompanying affidavit.
> <u>Moore</u> v. <u>United States,</u> 149 U.S. App. D.C.
> 150, 461 F.2d 1236 (1977). 4/
> That course is appropriate here with a war-
> rant whose terms are sparse even when
> measured against the requirement that only
> the "generic class" of items to be seized
> must be described.  See <u>James</u> v. <u>United</u>
> <u>States</u>, 416 F.2d 467, 473 (5th Cir. 1969),
> <u>cert</u>. <u>denied</u>, 397 U.S. 907 (1970).

> _____

> 4/    In <u>Moore</u> we held that language of the warrant
> could be  narrowed  by  reference  to  the  affidavit
> provided that the affidavit accompanies the
> warrant and is incorporated by reference
> therein, and  we  further  noted  that  the  require-
> ment  of  incorporation  would  be  satisfied  by  the
> common  practice  of  the  United  States  Magistrates
> for the District of Columbia of requiring
> annexation of the affidavit to the warrant
> and delivery of both documents at the premises
> searched.  149 U.S. App. D.C. at 15, n.6,
> 461 F.2d at 1240 n.6.  [It's unclear what
> happened in <u>Thompson</u>]. We adhere to our view
> that the requirements of <u>Moore</u> represent sound
> practice.  In this case, in which the crucial
> events occurred well before <u>Moore</u>, both affi-
> davits, . . ., were  made  by  a  member  of  the
> search detail and carried to the scene of the
> search.  The circumstances do not embody the
> dangers we sought to avoid by the requirements
> announced in  <u>Moore</u>,  and  we  conclude  construction
> of the warrant in light of the affidavits is
> appropriate.

In <u>United States</u> v. <u>Wuagneux</u>, 683 F.2d 1343 (11th Cir. 1982),

<u>cert</u>. <u>denied</u>, 104 U.S. 104 S. Ct. (1983), the defendant challenged a

search warrant to seize records of "the receipt and disbursement

of kickback funds".  Id. at 1350.  The Court rejected the challenge

based on its finding that "kickback funds" has a generally understood meaning.  The Court then relied on the affidavit in support of the warrant to resolve any ambiguities about the kickback scheme.  In so doing, the Wuagneux Court shows the same flexibility attitude evinced in United States v. Thompson, supra.

The thrust of Wuagneux applies in this case.  Clearly, there exists a minimum understanding of what is obscene.  See, Jacobellis v. Ohio, 378 U.S. 184, 197 (1964)(Stewart, J. concurring). In certain contexts, such as customs inspections, agents can seize evidence based on their common-sense decision about its obscenity. See 19 U.S.C. § 1305; United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 376 (1971); Cherry v. Secretary of Treasury, 460 F.Supp. 606 (S.D.N.Y. 1978), aff'd., 441 U.S. 938 (1979)(seized material can be held until judicial determination of obscenity). Cf. United States v. Nemuras, 567 F.Supp. 87 (D. Md. 1983) ("lewd" has a generally, well recognized meaning).  Some courts have even authorized warrantless seizure of obscenity under exigent circum- stances, Smith v. United States, 505 F.2d 824 (6th Cir. 1974) or based on plain view.  Scherger v. State, 371 So.2d 515 (Fla. Dist. Ct. Aps. 1979) appeal dismissed, 374 So.2d 100 (Fla. 1979).  When the warrant is then read in conjunction with the affidavit it becomes clear that the search is authorized for evidence of foreign produce child pornography and evidence of its purchase.  The seizure was confined to those items.

Lo-Ji Sales, supra, and the other cases cited by defendant arise in the context of the First Amendment.  Our case does not; therefore, more liberal standards apply and the defendant's challenge must be denied.

- 13 -

> The common thread of Marcus [v. Search Warrant,
> 367 U.S. 717 (1961)], A Quantity of Books [v.
> Kansas, 378 U.S. 205 (1964)] and Lee Art Theatre
> [v. Virginia, 392 U.S. 636 (1968)] is to be
> found in the nature of the materials seized
> and the setting in which they were taken.  See,
> Stanford v. Texas, 579 U.S. 476, 486 (1965).
> In each case the material seized fell arguably
> within First Amendment protection and the taking
> brought to an abrupt halt an orderly and presump-
> tively legitimate distribution or exhibition.

Roaden v. Kentucky, 413 U.S. 496, 500 (1973).

The particularity requirement is applied with "scrupulous exactitude" in cases involving the First Amendment.  Zurcher v. Standord Daily, 436 U.S. 547 (1978).  See also, United States v. Pryba, 502 F.2d 391 (D.C. Cir. 1974); United States v. Apker 705 F.2d 293, 299-301 (9th Cir. 1983).

However, to paraphrase Roaden, supra, 413 U.S. at 501, a seizure unreasonable as to one type of material in one setting maybe reasonable in a different setting.

> In contexts that do not involve First
> Amendment considerations, the test for
> the necessary particularity is a pragmatic
> one:  "The degree of specificity required
> when describing the goods to be seized may
> necessarily vary according to the circum-
> stances and type of items involved. . .
> [T]here is a practical margin of flexibility
> permitted by the constitutional requirement for
> particularity in the description of items
> to be seized.

United States v. Torch, 609 F.2d 1088 (4th Cir. 1979) cert. denied, 446 U.S. 957 (1980) quoting United States v. Davis, 542 F.2d 743, 745 (8th Cir. 1976).  Cf. United States v. Pryba, 312 F.Supp. 466 (D.D.C. 1970), aff'd, 502 F.2d 391 (D.C. Cir. 1974).

In United States v.  Cangiano, 491 f.2d 906 (2d Cir.) cert. denied, 419 U.S. 904 (1974), the storage facility of an underground porno- graphy operation did not "presumptively invoke First Amendment protection." Neither the defendant's room nor his possession of the magazines were protected by the First Amendment.  The Supreme Court has observed as long ago as Roth v. United States, 354 U.S. 476, 485 (1957) that obscenity is not within the area of constitutional- ly protected speech or press.  In New York v. Ferber, 458 U.S. 747 (1982) the Court noted that child pornography is not a subject protected by the First Amendment.  Also, United States v. Various Articles of Obscene Merchandise, 460 F.Supp. 826, 830 (S.D. N.Y. 1978).

Even if the Court were to find that the warrant was overbroad as to the seizure of "evidence of violations of 18 U.S.C. § 1461 and 1462", the Court can sever the particularly described items, the package and the documents from the others.  E.g., United States v. Fitzgerald, 724 F.2d 633 (8th Cir. 1983)(en banc), cert. denied, 104 S. Ct. 2151 (1984); Sovereign News Co. v. United States, 690 F.2d 569, 576 (6th Cir. 1982), cert. denied, 104 S. Ct. 69 (1983).  The package and documents are thus admiss- ible.

- 15 -

Finally, even if the warrant in question is irrepairably overbroad suppression would be inappropriate.  The agents conducted the search of the defendant's room based on their good-faith reliance upon the Magistrate's warrant.  Therefore, the good-faith exception to the exclusionary rule applies.  United States v. Leon, ____ U.S.  , 104 S.Ct. 3405 (1984); Massachusetts v. Sheppard, ____ U.S.  , 104 S.Ct. 3424 (1984); United States v. Accardo, ____ ____ F.2d (11th Cir. 1985), 36 Cr.L.Rptr. 2303 (Jan. 30, 1985); United States v. Segovia-Melgar, 595 F.Supp. 753 (D.D.C. 1984).  The officers could reasonably rely on the warrant and they did so.

- 16 -

II.  <u>The Original Search of the Package Was Lawful</u>

Defendant challenges the border search of the suspect package claiming that the opening was in violation of Title 19, U.S. Code, § 482 [5/] and <u>United States</u> v. <u>Ramsey,</u> 431 U.S. 606 (1977).  However, defendant's challenge is based on an incorrect characterization of the package as "lettermail" rather than merchandise.

The package addressed to the defendant was opened during a routine customs search at a mail facility in New Jersey.  The package was addressed to "Mr. Nader" and mailed from Amsterdam, Holland.  The package which has the words "Books" handwritten on it also has an official Customs declaration (a copy of which is attached as Exhibit A), which states that it contains "books", as a gift.  The Customs declaration authorizes the opening of the package without any justification.

The Customs declaration on the package authorizes the search of the package for three reasons:  First, the declaration notifies the Customs inspectors that the package contains merchandise thus making it subject to an unfettered border search.  Second, the

_____

5/  19 U.S. Code, § 482 provides:  Any of the officers or persons authorized to board or search vessels may . . . examine . . . any vessel, beast or person, on which or whom he or they shall suspect there is merchandise which is subject to duty . . . and to search any . . . envelope . . ., in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law.

declaration constitutes a consent to search the declaration contains the notation "Peut etre ouvert d'office" which translates as may be opened officially.  And third, the fact that the package contains merchandise provides "reasonable suspicion" under Ramsey that it contains dutiable goods.

The issue raised by defendant was rejected in the case of United States v. Glasser, 750 F.2d 1197 (3rd Cir. 1984).  In Glasser, Customs officers inspected two packages containing carved wooden heads mailed to the United States from Jamaica.  The Court, in approving the search of the packages, noted that

> On a constitutional level, then, it
> is beyond question that agents of
> the federal government may, without
> cause, search persons and packages
> entering the country without viola-
> ting the rights guaranteed by the
> Fourth Amendment.

Id. at 1201.  The Glasser Court rejected the argument that the search was controlled by 19 U.S.C., § 482 finding instead that 19 U.S.C. § 1582 applied.

> Customs' authority to conduct searches
> at the border, however, is not limited
> to section 482.  Section 1582 of Title
> 19 also confers a broad authority to
> conduct discretionary searches at the
> border.  Section 1582 in pertinent
> part provides that:

>> The Secretary of the Treasury
>> may prescribe regulations for
>> the search of persons and bag-
>> gage [...] and all persons
>> coming into the United States
>> from foreign countries shall
>> be liable to detention and
>> search by authorized officers
>> or agents of the Government
>> under such regulations.

19 U.S.C. § 1582 (1982)

In furtherance of this statutory man-
date, the Secretary of the Treasury
has promulated certain regulations.
Regulation 162.6 of Title 19 of the
Code of Federal Regulations provides
that "[a]ll persons, baggage, and
merchandise arriving in the Customs
territory of the United States from
places outside thereof are liable
to inspection and search by a Cus-
toms officer."  19 C.F.R. § 162.6
(1984) (emphasis added).  Also rele-
vant is Article 145 of Title 19 which
contains regulations dealing speci-
fically with mail importations.
Regulation 145.2(b) in pertinent part
provides:

> All mail arriving from outside
> the Customs territory of the
> United States which is to be
> delivered within the Customs
> territory of the United States
> and all mail arriving from out-
> side the U.S. Virgin Islands
> which is to be delivered within
> the U.S. Virgin Islands, is
> subject to Customs examination,
> except [certain governmental
> and diplomatic correspondence].

19 C.F.R. § 145.2(b) (1984).  Article
145 also contains more stringent re-
gulations dealing with the opening
of sealed letter class mail.

Id. at 1202.

After discussing the decisions in United States v. Ramsey, 431 U.S.

606 (1977) and DeVries v. Acree, 565 F.2d 577 (9th Cir. 1977), both

of which were involved letter class mails, the Glasser Court

continued

- 19 -

> It must be noted that neither Ramsey
> nor DeVries discussed the applica-
> bility of section 1582 to the search
> of mailed packages.  All the Courts
> of Appeals that have considered the
> entry of packages have held that,
> without articulating a reasonable
> suspicion, Customs may search pack-
> ages mailed to the United States
> from abroad pursuant to the autho-
> rity of section 1582.  See United
> States v. Pringle, 576 F.2d 1114,
> 1116 (5th Cir. 1978); United States
> v. Emery, 541 F.2d 887, 889 (1st
> Cir. 1976); United States v. Odland,
> 502 F.2d 148, 150 (7th Cir.), cert.
> denied, 419 U.S. 1088, 95 S.Ct. 679
> 42 L.Ed.2d 680 (1974).

Id. at 1203.  See also, United States v. Ramsey, 538 F.2d, 415, 418

(D.C. Cir. 1976), rev'd on other grounds, 431 U.S. 606 (1977)

(and cases cited therein).

The Glasser Court then found that

> the broad statutory grant of authority
> in Section 1582 is clearly sufficient
> to uphold the customs regulations
> permitting the search of packages
> without cause.

Id. at 1204.  Thus, the opening of the package by Customs authorities

was lawful.


   III.  The Customs Service Lawfully Forwarded the
         Package for Delivery

Defendant asserts that once the Customs authorities determined

that the package contained obscene materials that they were required

to pursue forfeiture pursuant to Title 19, U.S.C. § 1305(a)

and could not, as they did here, forward the package for delivery

and further investigation.  Defendant further asserts that the

alleged violation of the statutory scheme requires suppression of
the package.  We respectfully disagree.

The problem with defendant's approach arises from his reliance
on a statute, 19 U.S.C. § 1305(a) designed to provide the Customs
Service authority to prevent the importation of obscene material.
The statute allows for the forfeiture of goods found to be obscene,
and requires their destruction.  Section 1305(a), however, is not
the exclusive method of dealing with the importation of obscenity.
Title 18 U.S.C. § 1462 makes the importation of obscenity a crime.
Certainly in the enforcement of Section 1462 the authorities have
the right to preserve the evidence of the crime and to use it during
the course of their legitimate investigations.

The defendant's argument was rejected by Judge Gilliam in
United States v. Mahan, Crim. No. 84-0662, Southern District of
California, a copy of which is attached hereto as Exhibit F, Judge
Gilliam noted:

> The defendant's argument must be rejected.
> It would be contrary to legislative in-
> tent to burden law enforcement from col-
> lecting evidence by not permitting them
> to use controlled deliveries.

Judge Gilliam relies on United States v. One 1974 Jeep, 536
F.2d 1285 (9th Cir. 1976).  Although Jeep involved drugs and a
claimed violation of 19 U.S.C. § 482, the rationale is the same.
The Court noted that to require the agents to merely seize the
drugs for forfeiture

> would deprive federal officers of a most
> effective method of obtaining evidence
> which is clearly a result contrary to
> congressional intent . . . [even] as-
> suming the law was violated, [n]one of

> [the statutes allegedly notated] conferred
> rights upon appellant.  The allegedly
> illegal cause to conduct of the agents
> neither deprived appellant of any
> substantial person right nor violated
> any deep-rooted social value.

Id. at 1287 quoting United States v. Davis, 272 F.2d 149 (7th Cir. 1950).  See also United States v. Ramsey, 431 U.S. 606 (1977); United States v. Glasser, 750 F.2d 1197 (3rd Cir. 1984); United States v. Doe, 472 F.2d 982 (2d Cir.), cert. denied, 411 U.S. 969 (1973).


## THE STATEMENTS OF THE DEFENDANT ARE ADMISSIBLE

Defendant argues that statements made by him, in the presence of his attorney some four days after the search of his room were the fruit of the illegal search.  We disagree.

On April 12, 1985, federal agents executed a search warrant in the room where the defendant resides.  The next day Gwynneth M. Moolenaar, Esquire contacted Postal Inspector Robert Northrop on behalf of the defendant.  Northrop indicated that he was interested in a meeting to go over the materials seized and to talk about the children portrayed in the personal photographs seized.  A meeting was arranged for April 16.

On April 16, 1984, at 3:25 p.m., a meeting was held at the United States Post Office.  Defendant came to the meeting accompanied by Attorney Moolenar.  Inspector Northrop told the defendant and counsel that he did not know what was going to happen to the case.

Northrop informed counsel and the defendant, that he was conducting a criminal investgation of the defendant.  Northrop indicated that law enforcement had re-emphasized pornography investigation and he could not be sure what course this investigation might take. Northrop then reviewed the seized material with the defendant so that he would be aware of what had been taken.  During the interview certain admissions were made.  Northrop then asked the defendant to initial and date certain materials.  Counsel for the defendant objected to this procedure.  The defendant was then formally advised of his rights at about 4:00 p.m., which he waived and be answered the same questions again.  Counsel for defendant was present during the entire interview.  The interview terminated at about 5:00 p.m.

I.  The Statements of the Defendant Are Not The Fruit
    Of Any Illegality

Obviously, if the Court agrees with the United States that the seizure on April 12 was lawful, the statements are not tainted by the search.  However, if the Court were to find the search illegal, the defendant's statement are not the fruit of that illegality.  Defendant's having retained counsel who accompanied him when he made the statements overcomes any influence of the illegal seizure.

Defendant's claim ignores the second part of the decision in Wong Sun v. United States, 371 U.S. 471 (1963) dealing with Mr. Wong Sun.  Wong Sun was arrested under circumstances that were later held to be illegal.  He was arraigned and released on his

own recognizance.   Several days later, Wong Sun came to the police station, without counsel, and gave an inculpatory statement.   The Court held the statement was not the fruit of the illegal arrest because the connection between the arrest and the statement had become so attenuated as to dissipate the taint, citing <u>Nardone</u>. <u>Id</u>. at 491.   The test established by the Court is:

> whether, granting establishment
> of the primary illegality, the
> evidence to which instant objection
> is made has been come at by exploitation
> of that illegality or instead by
> means sufficiently distinguishable
> to be purged of the primary taint.

<u>Id</u>. at 488.   Our Court of Appeals noted that

> In the case of statements, <u>Wong
> Sun</u> requires that they be suffi-
> ciently an act of free will to
> purge the primary taint. "Id.
> [371 U.S.] at 486.   Courts must
> make this determination on the
> facts of each case after considering
> such matters as" [t]he temporal
> proximity of the arrest and the
> confession, the presence of
> intervening circumstances," and
> the purpose and the flagrancy
> of the official misconduct.
> <u>Brown</u> v. <u>Illinois</u>, 422 U.S. 590,
> 603-04 (1975)

<u>United States</u> v. <u>Davis</u>, 617 F.2d 677 (D.C. Cir. 1979).   In Davis, the Court refused to exclude grand jury testimony of Gelestino given after he had retained counsel and reflected on his agreement with the government even though he was the victim of an illegal arrest at which other, suppressed, statements were made.

Based on the instant facts, we submit that the statements made
by the defendant were not the result of the seizure.  Defendant had
not been arrested.  Defendant came to a meeting with law enforcement
officers voluntarily and in the company of his attorney.  Defendant
had the advice of his attorney during the course of the interview
and refused certain requests of the authorities based on that
advice.  Finally, defendant was advised of his rights, waived them
and again made inculpatory statements.  Certainly on these facts
exclusion is not appropriate.

2.  The Defendant's Statements Were Voluntary

Defendant claims that his statements must be suppressed because
they were involuntary.  Defendant's claim is based on his assertion
that Postal Inspector Northrop

> "advised counsel that if the defendant
> came in for an interview the government
> would return to him the material seized
> at his home.  Northrop said he wanted
> to review the material with the defen-
> dant prior to returning it and explain
> to him why he should not have the ma-
> terial the agents found obscene.  Counsel
> was further advised that Mr. Nader
> would not be arrested and no prosecu-
> tion planned."

Defendant's motion, p. 31.  While we dispute that any such repre-
sentations were made, we submit that even if they were, the
defendant's statements were voluntary.

6/

---

6/  Counsel for the defendant, an experienced attorney who had
previously served as an Assistant United States Attorney was fully
aware that federal investigators could not make the promises it is
claimed were made.  Counsel was further aware that the prosecutor
assigned to the case was out of town during her discussions with
Northrop.  Finally, defendant can produce no document or writing
made by Northrop agreeing to not prosecute the defendant.

- 25 -

At a hearing on the defendant's claim, the government must prove that the statements were voluntary by a preponderance of the evidence in order to allow their admission. <u>Lego</u> v. <u>Twomey</u>, 404 U.S. 477, 482-484 (1972). The question to be determined is whether the defendant's will has been overborne by coercive pressures or illegal inducements. The test for voluntariness is whether the confession is "the product of an essentially free and unconstrained choice by its maker." <u>Culombe</u> v. <u>Connecticut</u>, 367 U.S. 568, 602 (1961). In making this judgment, courts have approached the problem on a case-by-case basis based on the totality of the circumstances, <u>Frazier</u> v. <u>Cupp</u>, 394 U.S. 73 (1969), with particular attention to the personal characteristics of the accused. <u>Gallegos</u> v. <u>Colorado</u>, 370 U.S. 49 (1962).

The operative factor in this case is the presence of the defendant's counsel.

> The presence of counsel . . . would be the adequate protective device neces- sary to make the process of police interrogation conform to the dictates of the privilege [against compelled self-incrimination.] His presence would ensure that statements made in the government-established atmosphere are not the product of compulsion.

<u>Miranda</u> v. <u>Arizona</u>, 384 U.S. 436, 466 (1966).

Defendant, however, cites the broad language of <u>Bram</u> v. <u>United States</u>, 168 U.S. 532, 542-43 (1897) as forbidding any "direct or implied promise." But the language in <u>Bram</u> was explained in <u>United States</u> v. <u>Brady</u>, 397 U.S. 742 (1970). In <u>Brady</u>, the Court approved

as voluntary a negotiated plea of guilty in order to avoid capital punishment.  After quoting the broad dicta of Bram, the Court ruled that Bram did not require a finding of involuntariness.

> Bram dealt with a confession given by a defendant in custody alone and unrepresented by counsel.  In such circumstances, even a mild promise of leniency was deemed sufficient to bar the confession not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess.  But Bram and its progeny did not hold that the possibly coercive impact of a promise of leniency could not be dissipated by the presence and advice of counsel any more than Miranda v. Arizona, 384 U.S. 436 (1966) held that the possibly coercive atmosphere of the police station could not be counteracted by the presence of counsel or other safeguards.

Id. at 574.  See also, United States v. Davis, 617 F.2d 677 (D.C. Cir. 1979).

> The test, even in cases where some inducement exists is
>> whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not truly self-determined.

United States v. Reed, 572 F.2d 412 (2d Cir. 1978), cert. denied, sub nom., Goldsmith v. United States, 439 U.S. 913 (1978).

The circumstances in this case clearly show that the defendant voluntarily met with and spoke to the agents. Even if there was some thought, initially, that the defendant's statements might not be used against him, there was no question after he was advised of his rights of the adversary nature of the interview. After the advice of rights, defendant continued to meet with and talk to the agents for approximately one hour. To now claim that the defendant's statements were not voluntary is absurd. Therefore, we submit the defendant's motion should be denied.

Respectfully submitted,

JOSEPH E. DIGENOVA
United States Attorney

BY:

DOUGLAS J. BEHR
Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a copy of the foregoing Opposition upon defendant by mailing a copy thereof to his attorneys, David Povich, Esquire, and Richard Hoffman, Esquire, WILLIAMS & CONNOLLY, Hill Building, 839 17th Street, N.W., Washington, D.C. 20036, on this 24th day of April, 1985.

DOUGLAS J. BEHR
Assistant United States Attorney
U.S. District Courthouse
Washington, D.C. 20001
272-9078

EXHIBIT A

EXHIBIT B

| **United States District Court** | DISTRICT of Columbia | |
|---|---|---|
| | DOCKET NO. | MAGISTRATE'S CASE NO. 84-0241M |

United States of America
vs.
2019 Connecticut Avenue
~~d~~ as a 4-story residence with white
~~ex~~terior on 1st floor.  Red brick ex-
~~t~~ on 2nd & 3rd floor and a greenish
~~r~~oof with white trim on 4th floor.  Front
~~lef~~t ground side of front with a black barred foyer.  2019 is clearly visible.

NAME AND ADDRESS OF JUDGE¹ OR U.S. MAGISTRATE

~~signed~~ being duly sworn deposes and says: That there is reason to believe that

~~the~~ person of ☐ on the premises known as | DISTRICT of Columbia

~~2019~~ Connecticut Avenue, described as a 4-story residence with white stone exterior on
~~1st~~ floor.  Red brick exterior on 2nd & 3rd floor and a greenish slate roof with white
~~trim~~ on 4th floor.  Front door on left ground side of front with a black barred foyer.
~~2019~~ is clearly visible.

~~following~~ property (or person) is concealed

1 8MM Movie "File #11 Lover boys Rick & Tony," 1 Magazine, Piccalo Extra #15,,
1 magazine "Fucking Children," 1 Magazine "Lolli Pops #2," 1 Magazine "Bambino #1 and
Advertisement for Movie of Joe and Tom #3," in addition to other photographs, magazines,
and writings and documents which are evidence of violations of Title 18, U.S. Code,
Section 1461, 1462.

~~~~nt alleges the following grounds for search and seizure ²

~~~~e attached affidavit which is incorporated as part of this affidavit for search warrant

~~~~nt states the following facts, establishing the foregoing grounds for issuance of a Search Warrant

(SEE ATTACHED AFFIDAVIT)

| SIGNATURE OF AFFIANT | OFFICIAL TITLE, IF ANY |
|---|---|
| ~~Donald~~ Bludworth | Special Agent, U.S. Customs Service |

~~~~n to before me, and subscribed in my presence:

| April 12, 1984 | JUDGE¹ OR US MAGISTRATE |

~~~~ited States Judge or Judge of a State Court of Record.
~~~~ search is to be authorized "at any time in the day or night" pursuant to Federal Rules of Criminal Procedure 41(c), show reasonable cause therefor.

84-0241M

<u>AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR</u>
<u>2019 CONNECTICUT AVENUE, NW, WASHINGTON, DC  20008</u>

Donald Bludworth is your affiant and is a Special Agent with U.S. Customs

The affiant has been informed that:

On or about March 27, 1984, Andrew Taylor, Customs Inspector, Special Processing, while performing customary, normal border searches of incoming mail at the Jersey City, NJ Mail Processing Plant for Incoming Mail, performed a customs inspection on a first-class letter addressed to Mr. J. Nader c/o International Insight, 2019 Connecticut Avenue, NW, Washington, DC 20008, U.S.A.  The customs declaration disclosed that it contained books.  The letter itself is described as a brown mailing pack type envelope, approximately 12" by 8 1/2" bearing the above-named address and a return address of Ralf Zonatz, 1012 LK Amsterdam, Domrak, 42-43 Holland, bearing two green postage stamps from the Netherlands. The envelope was also marked "book" twice on the front side.  This was handwritten in a black pen.  The package was opened as per the authority of the U.S. Customs Department, upon which the following items to which affiant has probable cause to believe are obscene, were discovered and seized:

1.    One (1) 8 MM Movie "Film #11 Lover boys Rick & Tony"
2.    One (1) Magazine "Piccalo Extra #15"
3.    One (1) Magazine "Fucking Children"
4.    One (1) Magazine "Lolli Pops #2"
5.    One (1) Magazine "Bambino #1"
6.    One (1) Advertisement for movie of Joe & Tom #3

This seizure occurred at approximately 8:30 a.m. on March 26, 1984, and was given Seizure No. 84-46-01-00281.

Also received were one magazine entitled "Boy No. 53" containing photos of nude and dressed boys, one magazine entitled "Sweet Little 16, Volume 3, No. 8" and two black and white pictures of nude boys.

The material was reenclosed in the original container and then mailed to Special Agent Carol Hawkins, Office of Investigations, U.S. Customs Service, 12310 Pinecrest Road, Suite 202, Reston, VA 22091, via Registered Mail.  The package was mailed under Registered Mail No. R070-949-069.  The material was delivered to the Customs Office in Reston and personally opened by Special Agent Don Bludworth.  An inventory of the materials contained in the original package was made by Agent Bludworth, and it was the same as the original inventory conducted by the Customs Inspector in New Jersey.  The material is currently in the possession of Agent Bludworth.

84-024-M

The magazines entitled "Piccalo Extra No. 15", "Lolli Pops No. 2" and "Bambino No. 1" listed as Nos. 2, 4, and 5 above contain color and black and white photographs of young boys committing acts of masturbation, and fellatio. Additionally, magazines "Piccalo Extra No. 15" and "Lolli Pops No. 2" listed above as Nos. 2 and 4 show young boys engaged in anal intercourse.

The magazines entitled entitled "Fucking Children" contains color photographs of young boys and girls committing fellatio, masturbation and intercourse. The back cover of the magazine has an advertisement for "Lolita" and "Perverse Kinder" magazines described as "Lolita" magazines and "Children Making Love..."

The eight millimeter movie entitled "Film No. 11, Lover Boys Rick and Tony" is contained in a wrapper, depicting two boys, who appear to be pre-pubescent, committing anal intercourse and fellatio. The text of the wrapper describes the boys as ages 11 and 14. Your affiant was informed by Customs Agents in New Jersey that they viewed the film and that it contained scenes consistent with the photographs on the wrapper.

The advertisement for the movie "Joe and Tom No. 3" shows two boys who appear to be pre-pubescent committing mutual masturbation and fellatio. The text of the advertisement says "having seen this film, who in the world could deny that kids of 10 are not interested in sex..."

On April 10, 1984, the originals of the items listed above were shown to U.S. Magistrate Patrick J. Attridge. Copies of the items are attached hereto and incorporated by reference.

Affiant interviewed S/A Walter E. Hekala, Jr., of the U.S. Customs Service who during the period 1975 - 1980 conducted approximately 150 investigations of illegal importation of pornography, particularly pedophelia. In S/A Hekala's experience, persons who order pedophelia material from overseas retain copies of order blanks and catalogs for such material and evidence of payment for it. Hekala stated that payment is generally made by U.S. Postal Money Order or bank money order in American dollars. Hekala states that during the period of his investigation, pedophelia magazines typically cost $15 each and 8MM films typically run $50 - $75 per film.

Hekala further states that in his experience pedophiles keep records of all purchases to keep track of the reliability of suppliers. Hekala further states that in his experience, pedophiles generally have large quantities of pornographic material which is usually of foreign origin.

On April 12, 1984, at 1340 HOURS, the above described items were delivered in the original package to 2019 Connecticut Avenue, NW, Washington, DC 20008.

84-0241M

Based on the above described facts, your affiant has probable cause to believe that there is currently secreted inside of 2019 Connecticut Avenue, NW, Washington, DC 20008, items described herein as well as other photographs, magazines, writings and documents which are evidence of violations of Title 18 USC 1462 and 1461.

Donald Bludworth
Special   Agent,   U.S.   Customs

Sworn to and subscribed before me this 12 day of April 1984.

United States Magistrate

# United States District Court

| UNITED STATES OF AMERICA | DISTRICT OF COLO__1a |
|---|---|
| v. | DOCKET NO. |
| _19 Connecticut Avenue, N.W. _scribed as a 4-story residence with _hite stone exterior on 1st fl.  Red _rick exterior on 2nd & 3rd Fl. and _greenish slate roof with white trim on _th fl.  Front door on left ground side of front with a black barred foyer | MAGISTRATE'S CASE NO. 84-0241M |
|  | TO:  Agent of U.S. Customs Service |

Affidavit(s) having been made before me by the below-named affiant that he/she has reason to believe that (~~on the person of~~) (on the premises known as) __2019 Connecticut Avenue, N.W., Washington, D.C.__

in the_____ District of __Columbia_____ there is now being concealed certain property, namely  1 8MM Movie "Film #11 Lover boys Rick & Tony", 1 Magazine "Piccalo Extra #15", 1 Magazine "Fucking Children", 1 Magazine "Lolli Pops #2,"1 Magazine "Bambino #1, and 1 Advertisement for Movie of Joe and & Tom #3," in addition to other photographs, magazines, writings and documents which are evidence of violations of Title 18, U.S. Code, Section 1461 and 1462.

and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above-described and the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s),

YOU ARE HEREBY COMMANDED to search on or before_____ April ~~27,~~ 1984 ___
(not to exceed 10 days) the person or place named above for the property specified, serving this warrant and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) (~~at any time in the day or night~~)* and if the property be found there to seize it, leaving a copy of this warrant and receipt for the property taken, and prepare a written inventory of the property seized and promptly return this warrant to_____
_____ as required by law.                U.S. Judge or Magistrate

| NAME OF AFFIANT | SIGNATURE OF JUDGE ** OR US MAGISTRATE | DATE/TIME ISSUED |
|---|---|---|
| Donald Pledworth |  | April 12, 1984  1:55 |

*If a search is to be authorized "at any time in the day or night" pursuant to Federal Rules of Criminal Procedure Rule 41(c), show reasonable cause therefor

EXHIBIT D

## SEARCH WARRANT INVENTORY

### REPORT AND RETURN

The following list constitutes an official inventory of items seized from _The Turner of Germany Harbor_ _Street 778 2019 Consistent of Pen Fill, World C. Omins_ _(person, premises, conveyances)_

on _4-13-84_ at _3.50_ _p.m._ as a result of a U.S. District Court Search Warrant
_(Date)_ _(Time)_

by the U.S. Postal Inspection Service _and the U.S. Custom Dept._

This search warrant inventory was prepared by Inspector _Alewin Green + Robt_ _Dilarton S/A USCS_ and in the presence of Inspector _D. Martin, Tula Hyger_ S
USC
U.S. Postal Inspection Service.

I hereby acknowledge receipt of a copy of the attached inventory as presented to me by a member of the U.S. Postal Inspection Service.

_J. Sauritt_ _4-13-84_
_(Signature of Recipient)_ _(Date)_

☐ *NOTE:* Check block if location of search warrant was unoccupied and copy left in conspicuous location.

_(This section to be completed only on official return to issuing Judge)_

I swear that this inventory is a true and detailed account of all the property taken by me on the warrant.

_____
(Signature of Inspector)

Subscribed and sworn to and returned before me this _____ day of

_____ , 19 _____.

_____
U.S. District Court Judge/Magistrate

District of _____

DISTRIBUTION
ORIGINAL COPY — Issuing Judge
YELLOW COPY — Inspector
PINK COPY — Recipient

Item # ___1___   PRIMARY LOCATION: _2019 Connecticut Ave NW WDC Nader's R___
SPECIFIC LOCATION: _Blue Suitcase in the bottom shelf_
_of Cabinet _____ behind the door_
DESCRIPTION: _numerous Obscene magazines films, photos of_
_young boys_

Item # ___2___   PRIMARY LOCATION: _2019 Connecticut Ave NW WDC. Nader Bedroom_
SPECIFIC LOCATION: _MAY's dresser _____ 2nd drawer from Top_

DESCRIPTION: _A gray lingerphone (carrying case) containing_
_numerous Obscene magazine and photos of young_
_boys_

Item # ___3___   PRIMARY LOCATION: _2019 Connecticut Ave NW. WDC. Naders Bedroom_
SPECIFIC LOCATION: _Mar's Dresser. Top drawer_

DESCRIPTION: _One Envelope A __ 3. addressed to Mark Nader_
_And 3, eight millimeter movies_

Item # ___4___   PRIMARY LOCATION: _2019 Connecticut Ave NW WDC. Naders Bedroom_
SPECIFIC LOCATION: _Mins Dresser 4th drawer from top_

DESCRIPTION: _One jacks Records and Tape, bag containing_
_2 eight millimeter movies_

PREPARER'S INITIALS _____

DISTRIBUTION
ORIGINAL COPY — Issuing Judge
YELLOW COPY — Inspector
· PINK COPY — Recipient

Item # _5_ PRIMARY LOCATION: 2019 Conn. t. Ave. N.W. WDC Nichols Room

SPECIFIC LOCATION: _____ Main Dresser Bedroom Gr. top

DESCRIPTION: A brown wallet and "Imster" Camera
bag #1152 with postcards, cloth. Miscellaneous act. es
all taped together.

Item # _6_ PRIMARY LOCATION: 2019 Connecticut Ave. NW WDC Nichols Bedroom

SPECIFIC LOCATION: Main Dresser. Top of Dresser

DESCRIPTION: Black Picture Frame with Numerous Photos in it.
Assorted pictures and negatives all in a red and white
photo package from the "Kelly film Expose lab." Rite 35mm
used film, Japanese biscuits. Miscellaneous travel papers.

Item # _7_ PRIMARY LOCATION: 2019 Connecticut Ave NW WDC Nichols Bedroom

SPECIFIC LOCATION: Chair to the right of the dresser.

DESCRIPTION: 84 photo albums, one Manilla package marked
Geographical, and one gold picture frame with photos
all in a big bag marked "Game of the XX IIIrd if mapere."

Item # _8_ PRIMARY LOCATION: 2019 Connecticut Ave NW WDC Nichols Bedroom

SPECIFIC LOCATION: Night stand to the right of the bed
on top

DESCRIPTION: 3 packages of film all taped together.

PREPARER'S INITIALS _M Kgee_

Item # 9   PRIMARY LOCATION: 2419 Connecticut NW, WDC Nolers Bedroom
SPECIFIC LOCATION: Nite stand to the right of Nodersted.
2nd drawer of nite stand
DESCRIPTION: A photo sealed in plastic with the
"Normandi High School" "Invaders" "Parma Ohio"
on it.

Item # 10   PRIMARY LOCATION: _____
SPECIFIC LOCATION: _____
_____
DESCRIPTION: _____

Item # _____   PRIMARY LOCATION: _____
SPECIFIC LOCATION: _____
_____
DESCRIPTION: _____

Item # _____   PRIMARY LOCATION: _____
SPECIFIC LOCATION: _____
_____
DESCRIPTION: _____

PREPARER'S INITIALS _____

Item # 11   PRIMARY LOCATION: _____

SPECIFIC LOCATION: _Desk along south wall of 4th floor bed_
_room. Commute side of house_

DESCRIPTION: _ASSORTED MAGAZINES, books, address book_
_photos, photo albums, cassette tapes, video tapes,_
_cloth bags, letters, audio, papers, photo negatives_
_____ PTR 4/12/84

Item # 12   PRIMARY LOCATION: _____

SPECIFIC LOCATION: _Books - below located along east wall_
_of 4th floor bedroom in Comm. Ave side of house_

DESCRIPTION: _Assorted cards, photos, etc._
_(multi-page type)_                 PTR
_____ 4/12/84
_____ JJH
_____ 6-12-84

Item # 13   PRIMARY LOCATION: _____

SPECIFIC LOCATION: _Desk location in _____

DESCRIPTION: _Of ___ photo _____
_____ JJH 4-12-84
_____

Item # 14   PRIMARY LOCATION: _____

SPECIFIC LOCATION: _Located ch file (___ of ___)_
_NE corner of room_

DESCRIPTION: _Per card _____
_name _____ written on_
_____
_____ JJH
_____ 4-12-84

PREPARER'S INITIALS _PTR_

## UNITED STATES v. GUARINO

Cite as 729 F.2d 864 (1984)

881

### APPENDIX A—Continued

Fellow F.B.I. Agent James A. Yacobucci advised me that on February 2, 1978, at about 10:30 A.M., he went to United Discount at 646 Washington St., Boston, and at the rear of the store on a magazine rack he saw displayed magazines entitled "Sex Foto Fiction No. 1" and "Sex Foto Fiction No. 2." He purchased the two magazines for $6.00 each. Yacobucci turned the magazines over to me. I have reviewed both magazines. They both display numerous acts of fellatio, cunnilingus and intercourse with the camera emphasizing the genitalia as much as possible.

Detective Hurley advised me that on Tuesday, February 14, 1978, he observed a truck bearing R.I. commercial plate 91826 parked at 681 Washington St., Boston, about 1:00 P.M. Thereafter, Hurley observed a white male take seven cartons from the truck, and deliver them to 646 Washington St. The white male then made three delivery trips to 10 Boylston St., delivering some eighteen cartons. He exited 10 Boylston St. with five cartons.

Fellow Agent Philip Reilly advised me that on Tuesday, February 21, 1978, he was on surveillance duty at 208 Laurel Hill Ave., Providence, R. I. He stated that he observed a truck bearing R.I. commercial plate 91826 loaded with about 35 or 40 cartons from the loading dock area of Imperial Distributors, Inc. The truck departed at about 9:35 A.M. Reilly followed the truck over the state line into Massachusetts. At about 11:00 A.M., I observed a truck bearing R.I. commercial plate 91826 turn into Washington St., Boston. A white male driver was observed to deliver nine cartons at 673B Washington St., ten cartons at 646 Washington St., thirteen cartons at 10 Boylston St., and two cartons at 18 LaGrange St., all of Boston.

Fellow F.B.I. Agent Edward Kavanagh advised me that today at 9:18 a.m., he was on surveillance at Imperial Distributors, Inc., 208 Laurel Hill Ave., Providence, R.I. He observed a truck bearing R.I. commercial plate 91826 being loaded with cartons at the Imperial Distributors loading dock. The truck left Imperial Distributors at about 9:32 a.m. The truck was observed to cross the state line into Massachusetts. For the foregoing reasons, I believe that a truck bearing R.I. commercial plate 91826 contains obscene, lewd, lascivious, and filthy books, magazines, newspapers, prints, and other matter of an indecent and immoral character, and that said truck has transported said materials in interstate commerce for the purpose of sale and distribution; all in violation of Title 18, United States Code, Section 1465.

### APPENDIX B

**Lo-Ji Sales Search Warrant**

(reproduced from Supreme Court
Record App. at 8a – 26a)

## LOCAL CRIMINAL COURT
### Town of Wawayanda, County of Orange,
### State of New York

HONORABLE JOHN O'CONNOR,

*Issuing Judge.*

To ANY POLICE OFFICER OF THE NEW YORK STATE POLICE

You are hereby authorized and directed to search the following premises: a single story brown wood frame build-

APPENDIX B—Continued

ing named "Adult Store", located on Route 17M directly across from the Chadwick Motel in the Town of Wawayanda, Orange County, New York.

You are hereby authorized and directed to search for and seize the following property, to wit:

1.) 200 foot reels of 8mm motion picture film entitled LINDA AND DUKE.

2.) 200 foot reels of super 8mm motion picture film entitled FOUR FOR DINNER.

3.) The following items that the Court independently has determined to be possessed in violation of Article 235 of the Penal Law:

[In the warrant as originally issued, this space was left blank. _After_ the search, it was filled in with a multi-page list of the items found by the search party.]

This warrant must be executed not more than 10 days after the issuance and any property seized pursuant hereto shall be returned and delivered to the Court without unnecessary delay.

The Court hereby specially determines that this Warrant shall constitute notice to any persons arrested or charged pursuant to its execution, that they are entitled to immediate adversary hearing, as soon as practicable, so that a determination can be made as to whether or not the material seized was possessed in violation of Article 235 of the Penal Law.

DATED: Goshen, New York
     June 25, 1976

/s/ JOHN O'CONNOR
_Local Justice_

THE APP
   STATE
   FOLLO
   buildi
   direct
   Wawa

STATE OF
COUNTY

I, JOHN
and says

1. I an
the kind
690.05(1)
Criminal

2. The
property
lowing p
named "A
from the
Orange C

DEC 2 0 1984

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY D Male DEPUTY

DEC 1 0 198

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY D Male DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,       )
                                )       Criminal No. 84-0662-G
            Plaintiff,          )
                                )
    v.                          )
                                )
KEVIN RICHARD MAHAN,            )       MEMORANDUM OF DECISION
                                )
            Defendant.          )
_____)

The defendant was indicted on four counts arising from his receipt through the mail of four parcels containing child pornography.  Counts one and two charged the defendant with receiving obscene materials in violation of 18 U.S.C. §545. Counts three and four charged the defendant with knowingly receiving through the mail materials depicting minor children engaged in explicit sexual conduct in violation of 18 U.S.C. 2252(a)(2).

In April, 1984, defendant placed an order for magazines featuring child pornography, apparently for his own personal use within his home.  On May 21, 1984, Congress passed the Child



1   Protection Act of 1984, making it a crime to knowingly receive
2   child pornography through the mails.  On May 29, 1984, U.S.
3   Customs officials intercepted a magazine containing child
4   pornography addressed to defendant.  The magazine is not the
5   subject of this indictment.  On June 22, customs officials
6   intercepted another child pornography magazine addressed to
7   defendant.  The defendant was called and asked to pick up his
8   international mail at the post office on June 28.  Later that day,
9   agents entered the defendant's house with a search warrant and
10  found the two magazines named in the indictment, along with eleven
11  other child pornography magazines and thirteen pornographic films.
12      Defendant moved to dismiss the indictment on the following
13  grounds:  1) that 18 U.S.C. §2252(a)(2) as applied to defendant
14  was an ex post facto law in violation of the Sixth Amendment;
15  2) that 18 U.S.C. §2252(a)(2) is unconstitutional because it
16  permits the government to seize privately possessed expressive
17  materials in violation of the First Amendment;  3) that the
18  magazines could not have been imported "contrary to law" since
19  customs agents permitted them to enter the country.  Defendant
20  also asks that counts three and four of the indictment be
21  dismissed because 18 U.S.C. §2252(a)(2) is overly broad and
22  unconstitutionally vague; that counts one and two of the
23  indictment be dismissed because the seized materials are not
24  "obscene"; and that the seized materials not named in the
25  indictment be returned to defendant because they are the fruits of
26  an unauthorized seizure.

2

The Child Protection Act of 1984

On May 21, 1984, Congress enacted the Child Protection Act of 1984, which replaced the Protection of Children Against Sexual Exploitation Act of 1977.  Through the new Act, Congress intended to attack the growing problem of child pornography in the country by increasing prosecutorial powers in such cases.  Among the more important changes in the law were the elimination of the requirement that the defendant have transported, shipped, or received child pornography through the mail "for the purpose of sale or distribution for sale"; the elimination of the requirement that the child pornography be determined "obscene"; the raising of the definition of a minor protected by the statute from a person under the age of 16 to a person under the age of 18; the creation of a new offense of knowingly reproducing any visual depiction for distribution in commerce or through the mails; and the enlargement of penalties for violations under this section.  18 U.S.C. §2252.

DISCUSSION

Ex Post Facto Application of 18 U.S.C. §2252

Defendant contends that he ordered the child pornography in April, 1984, before Congress passed 18 U.S.C. §2252; thus he argues that punishing him for receiving the materials weeks later amounts to an _ex post facto_ application of the statute.

. . . . .

3

O 72
Rev. 9 (82)

Defendant suggests that the ordering of the materials and the subsequent receipt of those materials should be considered a single event, since "(it) is as if one threw a ball up into the air and while the ball was up in the air the Congress enacted legislation making it a crime for one to throw a ball into the air which drops to earth." Although the defendant's argument has intuitive appeal, his novel expansion of the definition of the word "receipt" is unacceptable. "(T)o 'receive' something is to take it into possession and control. Thus when an object is taken into possession and control, it has been received." U.S. v. Fikes, 373 F. Supp. 1052, 1056 (E.D.Mi. 1974). While this narrower view of "receipt" does not vindicate defendant's argument that he had no choice but to receive the materials after he had ordered them, neither is it patently unfair to the defendant. To the same extent that defendant was guilty of a crime when he received the package, so he was also free of guilt while awaiting the packages even after the statute had been passed. Under 18 U.S.C. §2252(a)(2), receiving child pornography is a crime; ordering such materials is not. Defendant cannot endeavor to enjoy the beneficial aspects of a law without suffering its burdens as well.

That the legislature intended to punish all knowing recipients of child pornography through the mails is evident in that the crime of "knowingly receives and distributes" is set out

. . . . .

. . . . .

4

separately from "knowingly transports or ships" in the statute.[1]
The paramount concern of Congress in passing this legislation was
"the harm to children involved in child pornography schemes,"
which "exists whether or not those who initiate or carry out these
schemes have a profit motive or commercial purpose." H.R. Rep.
No. 98-536, 98th Cong., 2d Sess. 8, reprinted in 1984 U.S. Code
Cong. & Ad. News 501. The legislature has not exceeded the scope
of its powers in choosing to prosecute pedophiles who receive
child pornography in the mail at their homes.

When, as in this case, there is no doubt that such a receipt
occurred after the enactment of the statute violated by the
receipt, the Sixth Amendment clause prohibiting ex post facto laws

---

[1] 18 U.S.C. §2252(a) reads:

Any person who

(1)    knowingly transports or ships in interstate or foreign
       commerce any visual depiction, if

       (A)    the producing of such visual depiction involves the use
              of a minor engaging in sexually explicit conduct; and

       (B)    such visual depiction is of such conduct; or

(2)    knowingly receives or distributes any visual depiction
       that has been transported or shipped in interstate or
       foreign commerce or mailed, if--

       (A)    the producing of such visual depiction involves the use
              of a minor engaging in sexually explicit conduct; and

       (B)    such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

5

has not been violated. <u>United States v. Woods</u>, 696 F.2d 566 (8th Cir. 1982); <u>United States v. Hopkins</u>, 529 F.2d 775 (8th Cir. 1976), <u>cert. denied</u> 431 U.S. 965 (1977).

Lastly, we note that this was not a case in which the defendant made an effort to avoid receipt but failed. Agents observed the defendant willingly retrieve the envelopes from the post office.

"Receipt" Under 18 U.S.C. §2255(a)(2)

The two magazines which are the subject of the four counts of the indictment were seized at the defendant's home. Defendant thus argues that 18 U.S.C. §2252(a)(2) violates the First Amendment by punishing private possession of printed materials.

Private possession of obscene materials is protected by the First Amendment. <u>Stanley v. Georgia</u>, 394 U.S. 557 (1969). Moreover, most reported cases since <u>Stanley</u> involving seizures of obscene materials have taken place at locations other than private homes. <u>See, e.g.</u>, <u>United States v. Thirty-Seven Photographs</u>, 402 U.S. 363 (1971); <u>Paris Adult Theater I v. Slaton</u>, 413 U.S. 49 (1973); <u>United States v. Orito</u>, 413 U.S. 139 (1973). None of these cases, however, render unconstitutional a statute prohibiting <u>receipt</u> of child pornography at a private home. In <u>United States v. Orito</u>, 413 U.S. 139 (1973), the Supreme Court rejected the notion that "the right to possess obscene material in the privacy of the home . . . creates a correlative right to

6

receive it, transport it, or distribute it." Id. at 141.
Therefore, contrary to defendant's contention, receipt of such
material that has travelled in interstate or foreign commerce is
not an element of possession. Hence First Amendment protection
does not attach to the receipt of child pornography which comes
through the mail.

In this case agents observed the defendant willingly receive
child pornography at the post office. The question of whether
mere possession of child pornography in the home is
constitutionally protected will not be addressed herein, since the
court has heretofore decided that receipt of child pornography
through the mail is not protected by the First Amendment. The
defendant herein is charged only with the act of receiving
material and, because of the foregoing reasoning of the Court, the
defendant's motion to dismiss on these grounds is denied.

"Imported Contrary to Law"

Counts 1-4 of the indictment charge the defendant with
importing obscene materials contrary to law in violation of 19
U.S.C. §1305. Defendant suggests that since the customs officials
initially seized the packages but then permitted them to be
delivered to defendant's home, the materials were not "imported
contrary to law."

In United States v. One 1974 Jeep, Serial Number
J4835TE17237, 536 F.2d 1285 (9th Cir. 1976), the Ninth Circuit
held that mere seizure of an article by the Government did not

7

72
(.8/82)

result in the article's losing its "contraband" character.   In that case, the court reasoned that the government must not be deprived of an effective method of obtaining evidence such as controlled deliveries, for such a result would be contrary to Congressional intent.

Alternatively, the defendant argues that 18 U.S.C. §1461 dictates an absolute duty on the part of customs officials and postal authorities to prevent the importation and delivery of allegedly obscene materials.   Thus the defendant reasons that he was justified in believing that he was legally receiving the pornographic items and that he should not be held responsible for the failure of the customs officials in their duties.

The defendant's argument must be rejected.   It would be contrary to legislative intent to hinder law enforcement from collecting evidence by not permitting them to use controlled deliveries.   See <u>Illinois v. Andreas</u>, 103 S.Ct. 3319 (1983).

## Constitutionality of 18 U.S.C. §2252

Defendant argues that counts three and four of the indictment should be dismissed because 18 U.S.C. §2252(a)(2) is overly broad and unconstitutionally vague.   Defendant bases his argument on two grounds:   first, that the term "visual depiction" in the statute is not defined and could arguably refer to many legitimate scientific and educational publications; and second, that no person of common intelligence could discern from pictures of genitalia or the pubic area whether the individual in the picture

8

was seventeen, or eighteen, nineteen or twenty-nine years of age.

The Supreme Court's decision in New York v. Ferber, 458 U.S. 747 (1980), easily disposes with these arguments. The state statute at issue in Ferber proscribed the use of a child in a "sexual performance". N. Y. Penal Law §263.05. A "performance is defined as "any play, motion picture, photograph or dance" or "any other visual representation exhibited before an audience." N. Y. Penal Law §263.00(4) (emphasis added). It is difficult to see why the term "visual depiction" should be considered unconstitutionally vague while "visual representation" is not. In addition, the Court specifically noted that "a work which, taken on the whole, contains serious literary, artistic, political, or scientific value may nevertheless embody the hardest core of child pornography." Ferber, 458 U.S. at 761. Therefore, defendant's contention that the statute is overly broad because it infringes on the realm of science and education is rejected.

This Court cannot find 18 U.S.C. §2252(a)(2) to be unconstitutionally vague simply because it is difficult for the average person to distinguish the genitalia of a seventeen-year-old from that of a nineteen-year-old. The New York statute at issue in Ferber applied to minors under the age of sixteen, as did the former 18 U.S.C. §2252(a)(2). It would be difficult to distinguish the genitalia of a fifteen-year-old from that of a seventeen-year-old in those cases; nonetheless, the Supreme Court has never ruled those statutes unconstitutionally vague. There-fore, for the following reasons, defendant's motion is denied.

9

"Obscenity" of the Subject Matter

Defendant requests dismissal of counts one and two because the articles at issue are not "obscene" under the test set forth in Miller v. California, 413 U.S. 15 (1973). In Miller, the Court ruled that a work is not entitled to First Amendment protection if the work, taken as a whole, appeals to the purient interest in sex; if the work portrays sexual conduct in a patently offensive way; and if the work, taken as a whole, does not have serious literary, artistic, political, or scientific value. Id. at 24.

Dismissal of the obscenity charges at this stage would be premature. The Government is entitled to attempt to prove obscenity at trial, and they have indicated that they intend to do so. The motion to dismiss counts one and two of the indictment is denied.

Return of Seized Materials Not Named in the Indictment

There is not sufficient evidence before the court for the court to rule re this motion; therefore, the government may wish to offer more evidence.

In view of the foregoing, defendant's motions are denied.

Dated: December ___10___, 1984.

Earl B. Gilliam, Judge
United States District Court

10

72
v.B.82

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

**FILED**

APR 30 1985

JAMES F. DAVEY, Clerk

UNITED STATES OF AMERICA,          :

        v.          :          CRIMINAL NO.:   85-33

GEORGE A. NADER          :

                  :

_____          :

O R D E R

Upon motion of the United States of America to enlarge the time within which to file its oppositions to defendant's motions, it is this _____24th_____ day of _____April_____, 1985

ORDERED, that the time in which the United States of America, may file its oppositions to the defendant's motions be enlarged to and including Wednesday, April 24, 1985.

_____
UNITED STATES DISTRICT COURT JUDGE

*Nunc Pro Tunc*


COURTRAN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**F I L E D**

MAY  6 1985

JAMES F. DAVEY, Clerk

UNITED STATES OF AMERICA  )
                       )
                       )
      v.               )     Criminal No. 85-00033
                       )     Judge John Garrett Penn
                       )
GEORGE A. NADER         )     <u>Order</u>
                       )

     At the request of the Defendant, and there being no ob-
jection by the government, it is this ___6___ day of May,

     ORDERED, that Defendant, when not in the United States,
may report to the pre-trial services agency by calling his attor-
ney who shall then call pre-trial services on his behalf.  De-
fendant shall report in this manner, or personally when in the
United States, twice each week.

John Garrett Penn
United States District Judge

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

COURTRAN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

MAY 1 3 1985

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    :
                             :
        v.                   :          CRIMINAL NO.:   85-33
                             :
GEORGE NADER                 :          (Judge Penn)
                             :
_____:

### SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
### DEFENDANT'S MOTION TO SUPPRESS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits the following supplemental memorandum in opposition to the defendant's motion to suppress.

During the course of the argument on the defendant's motion, the Court inquired of the Government about the scope of the execution of the warrant. The point the Government tried to make to the Court is that the personal items such as photograph albums, letters, and toys seized by the agents were not seized under the authority of the warrant but were seized for the reasons set forth in footnote three of our original opposition. In other words, given the rationale put forth by Special Agent Northrop, he would have seized those same items no matter how specific the wording of the warrant had been essentially because he felt he had found evidence of other criminal activity in plain view. Thus, we submit, the question raised by the seizure of personal items is whether the agents exceeded the scope of the warrant as issued and not whether the



warrant as issued was unconstitutionally broad. Since the United States does not intend to use the personal items, and since the defendant does not challenge the execution of the search warrant as being overbroad, we do not address that issue.

The agents seized, under the authority of the warrant, a number of pedophiliac, foreign produced magazines and brochures advertising the availability of such magazines. These items, we submit, were clearly authorized by the warrant and sufficiently described therein. If the court is concerned about the seizure of the other items and the reasons therefore, we would suggest that an evidentiary hearing be held prior to the Court's ruling.

Respectfully submitted,

JOSEPH E. DIGENOVA
United States Attorney

BY:

DOUGLAS J. BEHR
Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Opposition has been made upon defendant by mailing a copy thereof to his attorney, David Povich, Esquire, Rick Hoffman, Esquire, WILLIAMS & CONNOLLY, Hill Building, Washington, D.C.  20036, on this ~~15th~~ 13th day of May, 1985.


DOUGLAS J. BEHR
Assistant United States Attorney
U.S. District Courthouse
Washington, D.C.  20001
272-9078

RECEIVED

MAY 13 1985

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

**MAY 21 1985**

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

United States of America    )
                            )
                            )
        v.                  )    Criminal No. 8500033
                            )    Judge John Garrett Penn
                            )
George A. Nader             )
_____)

### DEFENDANT'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO THE MOTION TO SUPPRESS

The government argues in its Supplemental Memorandum that the "personal items" such as photos, photo albums, and correspondence seized from defendant's home were taken not pursuant to the invalid general warrant but rather based on some theory of possible wrongdoing related to child molestation not disclosed to the magistrate prior to obtaining the warrant. The purpose of this argument is to prevent the Court from relying on the seizure of this material as evidence that the government requested, was issued, and executed, an unconstitutional general warrant. This post-hoc rationalization represents an attempt by the government to separate that material seized from the defendant's home which the government now no longer needs to prosecute the case.

The warrant issued in this case permitted the government to seize, in addition to the named publications, "other photographs, magazines, and writings and documents." Pursuant to

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000



the warrant, the agents made a wholesale seizure of practically all such material in the defendant's home, including the items described above.

In this case, <u>nothing</u> seized by the government offers even remote support for the view that any other offense was committed.  None of the material seized is contraband.  Indeed, it was not even in plain view,<sup>*/</sup> but rather was secured in envelopes, photo albums, and books.  Since nothing found in defendant's home was "plain view" evidence of other crimes, the government is effectively asking the court to believe that the agents deliberately deceived the magistrate by failing to disclose their intent to search for "evidence" of child molestation.  The argument that if the defendant had obscene magazines in his home he was likely to have molested children, in addition to being absurd, was based upon theories supposedly

─────────────

*/   Although now arguing that seizure of these items was outside the scope of the warrant, the government did not argue in its opposition to this motion, or in its supplemental submission, that the seizure of the "personal items" was justified by the "plain view" exception.  This is so because it is abundantly clear that, if outside the scope of the warrant, the seizure was unlawful notwithstanding the plain view doctrine.  As the government well knows, the seizure of things in plain view, not described in a warrant, is justified <u>only</u> if the officers conducting the search have <u>probable cause</u> to believe the material is evidence of a crime.  <u>Coolidge</u> v. <u>New Hampshire</u>, 403 U.S. 443 (1971).  The seizure of "any item unspecified in [an otherwise valid] warrant must possess an incriminating character plainly and immediately apparent on its face, a character sufficiently incriminating to establish probable cause for its seizure despite the absence of a warrant mentioning it."  <u>United States</u> v. <u>Heldt</u>, 668 F.2d 1238, 1267 (D.C. Cir. 1981).

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 2 -

known to the agents before they conducted the search yet not set forth in the affidavit seeking the warrant that was submitted to the magistrate.  We urge that the court is not obliged to accept the government's unusual argument that the agents deliberately exceeded the scope of the warrant.  In fact, the agents asked for a warrant that permitted such seizures, they were granted one, and the general search and seizure ensued.  It cannot be saved by creating an after-the-fact justification for the seizure, <u>which is itself invalid</u>, but is convenient because the government does not now wish to offer the evidence in the criminal trial.

Moreover, the explanation offered by the government calls upon the Court to make almost metaphysical distinctions. It is simply impossible to know whether the agents seized the material not particularized in the warrant under the catch-all language of the warrant or for some other equally unlawful, but more convenient, reason.  Where the warrant is unconstitutionally broad on its face and an unconstitutional general search and seizure occurs, the government cannot save the search by postulating alternative unlawful explanations for the seizure.

It is uncontradicted that the agents sought a warrant that gave them the broadest discretion to decide what to seize. It is undisputed that they in fact seized material that was outside the scope of any lawfully particularized warrant.  Here, as in <u>Lo-Ji Sales</u>, the warrant authorized the officers to decide in their sole discretion what to seize and effectively to complete the warrant as they conducted the search.  The danger of

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 3 -

such a general warrant is highlighted by the government's after-the-fact attempt to define the scope of the warrant to suit the needs of the prosecution.  It is precisely because the warrant itself does not particularly describe the items to be seized that it violates the Fourth Amendment, and the material seized in the search authorized by the warrant must be suppressed.

Respectfully submitted,

WILLIAMS & CONNOLLY

By _____
   David Povich
   Richard S. Hoffman

   839 Seventeenth Street, N.W.
   Washington, D. C.  20006
   (202) 331-5000

   Attorneys for George A. Nader

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Response to Government's Supplemental Memorandum in Opposition to the Motion to Suppress was mailed by first-class mail, postage prepaid, on May 21, 1985 to Douglas J. Behr, Assistant United States Attorney, Constitution Avenue & 3rd Street, N.W., Washington, D.C.  20001.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA    MAY 2  1985

CLERK, U.S. DISTRICT COURT,
DISTRICT OF COLUMBIA

United States of America        )
                                )
                                )
        v.                      )    Criminal No. 8500033
                                )    Judge John Garrett Penn
                                )
George A. Nader                 )
_____ )

REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO SUPPRESS

    I.  The Defendant Has Standing To Contest
        The Seizure Of The Package From His
        Residence.

        In a one page argument with remarkably little citation
to authority, the government argues that Mr. Nader does not have
standing to contest the seizure of the envelope from the hallway
of the home where he lives.  The government bases this argument
on the fact that defendant "only had exclusive control over a
bedroom" in the home and therefore, it argues, had no privacy
interest in the remainder of the house.  Opposition to Motion to
Suppress (hereinafter "Government's Brief") at 7.  But "exclusive
control" is not and never has been the governing legal test and
defendant's privacy interest in the home in which he lives is
patent.

        In Rakas v. Illinois, 439 U.S. 128 (1978), the Supreme
Court rejected the doctrine of "automatic standing" for targets
of a search and held that a defendant must have a legitimate
expectation of privacy in the area searched to contest the
validity of a search under the Fourth Amendment.  In so holding,

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000


COURTRAN

however, the Court reaffirmed the rejection of property concepts in defining privacy interests and recognized that a person can have "a legitimate expectation of privacy in the premises he was using and therefore could claim the protection of the Fourth Amendment with respect to a governmental invasion of those premises, even though his 'interest' in those premises might not have been a recognized interest at common law." <u>Id</u>. at 143.

Cases subsequent to <u>Rakas</u> make clear that there is no requirement of ownership or "exclusive control" for standing to attach.  Indeed, in <u>Lo-Ji Sales, Inc.</u> v. <u>New York</u>, 442 U.S. 319, 329 (1979), the unanimous Supreme Court recognized that even a retail store open to the public does not thereby lose its right to restrict entry to government officials or consent to wholesale searches and seizures.

In <u>United States</u> v. <u>Glover</u>, 555 F. Supp. 604, 611 (D.D.C. 1982), <u>aff'd</u>, 725 F.2d 120 (D.C. Cir.), <u>cert. denied</u>, 104 S. Ct. 1682 (1984), Judge Hogan of this court found Fourth Amendment standing where a defendant had the keys to a third party's apartment "had 24 hour access to it, kept his clothes there, slept there even if only to take naps, received phone calls there and kept his television set there."  The fact that another person has access to an apartment, or even primary control over it, is irrelevant.  See <u>United States</u> v. <u>Robinson</u>, 698 F.2d 448, 454 (D. C. Cir. 1983)(invited guest can have legitimate expectation of privacy in home of a third party); <u>see also</u> <u>United States</u> v. <u>Salvador</u>, 740 F.2d 752, 755 n.2 (9th Cir.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 2 -

1984), <u>cert. denied</u>, 105 S. Ct. 978 (1985) (defendants have standing to contest search of a relative's house where they stayed overnight, kept personal belongings, and left phone number as a place to be contacted); <u>United States</u> v. <u>Haydel</u>, 649 F.2d 1152, 1154-55 (5th Cir. 1981), <u>cert. denied</u>, 455 U.S. 1022 (1982)(defendant has standing to contest search of parent's bedroom, even where he did <u>not</u> <u>reside</u> in the home, because he kept clothing in there and occasionally stayed overnight).

In the instant case, the defendant lives in the home that was searched.  Although there is only one room which is <u>exclusively</u> his, he has access and use of the entire house, including the kitchen, bathroom, hallways, living room and the rest.  <u>See</u> Affidavit of Edna Gaunt, attached hereto as Defendant's Exhibit D.  The home is a private dwelling, not a boarding house, occupied only by the defendant, the couple who own it, and their children.  <u>Id</u>.  The fact that he shares the house with a couple who also has access to it simply does not effect his legitimate expectation of privacy.  <u>See</u> <u>United States</u> v. <u>Glover</u>, <u>supra</u>.  For these reasons, the suggestion that this case is somehow "analogous to that of a boarding home," Government's Brief at 7, is simply wrong.  The single family home in this case does not have "common corridors of the building, available to residents of the rooming house" and others who could walk through the building at will.  <u>See</u> <u>United States</u> v. <u>Anderson</u>, 533 F.2d 1210, 1214 (D.C. Cir. 1976).[1/]  Here, in direct contrast to <u>Anderson</u>, when the agents entered the front

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 3 -

door they entered a "private dwelling" where the defendant lived.  The suggestion that defendant's privacy interest was limited to the bedroom where he sleeps is, on the facts of this case, absurd.  The house searched is the defendant's residence and the fact that he lives with another couple does not diminish or destroy his legitimate expectation that the home would remain free from governmental intrusion.

## II.  The Search Of Defendant's Residence Was Unlawful.

The Government defends the general warrant utilized in this case on four grounds:  it argues that the reference in the warrant to certain specific items somehow saves a warrant that permits the seizure of practically any other written or printed material the agents decided to seize, Government's Brief at 9; that the citation to the statutes on the face of the warrant limits its scope, id. at 10; that even if overbroad the statute can be narrowed by reference to the attached affidavit, id. at 10-11; and finally that for some reason the "scrupulous exactitude" required in particularizing the items to be seized, applied in every obscenity case since Sanford v. Texas, 379 U.S. 476 (1965), does not apply in this case, id. at 12-14.  In so arguing, the government brushes aside the dispositive Supreme

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

1/   Although the nature of the premises in Anderson is not entirely clear, it is clear that the case involved a large commercial boarding house where occupants had numbered rooms similar to an apartment building.  533 F.2d at 1211-12.

- 4 -

Court decision in <u>Lo-Ji Sales</u> v. <u>New York</u>, 442 U.S. 319 (1979), and fails to even discuss the other cases invalidating warrants no more general than the one in the present case.  This court should reject these attempts to save the unconstitutional exploratory search authorized by the warrant and executed by the agents.

The fact that the warrant specifies one film and four magazines which may be seized does not, as the government suggest, in any way distinguish this warrant from the one held invalid in <u>Lo-Ji Sales</u>.  Indeed, the <u>Lo-Ji Sales'</u> warrant on its face specifies two particular movies that there was probable cause to believe were obscene.  <u>See</u> Government's Brief, Exhibit E.  Nevertheless the Supreme Court held the <u>entire</u> warrant invalid because it permitted as well the seizure of other material not listed in the warrant.  <u>See</u> 442 U.S. at 325-26.  <u>See also</u> <u>United States</u> v. <u>Sherwin</u>, 572 F.2d 196 (9th Cir. 1978) and <u>United States</u> v. <u>Guarino</u>, 729 F.2d 864 (1st Cir. 1984)(en banc), both cited in defendant's opening brief and ignored by the government.

Nor does the citation to the statutes prohibiting mailing and importation of obscene material save the warrant. The infirmity of the warrant in <u>Lo-Ji Sales</u>, and subsequent cases invalidating similar warrants, is that they permit the agents to seize material based on their own judgment of what is obscene without any probable cause determination.  442 U.S. at 325.  The citation in the warrant to statutes relating to mailed and

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 5 -

imported material does nothing to address the source of the con-
stitutional infirmity -- the agents' ability to seize material
based on their own standards of what may be obscene.

Moreover, the supposed "limitation" that the material
seized must have been mailed or of foreign origin is in reality
no limitation at all.  None of the material seized, other than
the package delivered by government agents, contains any indica-
tion of mailing or importation other than the location of the
publisher.  The material could just have easily have been
purchased in the District of Columbia as mailed from outside the
jurisdiction.  The government's argument would permit seizure of
any book, magazine or picture not printed in the defendant's
home, since any publication not homemade might be mailed or
imported.  In short, this supposed limitation on the warrant, in
addition to being irrelevant to issue on which the constitution-
ality of the warrant depends, is no limitation at all.[2/]

It is for that reason, perhaps, that the government
fails to cite a single case holding that including a citation to
the federal obscenity statutes can save a warrant which "leaves
it to the officers to decide what is 'obscene' and what is
not."  United States v. Torch, 609 F.2d 1088, 1089 (4th Cir.
1979), cert. denied, 446 U.S. 957 (1980).

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

_____

2/   Indeed, the agents clearly could not have thought the
warrant so limited because they even seized materials that
were home produced -- such as defendants personal photo
albums which are clearly not obscene.

Nor does the fact that a warrant may be narrowed by a specific affidavit, see United States v. Thompson, 495 F.2d 165, 170 (D.C. Cir. 1974), help the government in this case. Here, the affidavit confirms the open ended nature of the warrant, rather than restricting it. The affidavit contains the hearsay statement of a customs agent -- who never met defendant and knew nothing about him other than that his name was on the envelope seized in New Jersey -- that "in his experience," people who receive the type of material found in the envelope "generally have large quantities of pornographic material" in their possession. Warrant attached to Defendant's Memorandum In Support, Exhibit A. It is this statement, and this statement alone, which provides the entire basis for permitting the government to seize other "similar" material. The government completely ignores the fact that in Lo-Ji Sales the Supreme Court expressly held that reference to similar materials, based on the description contained in the affidavit of particular items, could not save a warrant that permitted the police to make on the spot determinations of probable obscenity. 442 U.S. at 325-26; see also United States v. Sherwin, supra. Thus, it is clear that the affidavit in this case does nothing to narrow the overbroad scope of the warrant. 3/

---

3/   The case principally relied on by the government United States v. Waugneux, 683 F.2d 1343 (11th Cir. 1982), cert. denied, 104 S. Ct. 69 (1983), is not relevant here. In Wagneux the court upheld a search of documents for "receipts and disbursements of kickback funds." The issue in Wagneux
(Footnote Continued)

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

Finally, the government makes the remarkable argument that "Lo-Ji Sales, supra, and other cases cited by defendant arise in the context of the First Amendment. Our case does not." Government's Brief at 12. The only support for this proposition is the citation to Roth v. United States, 354 U.S. 476, 485 (1957), holding that obscenity is not protected by the First Amendment. Id. The response entirely misses the point of Lo-Ji Sales and its progeny.

The Court in Lo-Ji Sales expressed no doubt that the two films presented to the magistrate prior to the search which, according to the officer's affidavit, contained "acts of female masturbation and activities involving bestiality in that the female participant . . . attempted to engage in acts of sexual intercourse with a German Shepard type dog," were in fact obscene. See Affidavit reproduced from Supreme Court record in Lo-Ji Sales, attached hereto as Exhibit E. The same is true of United States v. Guarino, 729 F.2d 864 (1st Cir. 1984)(en banc), where the magazines presented "display numerous acts of fellatio,

---

was not what was to be seized, but rather the scope of the search in order to find the material particularly described in the warrant. 683 F.2d at 1352-53. The court's decision upholding the government's ability to look through voluminous business records in order to determine what records fall within a particularized warrant, has nothing to do with the issues present in this case. Indeed, in United States v. Torch, 609 F.2d 1088 (4th Cir. 1979), another case relied on by the government, the court expressly distinguished between the particularity required in a warrant authorizing seizure of business records and that required for allegedly obscene material and recognized that the latter is held to higher standard of particularity. 609 F.2d at 1089-90.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

cunnilingus and intercourse, with the camera emphasizing the genitalia as much as possible," id. at 881, United States v. Sherwin, 572 F.2d at 198 (cunnilingus and oral coppulation), and United States v. Torch, 609 F.2d at 1090 (bestiality).  Indeed, in Lo-Ji Sales the defendant conceded that all of the materials seized were obscene.  442 U.S. at 324.  Yet, in every one of these cases the courts explicitly held that notwithstanding the apparent obscenity of the specific material presented to the magistrate, the First and Fourth Amendment prohibit warrants, such as this one, that allow for the seizure of "other photographs, magazines and writings."  Warrant attached to Defendant's Memorandum in Support as Exhibit A.

The univerisally stated legal rule is that "the importance of protecting First Amendment freedom preclude police officers from making ad hoc determinations at the scene as to which materials are probably obscene," United States v. Sherwin, 572 F.2d at 200, regardless of whether the material subsequently seized pursuant to the open ended warrant turns out to be obscene.  Contrary to the government's argument, which fails utterly to analyze any of the case law, this case falls squarely within the rule laid down in Lo-Ji Sales and followed by subsequent decisions.[4]

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

-----

[4]    Indeed, as we point out at length in our opening memorandum, the warrant at issue here is far wore than the procedure utilized in Lo-Ji Sales, supra.  Defendant's Memorandum in Support at 8-10.

III.  Neither Severability Nor the
Good Faith Exception Can Save
the Search Conducted Pursuant
to This Unconstitutional
General Warrant.

This is not an appropriate case to "sever" the contents
of the envelope from the vast bulk of the material seized
pursuant to the omnibus authority of the warrant.  Neither Lo-Ji
Sales, supra, nor Marcus v. Search Warrant, 367 U.S. 717 (1961),
where eleven magazines specifically listed in the warrant were
seized in addition to a large quantity of magazines not listed in
the warrant, permitted the introduction in evidence of material
particularly described in an otherwise overbroad general
warrant.  To permit a severance of the warrant here would be
directly contrary to the remedy employed by the Supreme Court on
similar facts in Lo-Ji Sales and Marcus.  Moreover, severing the
items listed from the general warrant would, in the words of
Justice Stewart, "invite a government official to use a seemingly
precise and legal warrant only as a ticket to get into a man's
home, and, once inside to launch forth upon unconfined searches
and indescriminate seizures as if armed with all the unbridled
and illegal power of a general warrant."  Stanley v. Georgia, 394
U.S. 557, 572 (1969) (Stewart, J. concurring).

The procedure utilized in this case exemplifies the
danger anticipated by Justice Stewart.  The government was
already in possession of the envelope with defendant's name on it
containing all of the particularly described material prior to

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

delivering it to defendant's home.  The agents placed the

envelope in defendant's home and, based on that delivery,

obtained a warrant permitting them to execute a general search in

which they seized everything from defendant's personal photo

albums to his private letters.  The purpose of the search was not

to re-seize the material already in the government's possession,

but to execute the general search requested by the agent and

authorized by the warrant.  The particularly described items were

merely the tail wagging the dog of the general warrant.  To

permit the use of evidence obtained as a result of such a warrant

undermines the prohibition against general warrants which is the

very foundation of the Fourth Amendment.  See Marshall v.

Barlow's, Inc., 436 U.S. 307, 311 (1978); United States v.

Chadwick, 433 U.S. 1, 7-8 (1977); Marcus v. Search Warrant, 367

U.S. 717, 724-729 (1961). 5/

---

5/    The cases cited by the government, United States v.
Fitzgerald, 724 F.2d 633 (8th Cir. 1983) (en banc), cert
denied, 104 S.Ct. 2151 (1984) and Sovereign News Co. v.
United States, 690 F.2d 569 (6th Cir. 1982), cert denied,
104 S.Ct. 69 (1983), are distinguishable.  In Fitzgerald,
the court was dealing with a warrant containing seven
distinct and segregable paragraphs describing different
types of items to be seized.  724 F.2d at 635.  The question
in that case was whether to permit seizure of contraband --
illegal weapons -- discovered in plain view during the
search.  The warrant contained no omnibus general search
authority and the First Amendment considerations present
here were not at issue.  See 724 F.2d at 639 (Arnold, J.
concurring for four judges).

Although Sovereign News was an obscenity case, its facts are
remarkably different from this case.  The officers obtained
an initial warrant to seize particularized items described
to the magistrate in advance and seized only those items.
(Footnote Continued)

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 11 -

The government also attempts to save the search conducted pursuant to this unconstitutional general warrant by relying on the recent Supreme Court cases establishing a "good faith" exception to the exclusionary rule.  United States v. Leon, 104 S.Ct. 3405 (1984); Massachusetts v. Sheppard, 104 S.CT. 3424 (1984).  In Leon the Court held that the policies behind the exclusionary rule do not support suppression where police officers reasonably rely on a facially valid warrant which was later determined not to have been supported by probably cause, id. at 3410, and in Sheppard the Court refused to suppress evidence discovered during a search obtained as a result of a sufficiently particular affidavit where the issuing judge used the wrong form for the warrant, id. at 3427.  But the court in Leon made clear that

> In so limiting the suppression remedy, we
> leave untouched the probable cause standard
> and the various requirements for a valid
> warrant.  Other objections to the exclusionary
> rule we consider unsubstantial.

104 S.Ct. at 3422.  In particular, the Court expressly stated, "The exception we recognize today will also not apply is cases where the issuing magistrate wholly abandoned his judicial role

---

During the search they discovered other potentially obscene material and returned to the magistrate for a second warrant, again describing the material to be seized with particularity.  In executing the second warrant the agent again seized "only magazines and movies listed in the exhibit attached to the warrant."  Id. at 576.  In other words, there was neither the ad hoc determination of obscenity or the complete destruction of the privacy rights of the defendant which accompanied the warrant and search in the instant case.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 12 -

in the manner condemned in <u>Lo-Ji Sales, Inc</u>. v. <u>New York</u>, 442
U.S. 319 (1979); in such circumstances, no reasonably well-
trained officer should rely on the warrant." <u>Id</u>. at 3422.
Moreover, the Court recognized that "a warrant may be so facially
deficient -- i.e., <u>in failing to particularize</u> . . . <u>the things
to be seized</u> that the executing officers cannot reasonably
presume it to be valid." <u>Id</u>.  (emphasis added)

    This is clearly one of those cases.  The agents in this
case asked for and obtained a general warrant and executed a
general search.  The warrant sought and the warrant received is
unconstitutional <u>on its face</u>.  Just last term the Supreme Court
reaffirmed that the invasion of privacy occasioned by the search
of a private home is the "chief evil against which the wording of
the Fourth Amendment is directed." <u>Welsh</u> v. <u>Wisconsin</u>, 104 S.Ct.
2091, 2096 (1984).  Reaction against general warrants for the
search of private homes was one of the principal forces behind
the adoption of the Fourth Amendment. <u>See Jo-Li Sales</u>, <u>supra</u>,
442 U.S. at 325.  To hold that such actions in this case meet the
requirements of the "good faith" exception to the exclusionary
rule would stand the Fourth Amendment on its head and is directly
contrary to the limitations on the exception outlined in <u>Leon</u>.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

### IV.   The Post-Seizure Actions of the Custom
###         Officials Violated Federal Law

Contrary to the government's assertion, defendant's argument that the customs agents violation of 19 U.S.C. § 1305, requires suppression of the items seized was not rejected by the unpublished order in United States v. Mahan, 84-0662 (S.D. Cal.).  The argument was not even addressed in that case.

The defendant in Mahan argued that once the government seized the material at the border it could no longer be considered "imported contrary to law" and that he could not be prosecuted when the agents permitted the material to be delivered.  Goverment's Response, Exh. F at 7-8.  The court rejected the argument and held that the material is still contraband even after it is seized, and that § 1305 was not intended to prohibit the government from collecting evidence for use in a criminal prosecution.  Id.

The argument we make here is not that a defendant cannot be prosecuted after seizure of obscene material, or that the customs service cannot retain such material as evidence for a subsequent prosecution.  Rather, the argument is that § 1305 establishes an unambiguous constitutionally required procedure for determining the character of the material seized.  The government completely ignores the fact that the Supreme Court has expressly held that absent the rigorous procedural protections of § 1305 the entire framework for permitting customs agents to seize allegedly obscene material would be unconstitutional.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 14 -

United States v. Thirty-Seven Photographs, 402 U.S. 363
(1971).[6/]   The statement of customes agent who performed the
initial search, obtained after defendant's initial memorandum was
filed and attached hereto as Exhibit F, clearly and unequivocally
establishes that § 1305 provided the authority for seizing the
envelope addressed to the defendant.  Having utilized that
statute to seize the material, the government is not free to
ignore its terms.  The language of § 1305, its legislative
history, and the Supreme Court's decision in United States v.
Thirty-Seven Photographs, supra, see Defendant's Memorandum in
Support at 14-20, establish that the procedures required by
§ 1305 provide substantive protections that the customs service
is not free to violate at will.[7/]

---

[6/]   Cases dealing with seizure of drugs, therefore, which do not
involve the consitutional rights of the recipient, are not
relevant here.  See, e.g., United States v. Davis, 272 F.2d
149 (7th Cir. 1959).

[7/]   The government cites the statement from United States v.
Mahan, supra that it would be contrary to legislative intent
to prohibit controlled deliveries.  Government's Response at
20.  To the extent this statement is intended to apply to
the limited situation of seizures of allegedly obscene
material made pursuant to § 1305, the statement is made
without citation and is itself not only contrary to the
language of the statute, but to the relevant legislative
history, cited by defendant here but neither cited nor
discussed by the Court in Mahan.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 15 -

## V.   The Statements Taken From Defendant Were
## the Result of the Unlawful Search.

        The government responds to the argument that defendant's
alleged statements were the result of being confronted with the
results of an unconstitutional <u>search</u> by citing cases dealing
exclusively with statements made subsequent to an illegal
<u>arrest</u>.  But it is well settled, as stated in our opening
memorandum, that being confronted with illegally seized evidence
requires suppression of subsequent statements even where an
unlawful arrest would not.  <u>See</u> 3 W. LaFave, <u>Search and Seizure</u>,
§ 11.4(c) at 639.  The holding in <u>United States</u> v. <u>Davis</u>, 617
F.2d 677 (D.C. Cir. 1979), that an illegal arrest does not effect
the validity of a subsequent statement after a defendant retained
counsel and reflected upon his agreement to speak, Government's
Response at 23, is irrelevant here.  In such situations, because
the pressure of any custodial questioning is entirely absent and
the defendant is now free of the effects of the illegal arrest,
the statements are clearly unrelated to the illegality of his
arrest.  But here, by contrast, the alleged statements were the
<u>direct</u> result of confronting the defendant with the illegally
seized material.  Although denying that the agents made any
promises regarding prosecution of this case, Government's
Response at 24, the government does not deny that the stated
purpose for the meeting was to review the seized material.
Whatever statements were made by the defendant came as a result
of being confronted and questioned about the material taken from

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 16 -

his home.[8/]   That defendant was accompanied by counsel does not
affect in the least the fact that the alleged statements were
obtained based upon presenting the defendant with illegally
seized evidence.  In such cases, it is simply not possible to
remove the taint of the illegal search from the statements made
by the defendant regarding the material seized.  See, e.g., Ruiz
v. Craven, 425 F.2d 235, 236 (9th Cir. 1970); Amodor-Gonzalez v.
United States, 391 F.2d 308, 318 (5th Cir. 1968); United States
v. Morrese, 336 F.2d 501, 504 (3d Cir. 1964).  See generally
Defendant's Memorandum in Support at 27-29.

---

8/   The government also contests the defendant's argument that
his alleged statements were the product of material
misrepresentations of the agents.  As stated in the Motion
to Suppress, the court need not reach the issue of the
"voluntariness" of any statements because the search warrant
was facially invalid and obtained in violation of federal
law, and the statements were the direct result of the
search.  If, however, the voluntariness of the statements
remains at issue, defendant will reply to the government's
argument at a hearing pursuant to Jackson v. Denno, 378 U.S.
368 (1964).

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 17 -

## CONCLUSION

For the reasons stated here and in defendant's opening memorandum, the motion to suppress should be granted.

Respectfully submitted,

WILLIAMS & CONNOLLY

By _____
David Povich
Richard S. Hoffman

839 Seventeenth Street, N.W.
Washington, D. C.   20006
(202) 331-5000

Attorneys for George A. Nader

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

– 18 –

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply Brief In Support Of Defendant's Motion To Suppress was served on Mr. Douglas J. Behr, Assistant United States Attorney, United States Attorney's Office, Constitution Ave. and 3rd St., NW, Washington, DC  20001, on this 1st day of May, 1985, by hand.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

Ex D

ALL STATE LEGAL SUPPLY CO. ONE COMMERCE DRIVE, CRANFORD, NEW JERSEY 07016

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America          )
                                  )
                                  )
        v.                        )   Criminal No. 8500033
                                  )   Judge John Garrett Penn
                                  )
George A. Nader                   )
_____ )

### Affidavit of Edna Gaunt

Edna Gaunt, being duly sworn, deposes and says:

1.   I am 78 years of age and have been a resident of the District of Columbia for forty-three years.  For the past forty years my husband and I have owned and lived in a private home located at 2019 Connecticut.  We live there with the defendant George A. Nader.

2.   Mr. Nader has lived with us for approximately three years.  In my dealings with Mr. Nader, he has been one of the finest young men I have ever known.  He lives with us as if a member of the family and has full use not only of the room where he sleeps, but also the remaining areas of the house, including the hallway, living room, bathrooms and kitchen.

3.   Mr. Nader has his own key and is free to come and go and use the house as he pleases.

4.   My daughter and son-in-law also live in the home with us.  No other person lives in the house or has access to it without the permission of my husband or I, my daughter or son-in-law, or Mr. Nader.

*Edna Gauntt*
Edna Gaunt

Sworn and subscribed to before me
this  1st  day of May, 1985.

*Moira K. Rickett*
Notary Public

My Commission Expires February 14, 1988

Ex E

ALL STATE LEGAL SUPPLY CO. ONE COMMERCE DRIVE, CRANFORD, NEW JERSEY 07016

UNITED STATES v. GUARINO                              883
Cite as 729 F.2d 864 (1984)

APPENDIX C
Lo-Ji Sales Affidavit
(reproduced from Supreme Court
Record App. at 5a – 7a)

## LOCAL CRIMINAL COURT
Town of Wawayanda

AFFIDAVIT

———◆———

IN THE MATTER

—of—

THE APPLICATION OF INV. J. A. HURBANEK OF THE NEW YORK
STATE POLICE, FOR A SEARCH WARRANT TO SEARCH THE
FOLLOWING PREMISES: A single story brown wood frame
building named "Adult Store", located on Route 17M
directly across from the Chadwick Motel in the Town of
Wawayanda, Orange County, New York.

———◆———

STATE OF NEW YORK,
COUNTY OF ORANGE, ss.:

I, JOHANNES A. HURBANEK, being duly sworn, deposes
and says:

1. I am the applicant herein and am a public servant of
the kind specified in Criminal Procedure Law, Section
690.05(1), my title being Investigator with the Bureau of
Criminal Investigation of the New York State Police.

2. There is reasonable cause to believe that certain
property hereinafter described may be found in the fol-
lowing premises: a single story brown wood frame building
named "Adult Store", located on Route 17M directly across
from the Chadwick Motel in the Town of Wawayanda,
Orange County, New York.

APPENDIX C—Continued

3. The property referred to sought to be seized is property that has been used and is possessed for the purpose of being used to commit an offense to wit: Obscenity in the Second Degree, in violation of Section 235.00(1) of the Penal Law, Promoting Obscene Material.

3. In support of your deponent's assertion as to the existence of reasonable cause, the following facts are offered based upon personal knowledge as attested to by your deponent. On June 20, 1976, I personally was present in the aforedescribed premises (Adult Store) and purchased from Alexander Mandakis one reel of 8mm motion picture film approximately 200 feet in length called LINDA AND DUKE. Upon viewing this reel of motion picture film, I observed it to contain acts of female masturbation and activities involving beastiality in that a female participant in the movie attempted to engage in acts of sexual intercourse with a German Shepard type dog. I also purchased a reel of super 8mm motion picture film approximately 200 feet in length entitled FOUR FOR DINNER. Upon viewing this reel of film, I observed acts of sexual intercourse, sodomy, fellatio, cunnilingus, and masturbation. These reels of film are presently in my possession and are available for the viewing of the Court so that it may independently determine whether or not the acts portrayed come within the statutory prohibition under Article 235 of the Penal Law.

4. While in the premises, I observed what I have reasonable cause to believe are the same or similar films. I also observed in the premises other reels of film, magazines and other objects. Based upon my observations, and my conversations with Mr. Mandakis which indicated to me that

the film
scribed
is being
Law of

5. T

6. It
accomp
warran
under t
the add
ises is
fore su

WHE
a searc
followi

1.) 2
LINDA

2.) 2
titled F

3.) A
determ
Article

Sworn
25 day
/s/ Jo

APPENDIX C—Continued

the films and magazines portrayed similar activities as described above, I have reason to believe that this material is being possessed in violation of Article 235 of the Penal Law of the State of New York.

5. The foregoing represents the grounds for my belief.

6. It is further respectfully requested that the Court accompany deponent at the time of the exectuion of the warrant applied for so that it can independently determine under the applicable legal principles whether or not any of the additional material present in the aforedescribed premises is in fact possessed in violation of the law and therefore subject to seizure.

WHEREFORE, your deponent requests that the Court issue a search warrant directing a search for and seizure of the following property:

1.) 200 foot reels of 8mm motion picutre film entitled LINDA AND DUKE.

2.) 200 foot reels of super 8mm motion picture film entitled FOUR FOR DINNER.

3.) Any other material that the Court may independently determine upon viewing to be possessed in violation of Article 235 of the Penal Law.

/s/ J. A. HURBANEK
Johannes A. Hurbanek


Sworn to before me this
25 day of June, 1976.
/s/ JOHN O'CONNOR, T.J.

Ex F

EDR12F

ALL STATE LEGAL SUPPLY CO. ONE COMMERCE DRIVE, CRANFORD, NEW JERSEY 07016

**...REST/SEIZURE REPORT** REVERSE STARRED ITEMS

| | | 5. SEIZURE DATE AND TIME | | 6. PATROL FILE NO./MAIL OR PENTOA NO. |
|---|---|---|---|---|
| ...START TIME | 4. ARREST DATE AND TIME | 032684 | 0810 | |
| 1. (L.B./First/Middle/Other) | | 8. DATE OF BIRTH | | 9. SOCIAL SECURITY NO. (U.S. Only) |
| TAL   J | | | | |
| 10. ALIAS (Last/First/Middle/Other) | | 11. RACE • SEX | HEIGHT | WEIGHT | HAIR • EYES • |

| 12. ADDRESS (Street Address/City/State-Country Code/Zip Code) |
|---|
| C.4   I.TERNATIONAL INSIGHT/2019 CONNECTICUT AVE NW/DCUS, 20008 |

| 13. PLACE OF BIRTH (City/State-Country Code) | CHILD • OCCUPATION | 14. DRIVER'S LICENSE (State-Country Code/No.) |
|---|---|---|

| 15. IDENTIFYING MARKS/CHARACTERISTICS (Significant) | 16. PASSPORT TYPE • DATE OF ISSUE | COUNTRY • 17. PASSPORT NO. |
|---|---|---|

| 18. LOCAL USE | 19. Driver/Abettor Poss   Crew   Pass • Ped   Other | 20. STATUS OF ARREST | 21. OTHER ID NO. |
|---|---|---|---|

| | | RACE • SEX, DATE OF BIRTH | Search | Arres |
|---|---|---|---|---|
| 22. SECT. OF LAW CHARGED | 1 PENALTY | 23. ASSOCIATES' NAME (Last/First/Middle/Other) | | |
| 19USC 705 | | | | |

| 24. Compt | Pat. | Cavity | Patdn. | RESULTS | TIME COMPLETED | FUNDS ON PERSON | 25. SEARCHING OFFICER (Name, Title, Agency) |
|---|---|---|---|---|---|---|---|
| | | | | POS.   NEG. | | $ | |
| 26. AUTHORIZING OFFICER (Name, Title, Agency) | | | | | | 27. WITNESS | |

| 29. REASONS FOR SEARCH |
|---|

| 30. VEHICLE (Yr./Make/Model/Style/Color) | | | LICENSE (Yr./State - Country/No) | V.I.N. | SEARCH |
|---|---|---|---|---|---|
| | | Cmrcl | | | |
| 30. PLANE OTHER • VESSEL TRAIN | FLT./TRN. NO. | CARRIER/COMPANY | B/L NO. | VESSEL NAME AND FLAG | |
| 31. VEHICLE OWNER NAME OR MAIL ADDRESSOR (Last/First/Middle/Other) | | | | 32. ARRIVAL DATE TIME | FROM (Country) VIA(Country) |
| 1 | | | | | NL |
| 2 ZOURRO, KAIF | | | | | |
| 33. OWNER ADDRESS/MAIL RETURN ADDRESS | | | | | |
| 10   ER AMSTERDAM/DOIMRAK 42-43, HOLLAND | | | | | |

| 34. PLACE OF DISCOVERY | GEOGRAPHIC LOCATION | | 35. APO/FPO NO. (Mail) | AIR | SURFACE | TYPE • |
|---|---|---|---|---|---|---|
| Within P.O.E. | Along Border | Military Area | JERSEY CITY/HUDSON, NJ | | | X | P |
| 35. SOURCE OR OUTLET | PLACE OF SEIZURE | GEOGRAPHIC LOCATION | | COUNTRY OF NLF. | ABNO. | CMI |
| | Within P.O.E. | Along Border | Mil. Area | JERSEY CITY, HUDSON NJ | | |
| 37. ITEM NO. | DESCRIPTION | TSUSA/CC # | QTY | U/M | DEC. VAL. | FOREIGN VAL. | DOM. VAL. | DUTY | Commat... | c |
| 1 | PORNOGRAPHY | POR | 1 | EA | | | | | I |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |

| 38. APPRAISING OFFICER (Name, Title, Agency) | | TOTALS | | | | |
|---|---|---|---|---|---|---|
| 39. DISPOSITION Released   Disposed on hand   Retained | | DETENTION ROOM | | AMOUNT | DATE | CF 5104 No. |
| OF SEIZURES (Item No.) | 1 | | | | | |

40. CIRCUMSTANCES/REMARKS

A PACKET ORIGINATING FROM HOLLAND, NETHERLANDS, A SOURCE COUNTRY FOR PORNOGRAPHY, WITH
A DECLARATION THAT STATED "BOOKS" WAS OPENED AND FOUND TO CONTAIN SIX (6) MAGAZINES
AND ONE (1) 8MM FILM ALL OF WHICH CONTAINED CHILD PORNOGRAPHY. PARCEL WAS SEIZED
AND RELEASED TO U.S. CUSTOMS SPECIAL AGENT PADLO ON 3-26-84. INITIALS AND DATE (ALT 3-26-84)
WE E PLACED ON EACH MAGAZINE AND FILM.

TECS CHECK-NEGATIVE

| 41. AGENCY PARTICIPATION | DISCOVERING AGENCY | | | ARRESTING AGENCY | | | PARTICIPATED IN ARREST | | | SEIZING AGENCY | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | A   USC •   II   SRG   DEA   Oth • | | | USC •   II   SRG   DEA   Oth • | | | USC •   II   SRG   DEA   Oth • | | | USC •   II   SRG   DEA   Oth • | | |
| PARTICIPATED IN SEIZURE | ARRESTEE RELEASED TO | TIME NOTIFIED | TIME ARRIVED | TIME OF RELEASE | REQUIRED BY |
| USC •   II   SRG   DEA   Oth • | USC •   II   SRG   DEA   Oth • | | | | USC •   II   SRG   DEA   Oth • |
| 42. NO PRI. INFO. | PRI. DEA INFO. | PRI. USC. INFO. | TECS PRI. | OTHER INFO. | NCIC HIT | BLITZ | DOG ALERT | X-RAY | TECS SEC | 43. ENFORCEMENT AIDS (Per No., Instructions) |
| A | | C | | | | | | | | |
| 44. DECLARATION TAKEN BY (Name, Title, Agency) | | | | 45. ARRESTING OFFICER (Name, Title, Agency) | | | | | | |

| 46. SEIZING OFFICER (Name, Title, Agency) | | 47. SUPERVISOR (Name, Title, Agency) | 3-27-84 |
|---|---|---|---|
| R....DWALD PRESTOR/MSUSCS/SPECIAL PROCESSING | | LANGON   NATL BRANCH | BY   DATE |
| 48. INITIGATING OFFICER (Name, Title, Agency) | | 49. DISTRICT DIRECTOR | |
| | | BENJAMIN C JEFFERSON DIRECTOR/NEWARK ARE | CUSTOMS FORM 151 |

USE CODES ON REVERSE

Judge **PENN, J.**

# CRIMINAL CASE NO. 85-**0033**

## UNITED STATES

vs.

1. _George A Nader_

2. _____

3. _____

4. _____

5. _____

| DEPOSITIONS | |
|---|---|
| TRANSCRIPTS | |
| EXHIBITS | |

2 Counts

**CHARGE:** 18:1464, 1462, 2. Mailing obscene matter, exportation of obscene matter & aiding & abetting

G. Atty.: _____

1. Bond: $_____, Surety: _____, Atty.: _____

2. Bond: $_____, Surety: _____, Atty.: _____

3. Bond: $_____, Surety: _____, Atty.: _____

4. Bond: $_____, Surety: _____, Atty.: _____

5. Bond: $_____, Surety: _____, Atty.: _____

| DATE | COURT CLERK'S MEMORANDUM | JUDGE |
|---|---|---|
| **JAN 28 1985** | PRESENTMENT AND INDICTMENT FILED | |
| 2-11-85 | Arr: PNG; status call set 3-4-85; mos to be filed by 3-4-85; deft rel on PR (Present: deft, AUSA Behr & Maslinaas) (Rep: C. Pehanick) | Penn, J. |
| 3-4-85 | Status call: further status call set 4-1-85. deft has until 3-25-85; Court makes finding excluding time from 3-4-85 to 4-1-85 purs to STA, ref. deft PR. Present: deft, AUSA Behr & Povick (Rep. J. McGinn) | Penn, J. |
| 4-1-85 | Status call: Gov't to respond to mos by 4-22-85. Hrg on mos set 5-6-85 at 10:30 am; deft PR (Present: deft, AUSA Behr & Povick) (Rep. J. McGinn) | Penn, J. |

5-6-85 Mos hearing cont'd to 5-7-85 at 1:30pm. (App. J. McGinn) Pann, J

5-7-85 Mo to suppress heard and taken under advisement; deft PR.
Present deft, AUSA Behr, Counsel Hoffman (App. J. McGinn) Pann, J

FILED

NOV 7 1985

JAMES F. DAVEY, Clerk

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

Criminal No.  85-33

GEORGE NADER

O R D E R

The defendant is charged in a two count indictment with using or causing to use the mails for the mailing, carriage and delivery of obscene material, (18 U.S.C. §1461), importation of obscene material into the United States (18 U.S.C. §1462), and aiding and abetting (18 U.S.C. §2).  The case is now before the Court on certain parts of the defendant's motion to suppress evidence.

This case is now before the Court on limited segments of the defendant's motion to suppress evidence.  In his motion to suppress evidence, the defendant contends that; (1) the search of his home was conducted pursuant to a general warrant in violation of the defendant's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, (2) Custom officials lacked "reasonable cause" for the initial search of the envelope addressed to the defendant as required by 19 U.S.C. §482, (3) the subsequent delivery of the envelope to the defendant's home was in violation of federal law, 19 U.S.C. §1305, (4) the statements allegedly made by the defendant were a direct result of the unlawful search and seizure of material from the defendant's home and, (5) the statements



- 2 -

allegedly made by the defendant were obtained in violation of his Fifth and Fourteenth Amendment rights because they were induced by material misrepresentations by Government agents.  The Government opposes all aspects of the defendant's motion.  At the time of the hearing, the defendant withdrew the second and third parts of his motion and the parties elected to address only the first part of the motion which raises the question whether the search warrant issued in this case was a general warrant, and whether, in any event, the Court should decline to apply the exclusionary rule on the facts of this case.  1/  The parties agreed not to go forward on the fourth and fifth parts of the motion until after a ruling on the third part since consideration of the last two parts of the motion would require an evidentiary hearing, and because a ruling granting the third part of the motion would render the remaining parts moot.  2/

    After giving careful consideration to the motion to suppress evidence and the opposition thereto, together with the arguments of counsel and the record in this case, the

_____

1/  See United States v. Leon, 104 S.Ct. 3405 (1984); Massachusetts v. Sheppard, 104 S.Ct. 3424 (1984).

2/  The Speedy Trial Act, 18 U.S.C. §3161 et. seq., is tolled in view of the agreement of the parties that the court should not address the fourth and fifth parts of the motion at this time.  See 18 U.S.C. §3161(h)(1)(f).

- 3 -

Court concludes that the motion should be granted in part and denied in part for the reasons set forth in an Opinion to be filed.  The Court concludes that the warrant issued in this case constitutes a general warrant and therefore the search conducted pursuant to the general warrant was impermissible.  The Court concludes that the exclusionary rule should apply and that any items seized pursuant to the general portion of the warrant must be suppressed.  On the other hand, the Court concludes that the portions of the warrant which are general may properly be severed from that portion of the warrant which described certain items with particularity; those items being the same items which were contained in the package that was inspected on March 27, 1984.

In view of the above, it is hereby

ORDERED that the motion to suppress is granted in part and denied in part, and it is further

ORDERED that so much of the motion which sought to suppress those items which are described with particularity in the warrant is denied, and it is further

ORDERED that the remainder of the motion to suppress, with the exception of the above, is granted, and it is further

- 4 -

ORDERED that the parties shall appear before the Court at a date to be set for the purpose of scheduling a hearing on the motion to suppress statements and for the purpose of setting a trial date. 3/

Dated:  November ___7___ , 1985

_____
JOHN GARRETT PENN
United States District Judge

3/  The parties were advised of the Court's ruling on October 30, 1985.

FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NOV 1 4 1985

UNITED STATES OF AMERICA

JAMES F. DAVEY, Clerk

v.                                Criminal No.   85-33

GEORGE NADER

OPINION

The defendant is charged in a two count indictment with using
or causing use of the mails for the mailing, carriage and delivery
of obscene material, (18 U.S.C. §1461), importation of obscene
material into the United States (18 U.S.C. §1462), and aiding and
abetting (18 U.S.C. §2).  The case is now before the Court on one
part of the defendant's motion to suppress evidence.

In his motion to suppress evidence, the defendant contends
that; (1) the search of his room was conducted pursuant to a
general warrant in violation of the his rights under the First,
Fourth, Fifth, and Fourteenth Amendments to the Constitution of
the United States, (2) Custom officials lacked "reasonable cause"
for the initial search of the envelope addressed to the defendant
as required by 19 U.S.C. §482, (3) the subsequent delivery of the
envelope to the defendant's home was in violation of federal law,
19 U.S.C. §1305, (4)  the statements allegedly made by the
defendant were a direct result of the unlawful search and seizure
of material from the defendant's home and, (5) the statements



COURTRAN

allegedly made by the defendant were obtained in violation of his Fifth and Fourteenth Amendment rights because they were induced by material misrepresentations by government agents.  The government opposes all aspects of the defendant's motion.  At the time of the hearing, the defendant withdrew the second and third parts of his motion and the parties elected to address only the first part of the motion which raises the question whether the search warrant issued in this case was a general warrant, and whether, in any event, the Court should decline to apply the exclusionary rule on the facts of this case.  1/  The parties agreed not to go forward on the fourth and fifth parts of the motion until after a ruling on the third part since consideration of the last two parts of the motion would require a factual hearing, and because a ruling granting the third part of the motion would render the remaining parts moot.  2/

I

The underlying facts are as follows:  On or about March 27, 1984, Andrew Taylor, a Customs Inspector, United States Customs Service, who was then assigned to make border searches of incoming mail, performed a customs inspection on a first-class letter, in the form of a brown mailing pouch type envelope, addressed to "Mr. J. Nader c/o International Insight, 2019 Connecticut Avenue, N.W., Washington, D. C.  20008, U.S.A."  The customs declaration

disclosed that the package contained "books". The return address given on the envelope was "Ralf Zonatz, 1012 LA Amsterdam, DOMRAK 42-43 Holland."  The package was opened by the Customs Inspector because he felt he had reasonable grounds to suspect that the material enclosed therein was being imported into the United States contrary to law.  See 19 U.S.C. §482.  Inside he found an eight -mm movie film, four magazines and one advertisement for another film.  For the purposes of the instant motion, the Court assumes that the film and the magazines are obscene.  3/  Also reviewed at the same time were two other magazines found in the package, "Boy No. 53" and "Sweet Little Sixteen, Volume 3, No. 8" and two pictures.  The magazines and the pictures depict nude boys.  This latter group of material differs from the earlier described material in that, while the latter group of material consisted only of pictures of nude boys, the earlier described material depicted nude boys  engaged in a  variety of  sexual acts.  4/

The material was reenclosed in the original package and mailed by registered mail to the Office of Investigations, United States Custom Service, Reston, Virginia.  The package was then personally opened by Special Agent Don Bludworth.  The material is described in the affidavit in support of the search warrant. See Bludworth Affidavit at 2.

On April 10, 1984, the "obscene" items were shown to a United States Magistrate, United States District Court for the District of Columbia.  Prior to this time, Special Agent Bludworth interviewed Special Agent Hekala of the United States Custom Service, who had conducted, during the period 1975 to 1980, approximately 150 investigations of illegal importation of pornography, particularly pedophelia.  Special Agent Hekala advised Agent Bludworth that in his experience, persons who order pedophelia material from overseas retain copies of order blanks and catalogues for such material and also retain evidence of payment.  He further advised that pedophiles keep records of all purchases to keep tract of the reliability of suppliers and that generally, pedophiles have large quantities of pornographic material which is usually of foreign origin.  All of the above is set forth in the affidavit submitted in support of the search warrant.  A warrant and a supporting affidavit were  submitted to the magistrate but the magistrate withheld signing the warrant until delivery to the defendant had been effected.

Thereafter, the  agents twice  attempted to deliver the material to  the defendant.  The package was finally delivered on April 12, 1984,  and was  signed  for  by the defendant's landlord. 5/  Once the package was delivered, the agents advised another agent, who in turn presented the application for a warrant

to the magistrate who then signed the warrant authorizing the
agents to deliver and search defendant's house.  The government
states that the magistrate informed Bludworth that it was his
belief "that once the package was delivered to the addressee's
premises, probable cause existed to search the premises for the
contents of the package as well as other related items." 6/
Opposition to Motion to Suppress Evidence at 3.

When the warrant was signed, the agents returned to the
defendant's home and executed the warrant.  They found the package
on a table in the hallway.  The package was seized and then the
agents conducted a general search of the defendant's room.  They
seized similar material, which can be described as obscene, and
other material depicting material similar to the second group of
materials described in the affidavit in support of the warrant.
This latter group is not considered as obscene since it depicts
only nude boys who are not engaged in any type of sexual or
suggestive acts.  In addition, the agents seized newspaper
clippings, toys, stuffed animals and photo albums.  This last
group of materials relates to the personal life of the defendant
and appears to have no relevance to the charges pending before the
Court, except perhaps to identify the room as that of the
defendant.  The photo albums are nothing more than pictures of the
defendant, and apparently families he has visited on his many

- 5 -

trips overseas in the conduct of his business.  Presumably, this group of material was seized to identify the defendant and to establish that the room searched was indeed his room.

The defendant, and his then counsel, met with the government agents four days after the search, but that meeting is not relevant to the part of the motion now under consideration.

## II

The warrant issued in this case provided that, "there is now being concealed certain property, namely [description of the original items intercepted in the mails on March 27, 1984] in addition to other photographs, magazines, writings and documents which are evidence of violations of Title 18 U.S. Code Section 1461 and 1462".  The government agents were directed to seize the material.  The defendant argues that the above is in the nature of a general warrant.

The Supreme Court in addressing the issue of general warrants observed:

> General warrants of course, are prohibited by
> the Fourth Amendment.  "[T]he problem [posed
> by the general warrant] is not that of
> intrusion per se, but of a general,
> exploratory rummaging in a person's
> belongings. . . .  [T he Fourth Amendment
> addresses the problem]by requiring a
> 'particular description' of the things to be
> seized". . . .  This requirement "'makes
> general searches . . . impossible and prevents
> the seizure of one thing under a warrant
> describing another.  As is to what is to be

taken, nothing is left to othe discretiono of
the officer executing the warrant.'"

Andresen v. Maryland, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748

(1976)(citations omitted).  Another court noted that:

> When there is probable cause to believe
> thata premises to be searched contains a class
> of generic items or goods, a portion of which
> are stolen or contraband, a search warrant may
> direct inspection of the entire class of all
> of the goods if there are objective,
> articulated standards for the executing
> officers to distinguish between property
> legally possessed and that which is not. . . .
> A search warrant authorizing inspection will
> not be a general warrant if such standards
> reasonably guide the officers in avoiding
> seizure of protected property, and if upon
> return of the warrant the magistrate may
> review the search to determine whether the
> instructions were followed and legitimate
> property and privacy interests were protected.
> The standards  may be contained in the search
> warrant or, if certain conditions are met, in
> the accompanying affidavit.  The search
> warrant may be construed with reference to the
> affidavit for purposes of satisfying the
> particularity requirement if (1) the affidavit
> accompanies the warrant, and (2) the warrant
> uses suitable words of reference which
> incorporate the affidavit therein.

United States v. Hillyard, 677 F.2d 1336, 1340 (9th Cir. 1982)

(citations omitted).  A search warrant must disclose the things to

be seized with the most "scrupulous exactitude" when the things

- 7 -

are books and the basis for their seizure is the ideas they
contain.  Stanford v. Texas, 379 U.S. 476, 485, 85 S.Ct. 506,
511-512 (1965).

Turning to the facts of the instant case, it is noted that
the warrant specifically described the items which had previously
been viewed by the government agents and the magistrate and that
if the warrant had stopped there and the agents had seized nothing
else, the part of the motion now under consideration would be
without merit.  But, of course, the warrant did not stop at that
point.  It provided that the agents could seize, in addition to
the above, "other photographs, magazine, writings and documents
which are evidence of violations of Title 18, U.S. Code Sections
1461 and 1462."

The quoted language is broad and it fails to instruct the
agents executing the warrant what they are to seize.  This can be
illustrated by two examples.  First, the warrant allows the agents
to determine what evidence constitutes a violation of 18 U.S.C.
§§1461 and 1462.  In making that determination they must
necessarily make a determination as to what is obscene, for it is
not a violation of the statute to have mailed or imported any
items from a foreign country, or indeed, to have mailed or
imported pictures of nude boys or girls no matter how repugnant
such activity may be to some members of the public at large. 7/

Second, the warrant gave little or no direction as to items which one must suspect that the government agents really wanted, in addition to the "obscene materials" already seized, such as other mailings received from foreign countries, or from the sender in particular, or order forms or blanks or copies of letters to senders of the material, all of which would be a link in the chain of evidence.  The warrant fails even to direct the agents to seize similar pictures, books or magazines.  For example the agents in applying for the warrant seemed to draw a distinction between two types of magazines, one "Piccalo Extra No. 15" which depicts young boys commiting acts of masturbation and fellatio and "Boy No. 53" containing pictures of nude and dressed boys who are not depicted in sexual acts.  Thus, the warrant could have directed the agents to seize "Piccalo" magazines since presumably the agents knew that those magazines contained the same type of pictures; or the warrant could have described in detail the types of acts which are obscene.  The Court does not say that such a warrant would have been valid, but it certainly would have been closer to the requirements of the Fourth Amendment and would have evidenced  an intent to describe the material to be seized with "scrupulous exactitude".

The failure of the search warrant is that, at least with respect to "obscene" material, it leaves the definition of "obscene" to the officers executing the warrant. See Marcus v. Search Warrant, 367 U.S. 717, 731-732, 81 S.Ct. 1708, 1716 (warrant based on the assertion of a single police officer without scrutiny of a judge is invalid). Although Marcus dealt with the issuance of the warrant rather than its execution, the same standard would apply. In both situations, under Marcus and here, it is the officers or agents who are asked to make the determination of whether the material in question is obscene.

The defendant also cites the Court to Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319 (1979), but the primary thrust in that case was that the warrant was open-ended rather than a general warrant. There, the Town Justice signed an open-ended warrant and then accompanied the officers who were to execute the warrant to the store that was to be searched. The Supreme Court noted that the Town Justice "did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure." U.S. at 326, S.Ct. at 2324 (citations omitted). "He [the Town Justice] allowed himself to become a member, if not the leader, of the search party which was essentially a police operation." Id. The Supreme Court held that the motion to suppress should have

- 10 -

been granted.

In this case, just viewing the language of the warrant alone, this Court must conclude that the warrant is a general warrant insofar as it refers to items other than the six items described with particularity.

### III

Notwithstanding that the warrant itself is general and does not describe the items to be seized with sufficient particularity, the question is raised  as to whether a reference to the supporting affidavit will supply the specificity required to uphold the warrant.

A court in examining the validity of a warrant may look to the supporting affidavit for a description of the property to be seized only if and when the affidavit accompanies the warrant and the warrant uses words of reference which incorporate the affidavit as a part of the warrant.  See United States v. Hillyard, supra at 1340; United States v. Womack, 166 U.S. App. D.C. 35, 49, 509 F.2d 368, 382 (1974); United States v. Thompson, 161 U.S. App. D.C. 339, 344, n. 4, 495 F.2d 165, 170, n. 4 (1974); Moore v. United States, 149 U.S. App. D.C. 150, 152, 461 F.2d 1236, 1238 (1972), United States v. Anderson, Criminal No. 85-167, slip op. at 10-11 (D. D.C. October 2, 1985).

The warrant in this case does not make reference to and

incorporate the affidavits filed in the case.  The form affidavit seeks to incorporate any other affidavits by providing "see attached affidavit which is incorporated as part of this affidavit for search warrant".  The magistrate or the officers could have incorporated the affidavits by using similar language in the body of the warrant.  Since they did not do so, the Court cannot properly refer to the supporting affidavits to satisfy the particularity requirement for a warrant under the Fourth Amendment.

Even if the affidavit had been incorporated, however, the fact is that the language contained in the affidavit does not describe the items to be seized with particularity.  The affidavit sets forth background information and then describes the items which were reviewed by the Customs Inspector and taken to the magistrate.  The affidavit establishes probable cause to search for and seize the items identified in the warrant and in the affidavit.  However, in referring to other items to be seized, the affidavit merely states "that there is currently secreted inside of 2019 Connecticut Ave., N.W., Washington, D. C., 20008, items described herein [the items described with particularity which were originally reviewed on March 27, 1984] as well as other photographs, magazines, writings, and documents which are evidence of violations of Title 18 U.S.C. §§1462 and 1461" (emphasis the

Court's).  Thus, the affidavit adds nothing which would assist the agents and officers executing the warrant in determining what they should seize.  In short, the same defect found in the warrant is also found in the affidavit.  See Part II, supra.  The agents and the officers are required to determine what is evidence of a violation of 18 U.S.C. §§1461 and 1462 and what is obscene.  Such "evidence" can range from pictures, magazine, books and writings to tickets, stamps and mailing covers.  The agents and officers executing the warrant also thought that it included newspaper interviews conducted by the defendant in a nationally known newspaper having nothing to do with obscenity or sex, toys and family type photo albums depicting the defendant with friends.

The Court concludes that the warrant does not incorporate the affidavits.  The Court concludes further that even if it did, the language contained in the affidavits is not sufficient for the Court to find particularity as  would satisfy the requirements of the Fourth Amendment.

- 13 -

IV

The next issue presented is whether the exclusionary rule should be applied under the facts of this case.  Recently, the Supreme Court has had occasion to decide that the exclusionary rule should not be applied when the officer conducting the search acted in "objectively reasonably reliance" on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid.  United States v. Leon, 104 S.Ct. 3405 (1984); Massachusetts v. Sheppard, 104 S.Ct. 3424 (1984).

The facts in this case are more closely identified with the facts in Sheppard than those in Leon.  In Leon, the state court determined that the warrant was invalid because the supporting papers did not establish probable cause.  104 S.Ct. at 3412 (the Supreme Court accepted the Court of Appeals conclusion that probable cause was lacking).  In Sheppard, the supporting papers established probable cause but the warrant did not describe the property to be seized.

The investigation in Sheppard related to a homicide which occurred on Saturday, May 5, 1979.  That day, the officers received information which led them to focus their investigation on Sheppard and, as a result, they sought to obtain a warrant to search Sheppard's house.  An affidavit was prepared, but by that time, it was Sunday and the officers had difficulty in locating an

- 14 -

appropriate warrant application and form.  The warrant they
ultimately used was a form warrant which was designed to authorize
a search for "controlled substances"; i.e., illegal drugs.
Although the officers and the judge who issued the warrant
attempted to modify  the form warrant, everyone omitted changing
that part of the warrant which authorized a search for "controlled
substances".  The search was conducted pursuant to the warrant and
the items found were eventually introduced during Sheppard's trial
after which he was found guilty.  The trial court and the majority
of the justices on the Supreme Judicial Court for Massachusetts
found that the warrant was constitutionally defective "because the
description in the warrant was completely inaccurate and the
warrant did not incorporate the description found in the
affidavit."  104 S.Ct. at 3428, n. 5.  The state courts found,
however, that the officers believed that the warrant authorized
the search that they conducted and that there was an objectively
reasonable basis for the officers' mistaken belief.  104 S.Ct. at
3428-3429.  The Supreme Court affirmed, noting that "a reasonable
police officer would have concluded [as did the officers in
Sheppard] that the warrant authorized a search for the material
outlined in the affidavit."  104 S.Ct. at 3429.

The instant case is distinguishable from Sheppard for a
number of reasons.  In Sheppard "[t]he scope of the ensuing

search was limited to items listed in the affidavit." In that case the police found a pair of blood stained boots, blood stains on a concrete floor, a blood stained envelope, a pair of men's jockey shorts and women's leotards with blood on them, three types of wire, and a woman's hair piece, subsequently identified as the victim's. 104 S.Ct. at 3428 n. 4. When one reads the affidavit and the description of the items which were the subject of the search, and compares that description with what was actually found and seized by the officers, it is clear that the officers seized only those items described in the affidavit. Although the Sheppard affidavit did not disclose the exact items to be seized, for example, "an earring" or "a blood stained envelope", it did authorize a search for, among other things, "any possessions of Sandra D. Boulware, similar type wire and rope that matched those on the body of Sandra D. Boulware, or in [the defendant's automobile].... A blunt instrument might have been used on the victim, men's or women's clothing that may have blood, gasoline burns on them. Items that may have finger prints of the victim." 104 S.Ct. at 3427. Such language was sufficient to comply with the requirements of the Fourth Amendment. That language was also consistent with what was found at the scene of the crime. 8/ The problem was that the warrant itself did not give a description of the property to be seized and the warrant

did not incorporate the descriptions contained in the affidavit.
Id.

Here, of course, the facts differ.  Neither the warrant nor
the affidavit describe the items to be seized other than those six
items which were described with particularity.  See Parts II and
III, supra.  Rather, it was left up to the agents and the
officers to decide what was evidence demonstrating a violation of
18 U.S.C. §§1461 and 1462.  Necessarily, they had to decide what
was obscene.  The lack of particularity in this case allowed the
officers to rummage, at will, through the defendant's room as is
evidenced by the items seized during the search.

A further distinction is that this case, unlike Sheppard or
Leon, involves First Amendment issues.  This is not a case where
officers were directed to seize specific tangible items such as
weapons, or drugs, or gambling paraphernalia.  Here they were told
to seize material which was obscene.  "To tell the officers to
seize anything which, in their opinion, [is obscene] is not
'scrupulous exactitude'.  Nor does it become such by adding 'of
the same tenor' as three named magazines; especially when the
sameness is so broadly defined as to include any communicative
material, from books to prints to motion pictures."  United
States v. Guarino, 729 F.2d 864, 867 (1st Cir. 1984) (en banc).
In Guarino, there was a dissent, but it seems unlikely that the

dissent would have upheld the present warrant because the dissent found that the particularity requirement in that case was satisfied by the magistrate's order which sought to define obscenity for the officers executing the warrant.  729 F.2d at 872 (Breyer, J. dissenting).

Nor can this Court accept the government's oral argument that in conducting the search the officers were concerned that the defendant, a suspected pedophile, was likely to seek to contact children and that therefore this somehow justified the broad language of the warrant and the scope of the search actually conducted.  The government, after seizing the material, may have attempted to contact the parents of some of the children named or pictured in the defendant's albums.  But, as the Court has observed, those pictures were not suggestive of any illegal activity; rather they were family scenes some of which included the defendant, and some of which included pictures of children taken with their parents.  If those albums had not been connected with this defendant, it is extremely doubtful that anyone would have given a second thought to them.  The above actions of the officers demonstrates the risk of a general warrant, especially in a First Amendment case.  No evidence was presented at the time of the issuance of the warrant, or at the time of the hearing in this case, that suggested that the defendant was attempting to contact

children for any illegal activity.  The comments of the Court in this regard are not to be taken as an overall criticism of the agents and officers conducting the search; indeed, this Court believes that they were only attempting to conduct a legitimate search because of <u>suspected</u> activities of the defendant and for the protection of any children who may have been involved.  But the issue before the Court cannot be based upon the intuition of the agents and officers, but rather, must be based upon the requirements of the Fourth Amendment.

The Supreme Court has not held that all the government must do to override the exclusionary rule is to show that the search was authorized by a warrant signed by a detached and neutral magistrate.  If that was the import of the ruling then it would seem that defendants would have lost the right to challenge the sufficiency of a warrant, for under such a ruling, a victory would be academic.  Indeed, the Supreme Court has stated that, "depending on the circumstances of a particular case, a warrant may be so facially deficient - i.e., in failing to particularize the place to be search <u>or the things to be seized</u> - that the executing officers cannot reasonably presume it is valid." <u>Leon</u>, 104 S.Ct. at 3422 (citation omitted, emphasis the Court's).  The instant case is such a case.

Here the warrant is so general that the executing officers

could not reasonably presume it to be valid.  While the officers are not experts in the First and Fourth Amendments, the fact that the warrant and affidavit gave them unfettered discretion to seize anything which in their opinion is evidence of a violation of one or both of the involved federal statutes should have been enough to give them reason to pause.  For these reasons, nothing in this case demonstrates that the exclusionary rule should not be applied.

V.

The Court has concluded that the warrant is a general warrant, and further, that there is no basis not to apply the exclusionary rule.  The question remains whether the seizure of the six items described with particularity in the warrant can be upheld by severing the general part of the warrant.  In other words, may the government now use the materials originally intercepted on March 27, 1984, in its prosecution of the defendant.

It is clear that once the six items were intercepted by the governments agents and determined to be "obscene" by the magistrate, and once delivery was made to the defendant, there was probable cause to issue the search warrant.  See Part I, note 3, supra.  It is also clear that the six items were described in the warrant with "scrupulous exactitude".  Thus, if the offending part of the warrant may be severed, the remaining part is valid.

- 20 -

A number of courts have held severance to be appropriate
where a part of the warrant is invalid.  See United States v.
Fitzgerald, 724 F.2d 633 (11th Cir. 1983), cert. denied, 104
S.Ct. 2151 (1984); Sovereign News Co. v. United States, 690
F.2d 569 (6th Cir. 1982), cert. denied, 104 S.Ct. 69 (1983);
United States v. Riggs, 690 F.2d 298 (1st Cir. 1982); United
States v. Christine, 687 F.2d 49 (3d Cir. 1982); United
States v. Freeman, 685 F.2d 942 (5th Cir. 1982); United
States v. Torch, 609 F.2d 1088 (4th Cir. 1979).  In Freeman,
the court observed that "[i]f the police have probable cause to
search for Item A but not for Item B, and a warrant is issued for
both, it seems unfair to law enforcement officials not to allow A
in if the search was otherwise properly conducted."  685 F.2d at
952 (citation omitted).

Moreover, although most of the above cases relate to searches
for property other than allegedly "obscene" materials, a search
for obscene materials was involved in Sovereign News, Riggs
and Torch.  In Sovereign News, the magistrate issued a warrant
for specifically identified films and magazines said to be
obscene, and authorized the seizure of "other magazines of the
same kind and nature."  The defendant argued that the warrant was
impermissibly broad but the court stated that, "[w]e refuse to
invalidate the entire warrant as appellant requests.   Where the

police and the issuing magistrate have listed the titles of the
primary targets of the search, we will not invalidate the entire
warrant.   Rather, we will sever those portions containing the
overbroad language and allow the items seized under the proper
section to stand as evidence."   690 F.2d at 576 (citations
omitted).   The court in Riggs reached the same result.   It
severed the impermissible part of the warrant and upheld that part
which described the film to be seized with particuarity.   690 F.2d
at 300-301.   Finally, the court in Torch recognized that the
district court had properly severed the invalid part of the
warrant and upheld that part of the warrant which described the
film to be seized.   609 F.2d at 1089.

The Court of Appeals for this circuit has had occasion to
address the issue of severence.   See In Re Search Warrant Dated
July 4, 1977, 215 U.S. App. D.C. 74, 667 F.2d 117 (1981), cert.
denied, sub-nom, Hubbard v. United States, 456 U.S. 926, 102
S.Ct. 1971 (1982); Huffman v. United States, 152 U.S. App.
D.C. 238, 470 F.2d 386 (1971).   In Huffman, the warrant
incorporated the supporting affidavit which described the items to
be seized as "Modern Girls" and "Girls", which had been viewed by
the judge who issued the warrant, "as well as other magazines of a
similar appearance and contents."   The court recognized the
severability of the seized evidence and upheld the seizure of the

items described with particularity.  U.S. App. D.C. at 245, n. 7,
F.2d at 393, n. 7.

The Court concludes then that it is proper to sever the
offending portions of the warrant and uphold so much of the
warrant as described the six items with particularity.

VI

In sum, this Court holds that the warrant read in its
entirely amounts to a general warrant which is impermissibly broad
and in violation of the Fourth Amendment to the Constitution.  The
Court further holds that there is no basis not to apply the
exclusionary rule in this case.  Finally, the Court rules that the
offending portions of the warrant may be severed and that the
search and seizure of the six items described with particularity
in the warrant may be upheld.

An appropriate Order has been issued.

Dated:   NOV 1 4 1985

JOHN GARRETT PENN
United States District Judge

- 23 -

1/  See United States v. Leon, 104 S.Ct. 3405 (1984);
Massachusetts v. Sheppard, 104 S.Ct. 3424 (1984).

2/  The Speedy Trial Act, 18 U.S.C. §3161 et. seq., is still
tolled in view of the agreement of the parties that the Court
should not address the fourth and fifth parts of the motion at
this time.  See 18 U.S.C. §3161(h)(1)(f).

3/  The Court has viewed the material and cannot quarrel with the
conclusion of the government agents and the magistrate that the
material is obscene.

4/  It is significant that the agents in applying for a warrant
distinguished between the two groups of material.

5/  It was ascertained at the time of the search that the
defendant rented a room from an elderly couple in a private home.

6/  The defendant does not challenge the actions of the magistrate
in advising the  government agents on how to establish probable
cause.  Although the Court need not address this issue, it notes
that the facts relating to the magistrate's participation differs
from those involved in Lo-Ji Sales, Inc. v. New York, 442
U.S. 319, 99 S.Ct. 2319 (1979).  There, the Town Justice signed
the warrant, which was incomplete and open ended, and then
accompanied the officers searching the store.  The Supreme Court
noted that "[t]he Town Justice did not manifest that neutrality
and detachment demanded of a judicial officer when presented with
a warrant application for a search and seizure."  U.S. at 326,
S.Ct. at 2324 (citation omitted).  That issue is not raised here
where the magistrate advised the government agents that probable
cause would not arise until after the package was delivered, since
absent delivery, there was no basis to conduct this search for the
items described with particularity in the warrant.  See U.S. at
327 n. 6, S.Ct. at 2325, n. 6.  ("Magistrate [does not] loose [ ]
his character as such merely because he leaves his regular office
in order to make himself more readily available to law enforcement
officers"), Heller v. New York, 413 U.S. 483, 93 S.Ct. 2787
(1983) (judge went to theatre and after viewing the film signed
the search warrant while still in the theatre).


7/       There is no doubt that some members of the public
might well object to some works of art imported by art galleries,
museums or collectors.

8/  Sheppard consented to a search of his automobile and at that
time the police found "[b]lood stains and pieces of hair [ ] on
the rear bumper and within the trunk compartment. . . .  Strands
of wire in the trunk similar to wire strands found on and near the
body of the victim."  104 S.Ct. at 3426.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA            :
                                    :
        v.                          :        Criminal No. 85-33
                                    :
GEORGE NADER                        :        (Judge Penn)
                                    :

**FILED**

NOV 18 1985

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

## MOTION TO CONSOLIDATE FINAL ORDERS ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully moves for consolidation of final orders on defendant's motion to suppress evidence and statements and submits the following points and authorities in support thereof:

1. The defendant, Mr. GEORGE NADER, moved this Court to suppress certain pieces of evidence that were seized by customs officers. Sometime after the search Mr. Nader, in the presence of counsel, made several statements to the investigating officers that he also moves to suppress.

2. On November 7, 1985, this Court ordered that Mr. Nader's motion[1] to suppress evidence would be "granted in part and denied in part." In essence this Court ruled that the material seized by the customs agents as a result of the controlled delivery is admissible but that other items seized are inadmissible.

---
[1]
The parties had agreed that the portion of Mr. Nader's motion to suppress, which dealt with statements, would be withdrawn until such time as this Court ruled on the issue of suppression of evidence.



3.  As a result of this Court's ruling the Government if we so choose, has thirty days (30) in which to perfect an appeal, 18 U.S.C. 3732 Fed. R. App. P. 4(b).  Since this court has yet to rule on the statements issue, in we request that the Order issued by this Court on November 7, not be declared final until this Court has ruled on whether or not it will admit or deny, in the Government's case-in-chief, statements made by Mr. Nader.  We respectfully submit that making the November 7, order final after the Court has ruled on the statements portion of Mr. Nader's motion would, for purposes of possible appeal, provide a smooth transition of these issues, and consolidate them for appeallate review.  It is our view that neither party would be prejudiced by the procedure the Government suggests and it would prevent the issues in this pretrial motion from becoming fragmented.

WHEREFORE, it is respectfully submitted that this motion should be granted.

Respectfully submitted,

JOSEPH E. diGENOVA
UNITED STATES ATTORNEY

_____
RONALD DIXON
ASSISTANT UNITED STATES ATTORNEY

-2-

### CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing Motion has been mailed to counsel for the defendant, David Povich, Esq. and Richard Hoffman, Esq., Williams and Connolly, Hill Building, 839 17th Street, N.W. Wash., D.C. 20036 this ___18___ of November, 1985.

*Ronald Dixon*

RONALD DIXON
Assistant United States Attorney
Judiciary Center
555 4th Street N.W.
Washington, D.C.  20001
272-9078

NITED STATES DISTRICT COUF
FOR THE DISTRICT OF COLUMBI.

FILED

DEC 6 1985

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICIA     :

                      :

                      :     Criminal No.  85-33

       v.            :

                      :     (Judge Penn

GEORGE NADER           :

## O R D E R

Upon consideration  of  the  motion  of  the  Government  to consolidate final  orders  on  the  defendant's  motion  to  suppress evidence and statements.

It is by the Court this ___6___ day of ___December___, 1985.

ORDERED: That the order issued by the Court on November 7, 1985, which  grants  in  part  and  denies  in  part  the  defendant's motion  to  suppress  evidence  is  not  a  final  order;  and

IT IS FURTHER ORDERED: That the order issued by the Court on November 7, 1985, shall  become  final  when  the  Court  rules  on  the defendant's motion  to  suppress  statements.



_____
UNITED STATES DISTRICT JUDGE

COURTRAN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

DEC 1 0 1985

JAMES F. DAVEY, Clerk

United States of America )
)
)
v. )      Criminal No. 8500033
)      Judge John Garrett Penn
)
George A. Nader )
)
)

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## MOTION TO SUPPRESS STATEMENTS

On November 7, 1985, this Court issued an order granting
in part and denying in part defendant's motion to suppress.  In
its order and the opinion which followed the Court held that the
warrant and search conducted pursuant to it constituted an
invalid general search in violation of the Fourth Amendment.  The
Court ordered suppression of the material seized with the
exception of the contents of the package particularly identified
in the warrant.  The Court withheld ruling on defendant's motion
to suppress his alleged statements.  However, as defendant argued
in his original brief and at oral argument, in light of the
Court's order suppressing evidence, defendants alleged statements
must be suppressed and no evidentiary hearing is necessary.

### UNDISPUTED FACTS

We submit that the facts necessary to determine that the
alleged statement must be suppressed are not in dispute.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000



1.    Defendant was not home at the time the package was delivered or at the time of the search and seizure (immediately after delivery).  The government's response to this motion confirms that the "package was delivered to the defendant's landlord."  Opposition to Motion to Suppress at 4.  The inventory left by the government after the search was also signed by the landlord.  Defendant's Motion to Suppress, Exhibit C.[1]/

2.    The inventory left by the agents -- the defendant's only method of knowing what was seized -- makes no mention of a package mailed to defendant and seized in the hallway.  Id., Exhibit C.  Prior to the meeting with the government, defendant had only seen the other material taken from his home.

3.    The meeting at which the government contends the statements were made was for the purpose of confronting defendant with the material seized.  To the defendant that could only have meant the material listed on the inventory, since that is all he knew was taken.  All of that material has been ordered suppressed.

4.    At the interview with the agents, which defendant attended with his then counsel, defendant was confronted with all of the evidence seized, including all of the other allegedly obscene material taken from his home that the Court has properly ordered suppressed.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

---

1/  In fact, defendant was in Cleveland the day the package was delivered and the search conducted.

- 2 -

### THE STATEMENTS ALLEGEDLY MADE WERE
### THE FRUIT OF THE UNLAWFUL SEARCH

In his original submission to the Court, defendant pointed out that where the defendant makes statements after being confronted with evidence seized in an unlawful search the "fruit of the poisonous tree" doctrine requires suppression of the statements as well. See People v. Robbins, 54 Ill. App. 3d 298, 369 N.E.2d 577, 581 (1977); People v. Johnson, 70 Cal 2d 541, 550, 450 P.2d 865, 871 (1969), cert. denied, 395 U.S. 969 (1969); see generally 3 W. LaFave, Search and Seizure, § 11.4(c) at 639 (1978). See Defendant's Memorandum in Support at 27-30 (attached hereto for reference).

The government responded to the argument that defendant's alleged statements were the result of being confronted with the fruits of an unconstitutional search by citing cases dealing exclusively with statements made after an illegal arrest. But, as defendant stated in reply, it is well settled that being confronted with illegally seized evidence requires suppression of subsequent statements even where an unlawful arrest would not. See 3 W. LaFave, supra § 11.4(c) at 639. The presence of counsel subsequent to an illegal arrest breaks the chain of causation (and allows the statements to be admitted) because it elimanates the presssures of the illegal arrest and renders the statement independent of the constitutional violation. See e.g., United States v. Davis, 617 F.2d 677 (D.C. Cir. 1979). But where, as here, the defendant is confronted with

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 3 -

illegally seized materials, it "tends to induce a confession by demonstrating the futility of remaining silent" regardless of a custodial environment or the presence of counsel.  <u>People</u> v. <u>Robbins</u>, <u>supra</u>, 369 N.E.2d at 581.  It is for that reason that the California Supreme Court recognized that <u>Miranda</u> warnings were irrelevant in a decision to exclude "confessions induced by unlawfully obtained evidence."  <u>People</u> v. <u>Johnson</u>, <u>supra</u>, 450 P.2d at 871.

It cannot be disputed in this case that whatever statements were obtained from the defendant were the result of confronting him with the mass of material illegally seized from his home.  The casual connection between the illegal search and the alleged statements is not effected in the slightest by the fact that defendant was accompanied by counsel when he reviewed and discussed the illegally seized evidence.  There simply cannot be any question on the facts of this case that the statements were obtained as a direct result of the illegal seizure of material from defendant's home.

CONCLUSION

For the reasons stated here and in defendant's previous memoranda, the motion to suppress statements should be granted without the need of an evidentiary hearing.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

Respectfully submitted,

WILLIAMS & CONNOLLY

By _____
David Povich
Richard S. Hoffman

839 Seventeenth Street, N.W.
Washington, D.C.  20006
(202) 331-5000

Attorneys for George A. Nader

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 5 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Supplemental Memorandum in Support of Motion to Suppress Statements was mailed by first-class mail, postage prepaid, on December 10, 1985 to Ronald Dixon, Assistant United States Attorney, 555 4th Street, N.W., Washington, D.C. 20001.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
3rd & CONSTITUTION AVE., N.W.
WASHINGTON, D.C. 20001

January 17, 1986

UNITED STATES

Mr. David Povich
839 - 17th Street, N. W.                     vs.
Washington, D. C.  20006

GEORGE A NADER

Criminal No.____85-33____

Please be advised that the above entitled case is set

for  HEARING ON MOTION

on  February 7, 1986                    , at    10:00 a.m.

before Judge  John Garrett Penn      in Courtroom No. 17, 6th floor

Notwithstanding the obligation of the D.C. Pretrial Services

Agency and/or the Surety to notify the defendant of his/her

required appearance, defense counsel is also directed by the

Court to take appropriate action to assure the presence of the

defendant.

JAMES F. DAVEY, Clerk

By: *Patricia M Hayden*
Courtroom Clerk
(202) 535-3533

cc:  Chambers
     Courtran
     AUSA Ronald Dixon
     Pretrial Services AGency

CO 300
Rev. 10/78

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**F I L E D**

MAY 13 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.                    CRIMINAL NO. 85-0033

GEORGE NADER

O R D E R

The case comes back before the Court on the defendant's motion to suppress statements made by the defendant.  After giving full consideration to the motion, the opposition thereto, the record in this case, and the arguments of counsel, the Court concludes, for the reasons set forth in the memorandum to be filed, that the motion should be denied.

In view of the above, it is hereby

ORDERED that the motion to supress statements made by the defendant is denied. \*/

MAY 13 1986

_____
JOHN GARRETT PENN
United States District Judge

_____

\*/  The underlying facts of this case are set forth in the Opinion relating to the defendant's motion to suppress eivdence.  See United States v. Nader, 621 F. Supp. 1076 (D.D.C. 1985)



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

MAY 19 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

FILED

MAY 16 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA       :
                               :
          v.                   :   Criminal No. 85 - 33
                               :
GEORGE A. NADER                :   JUDGE JOHN G. PENN
                               :
                               :
                               :

## GOVERNMENT'S MOTION FOR CONTINUANCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that the trial of this case, presently set for May 28, 1986, be continued. As grounds for this request the United States now says:

1. The instant case was set for a trial date of May 28, 1986 on April 7, 1986. The Assistant United States Attorney assigned to try the instant case is Mr. Ronald Dixon.

2. The United States has learned that an essential witness will not be available for trial on May 28, 1986.

3. The defendant, Mr. George Nader, has waived his right to a speedy trial, therefore, the granting of this continuance will not infringe upon that right.

4. On May 19, 1986, counsel for the United States spoke with counsel for Mr. Nader who stated they had no objection to a continuance.

5. Mr. Nader is free in the community on his personal promise to return to Court.



6.  The Government would respectfully request that the trial date currently set in the instant case be converted to a status hearing at which the parties could select a new trial date.

7.  This is the first request for a continuance made by the United States.

8.  This request for a continuance is made in good faith and not to gain any advantage over Mr. Nader.

WHEREFORE, the United States respectfully requests that the trial of the instant case be continued.

Respectfully submitted,

JOSEPH E. DIGENOVA
United States Attorney

BY:

RONALD DIXON
Assistant United States Attorney

- 3 -

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was mailed postage prepaid to the attorneys for the defendant, David Povich and Richard S. Hoffman, 839 Seventeenth Street, N.W., Washington, D.C. 20006, this ____19____ day of May, 1986.

RONALD DIXON
Assistant United States Attorney
Judiciary Center, Room 5154
555 4th Street, N.W.
Washington, D.C. 20001
(202) 272-9078

FILED

MAY 16 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

   v.        Criminal No. 85-33

GEORGE A. NADER

### MEMORANDUM

This case is back before the Court on the defendant's motion to suppress statements he made on April 16, 1984, when he and his then counsel, Gwynneth M. Moolinar, met with Don Bloodworth, Special Agent, U.S. Customs Service, and Robert D. Northrop, Postal Inspector, at the Post Office in Washington, D. C., to discuss the defendant's background and the material seized on April 12, 1986 from his room and the house where he lived. The underlying facts are set forth in an earlier Opinion filed by this Court that addressed the defendant's motion to suppress physical evidence. See United States v. Nader, 621 F. Supp. 1076 (D. D.C. 1985). The defendant contends that the statements made by him were the fruit of an illegal search and that the statements were obtained as a result of material misrepresentations by Government agents. After giving careful consideration to the motion, the opposition thereto, the record in this case, and the arguments of counsel, the Court concludes that the motion should be denied.

The defendant argues that the statements must be suppressed



because they were made <u>after</u> the defendant was confronted with evidence seized during an illegal search on April 12, 1984. <u>See</u> <u>Wong Sun</u> v. <u>United States</u>, 371 U.S. 471, 484-487, 83 S.Ct. 407, 415-417 (1963). In <u>Wong Sun</u>, the officers participated in an illegal search, broke into the house of one of the defendants, handcuffed and arrested him in the room where his wife and child were sleeping at which time the defendant made the challenged statement. U.S. at 468, S.Ct. at 416-417. Under these circumstances, the Supreme Court ruled the statement inadmissible and noted that "it is unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion." <u>Id,</u> (footnote omitted). However, in the same case, the Supreme Court addressed a second statement made by Wong Sun. He had been arrested <u>"without probable cause</u> <u>or reasonable grounds</u>"but the Court concluded that the unsigned confession obtained from him several days later was admissible because he had returned voluntarily to make the statement and the "connection between the arrest and the statement had 'become so attenuated as to dissipate the taint [the illegal arrest]'". U.S. at 491, S.Ct. at 419 (citation omitted).

The facts here are clearly distinguishable from those leading to the statement by Toy and more in line with the facts relating to the statement given by Wong Sun. The search took place on

April 14, 1984, when the defendant was not at home.  Thereafter, he retained the services of counsel who arranged the meeting with the Government agents on April 16.  When the defendant attended that meeting, he was accompanied by his attorney who remained with him throughout the entire meeting.  He was not under arrest at that time, and he was free to leave at any time.  The defendant is intelligent, and he voluntarily met with the agents after seeking the advice of his counsel.  Under these circumstances, so much of the motion as is based on the alleged illegal search must be denied.  Moreover, it should be noted that not all of the evidence seized on April 12, 1984, has been suppressed.  See United States v. Nader, supra at 1084-1086.

As to the second part of the motion alleging that the Government agents made material misrepresentations which in turn led to the statements made by the defendant, that argument must also be rejected.  The Court finds that the agents never advised the defendant or his counsel that the defendant  would not be prosecuted if he met with the agents to discuss the material that had been seized.  Subsequent to the meeting, the agents prepared a detailed Memorandum Of Interview setting forth what occurred at the meeting.  See Government Exhibit 3, Defendant Exhibit 6.  That memorandum is fairly consistent with the notes prepared by the defendant's counsel at the time of the April 16 meeting.

- 3 -

Defendant's Exhibit 5.  The defendant was not threatened or coerced in any way and he was not advised that as the result of his cooperation the Government would not prosecute.  It also seems reasonable to conclude that the defendant, or at least his counsel, should have been aware that there was a real possibility of prosecution since they knew and understood that the defendant had violated certain federal statutes.  Moreover, they knew that the evidence seized had been seized pursuant to a search warrant.

It appears to the Court that the defendant and his counsel made a tactical decision to cooperate with the Government in hopes that the Government would not prosecute; but that decision was not based on any representations made by the Government agents. Accordingly, the Court concludes that so much of the motion as is based on the alleged material misrepresentations by the Government agents must also be denied.

The motion is denied.  An appropriate order has issued.

Dated:  May 15, 1986

_____
JOHN GARRETT PENN
United States District Judge

- 4 -

**FILED**
**MAY 28 1986**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

United States of America    )
                            )
                            )
     v.                     )     Criminal No. 8500033
                            )     Judge John Garrett Penn
                            )
George A. Nader             )
_____)

       Defendant, George A. Nader, after consultation with
counsel, and fully understanding his right to a trial by jury,
hereby waives a trial by jury and elects to be tried by the Court
for the charges in this indictment.


                                          _____
                                          George A. Nader

                              WILLIAMS & CONNOLLY

                              By: _____
                                 David Povich

                              839 17th Street, N.W.
                              Washington, D.C.  20006
                              (202) 331-5000

Dated:  May 28, 1986

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JUN 11 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

United States of America )
)
)
v. )            Criminal No. 8500033
)            Judge John Garrett Penn
)
George A. Nader )
_____)

### DEFENDANT'S PROPOSED JURY INSTRUCTIONS

Defendant respectfully requests that the Court instruct the jury in accordance with the District of Columbia Criminal Jury Instructions (D. C. Bar Assoc. 1978 & Supp. 1981) listed below, and the additional instructions attached hereto.

| Number | Subject |
|--------|---------|
| 1.04 | Question Not Evidence |
| 1.05 | Expert Testimony (if relevant) |
| 2.01 | Function of the Court |
| 2.02 | Function of the Jury |
| 2.05 | Statements of Counsel |
| 2.06 | Indictment Not Evidence |
| 2.07 | Inadmissible and Striken Evidence |
| 2.10 | Types of Evidence |
| 2.11 | Credibility of Witnesses |
| 2.13 | Number of Witnesses |
| 2.26 | Failure of Defendant to Testify (if applicable) |
| 2.27 | Defendant as Witness (if applicable) |

LAW OFFICES
**WILLIAMS & CONNOLLY**
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000



2.47                          Confessions and Admissions --
                              Corroboration

2.50                          Multiple Counts

2.69                          Unanimity of Verdict

                                   Respectfully submitted,

                              WILLIAMS & CONNOLLY

                              By: _____
                                   David Povich
                                   Richard S. Hoffman

                                   839 17th Street, N.W.
                                   Washington, D.C.   20006
                                   (202) 331-5000

Dated:   June 11, 1986

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 1

EVIDENCE IN THE CASE -- JUDICIAL NOTICE --
STIPULATIONS -- DEPOSITIONS

You may consider only the evidence properly admitted in the case.  Evidence includes the sworn testimony of witnesses, exhibits admitted into evidence, facts judicially noticed by the court, facts and testimony stipulated to by counsel, and depositions.

A stipulation of fact is an agreed statement of facts between counsel and you may regard such stipulated facts as undisputed evidence.  In this case, the prosecution and the defendant agreed that the material contained in the envelope is obscene within the meaning of the law.

District of Columbia Criminal Jury Instruction 2.04 (modified)

Granted _____

Denied _____

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 2

BURDEN OF PROOF -- PRESUMPTION OF INNOCENCE

Every defendant in a criminal case is presumed to be innocent.  This presumption of innocence remains with the defendant throughout the trial unless and until he is proven guilty beyond a reasonable doubt.

The burden is on the government to prove the defendant guilty beyond a reasonable doubt.  This burden of proof never shifts throughout the trial.  The law does not require a defendant to prove his innocence or to produce any evidence.  If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, you may find him guilty.  On the other hand, if you find the government has failed to prove any element of the offense beyond a reasonable doubt, you must find the defendant not guilty.

District of Columbia Criminal Jury Instruction 2.08.

United States v. Hayward, 420 F.2d 142 (D.C. Cir. 1969).

Granted _____

Denied  _____

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 3

REASONABLE DOUBT

Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you can give a reason. It is such a doubt as would cause a juror, after careful and candid and impartial consideration of all the evidence, to be unable to say that he has an abiding conviction of the defendant's guilt. It is such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions of life. However, it is not a fanciful doubt nor a whimsical doubt, nor a doubt based on conjecture. It is a doubt which is based on reason. The government is not required to establish guilt beyond all doubt, or to a mathematical certainty or a scientific certainty. Its burden is to establish guilt beyond a reasonable doubt.

District of Columbia Criminal Jury Instruction 2.09 (modified)

Granted _____

Denied _____

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 4

NATURE OF CHARGES NOT TO BE CONSIDERED

You are specifically cautioned against permitting the character of the charge itself to affect your minds in arriving at your verdict.  The parties in this case have agreed that the material sent through the mails is obscene.  The fact that you may be offended by the material should in no way influence your deliberations regarding whether this defendant is guilty of the charges against him.

District of Columbia Criminal Jury Instruction 2.14 (modified)

Granted _____

Denied _____

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 5

GOVERNMENT AGENT'S TESTIMONY

A government agent's testimony should be considered by you just as any other evidence in the case and in evaluating his credibility you should use the same guidelines which you apply to the testimony of any witness.  In no event should you give either greater or lesser credence to the testimony of any witness merely because he is a government agent.

District of Columbia Criminal Jury Instruction 2.25.

Busch v. United States, 375 F.2d 602, 605 (D.C. Cir. 1967).

Granted _____

Denied _____

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 6

CONFESSIONS AND ADMISSIONS -- SUBSTANTIVE EVIDENCE

Evidence has been introduced that the defendant made an admission concerning the crime charged.  You should weigh such evidence with caution and should carefully scrutinize all the circumstances surrounding the alleged admission in deciding whether the defendant made it and what weight to give it, along with all the other evidence, in determining the guilt or innocence of the defendant.  In this case, the defendant has offered evidence denying that he made such an admission.

District of Columbia Criminal Jury Instruction 2.46 (modified).

Lego v. Toomey, 404 U.S. 477 (1972).

United States v. Robinson, 459 F.2d 1164 (D.C. Cir. 1972).

Granted _____

Denied _____

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 7

1461 -- MAILING OBSCENE MATERIAL
ELEMENTS OF THE OFFENSE

The defendant is charged in this case with mailing
obscene material.  The elements of that offense are:

1.   That the defendant willfully deposited the parcel
for mailing and delivery by the Post Office of the United
States;1/

2.   That the defendant knew, at the time of such
mailing, the general nature of the contents of the article placed
in the mail;2/  and

3.   That the contents of the envelope were obscene.  In
this case the defendant and the prosecution have agreed that the
contents of the envelope contained obscene material and you need
not make a finding on that issue.

As stated before, the burden is always upon the
prosecution to prove beyond a reasonable doubt every essential
element of the crime charged; the law never imposes upon a
defendant in a criminal case the burden or duty of calling any
witnesses or producing any evidence.  It is not a crime under the
statute that Mr. Nader is charged with violating to receive
material in the mail.  Nor is it an offense under the statute to
order such material to be sent by someone else, unless there is
evidence that the defendant intended to circulate the material to
others.  [There is no such evidence in this case.]  Therefore, I
instruct you that unless you find that the government has proven

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

beyond a reasonable doubt that the defendant deposited the
material in the mail knowing the contents of the envelope you
must return your verdict for the defendant.


1/   United States v. Sidelko, 248 F. Supp. 813, 815 (M. D. Pa.
     1965).

     Reed Enterprises v. Clark, 354 F.2d 519, 521-22 (D.C. Cir.
     1965).

     Reed Enterprises v. Clark, 278 F. Supp. 372, 374, 378-80
     (D.D.C. 1967) (three judge court), aff'd 390 U.S. 457
     (1968).

2/   United States v. Luros, 260 F. Supp. 697, 700 (N.D. Iowa
     1966).

Parts of the instruction are taken from Devitt & Blackmar,
Federal Jury Practice and Instructions § 62.05 (1977), but the
elements of the offense are modified to account for the
applicable case law, particularly United States v. Sidelko,
supra.

Granted  _____

Denied   _____

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 8

1462 -- IMPORTATION OF OBSCENE
MATERIAL -- ELEMENTS OF THE OFFENSE

The defendant is also charged in this case with importing obscene material.  The elements of that offense are:

1.   That the defendant knowingly and willfully brought into the United States from outside the United States certain articles as charged;

2.   That the defendant knew at the time of such importation, the general nature of the contents of the articles that he brought into the United States;

3.   That the articles were obscene.  As I instructed you with the mailing charge, the defendant and the prosecution have agreed that the contents of the envelope included obscene material, and you need not make a finding on that issue.

It is not a crime under this statute to receive material that has been brought into the United States by someone else. Therefore, I instruct you that unless you find that the government has proven beyond a reasonable doubt that the defendant brought the material into the United States knowing the general nature of the contents of the envelope, you must find for the defendant.

Devitt & Blackmar, Federal Jury Instructions § 62.21 (Supp. 1986) (modified) (the instruction as written deals only with use of a common carrier for interstate transportation of obscene material and has been modified here to address the charge of importation).

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

Granted  _____

Denied   _____

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing
Defendant's Proposed Jury Instructions was mailed by first-class
mail, postage prepaid, on June 11, 1986 to Ronald Dixon,
Assistant United States Attorney, 555 4th Street, N.W.,
Washington, D.C.  20001.

Richard S. Hoffman



LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

*Penn. I*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :
                                  :
          v.                      :          Criminal No. 85-33
                                  :          Judge John G. Penn
GEORGE A. NADER                   :

FILED

JUN 1 1 1986

JAMES F. DAVEY, Cler

## GOVERNMENT REQUESTED JURY INSTRUCTIONS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests the Court to charge the Jury with the following instructions, as set forth in the Criminal Jury Instructions, District of Columbia (Redbook Instructions):

| | |
|---|---|
| 1.02 | Preliminary Instruction to Jury Before Trial |
| 1.025 | Cautionary Instruction Prior to First Recess |
| 2.01 | Function of the Court |
| 2.02 | Function of the Jury |
| 2.03 | Jury's Recollection Controls |
| 2.05 | Statements of Counsel |
| 2.06 | Indictment Not Evidence |
| 2.07 | Inadmissible and Stricken Evidence |
| 2.08 | Burden of Proof |
| 2.09 | Reasonable Doubt |
| 2.10 | Direct and Circumstantial Evidence |
| 2.11 | Credibility of Witnesses |
| 2.14 | Nature of Charge Not to be Considered |
| 2.70 | Exhibits During Deliberations |
| 2.69 | Unanimity of Verdict and Election of Foreperson |
| 2.72 | Communications Between Court and Jury During Jury's Deliberation |
| 3.01 | Intent |
| 3.02 | Proof of Intent |
| 3.05 | "Knowingly" |
| 4.02 | Aiding & Abetting |

In addition, I instruct you that:



- 2 -

In order to prove the defendant guilty of the crime charged in the indictment, the government must establish each of the following elements beyond a reasonable doubt:

First, that the defendant knowingly used the mails for the mailing or delivery of the material alleged in the indictment.

Second, that the defendant knew at the time of mailing the general contents, character and nature of the material which was mailed.

Third, that the material charged in the indictment was "obscene" as I will define that term.

The first element the government must prove beyond a reasonable doubt is that the defendant knowingly used the mails for the mailing or delivery of the material charged in the indictment.

In order to satisfy this element, the government need not prove that the defendant personally placed the materials in question in a mail box. It is sufficient to satisfy this element if you find that he caused the materials to be mailed, and that he knew the mails would be used for the purpose of delivering the materials in questions.

An act is done if it is done voluntarily and intentionally, and not because of accident or mistake.

The second element which the government must prove beyond a reasonable doubt is that the defendant knew, at the time of mailing, the general contents, character and nature of the material which was mailed.

- 3 -

In this regard, it is not necessary for the government to prove that the defendant knew the offending materials to be legally obscene, or believed them to be, in fact, obscene. It is sufficient to satisfy this element if you find that the defendant was aware of the general contents, character and nature of the materials mailed.

The final element which the government must prove beyond a reasonable doubt is that the material charged in the indictemnt was obscene.

What is meant by obscene, lewd and lascivious, and what standards do you apply in deciding whether the book (or magazine or photograph or film) is of that character?

The words "obscene, lewd and lascivious," as used in the law, signify that material which, taken as a whole, the average person, applying present-day community standards, would find appeals to prurient interests; that it depicts or describes, in a patently offensive way, sexual conduct; and that it lacks serious literary, artistic, political or scientific value.

Let me explain each of these definitions in more detail. The words "taken as a whole" mean that in determining whether the work at issue is obscene, it must be judged in its entirety. You are not to consider detached or separate portions in reaching a conclusion about whether the work is obscene. It is your task to determine whether, taken as a whole, it is obscene.

- 4 -

Similarly, you are to judge the work according to the standards of the average person in the present-day community.  It is not your role to judge the work by your own personal standards [or by the standards of any particular class of people].  In this regard, you should take into account the community as a whole, the sensitive and insensitive, the educated and uneducated, the religious and non-observant, men and woman from all walks of life in the community in which you live (or in the community in which you find the materials were intended to be distributed).  Also bear in mind that the law accepts the fact that the mores or the customs and convictions of people are not static.  What is an acceptable code of morals or conduct today might well have been frowned upon in the past.  Therefore, in reaching a conclusion as to whether or not material is obscene, you are to judge it by present-day standards of the community, or, for want of a better expression, by what may be termed the contemporary common con-science of the community.

Before you may judge the material in question obscene, you must find each of the following requirements:  First, you must conclude that the work appeals to the prurient interests of those whom it is likely to reach.  Prurient interest is a shameful or morbid interest in sex or nudity.  The test is not whether it would arouse sexual desires or sexually impure thoughts in those comprising a particular segment of the community - the young, the immature or the highly prudish - or, would leave another segment -

the scientific or highly educated or so-called wordly-wide and sophisticated - indifferent and unmoved.  In other words, you are first to determine whether it appeals to the prurient interests of the average person in the community.  (If applicable:  The claim is also made here that some of the materials were designed for and primarily disseminated to a clearly defined or deviant sexual group rather than the public at large.  If you conclude that the members of a particular sexual group were the intended and probable recipients of these materials the question is whether it appeals to the prurient sexual interests of the members of that group.)

The second component of obscenity you must find, in accordance with the standards I have set forth, is that the work depicts or describes, in a patently offensive way, sexual conduct.  The Supreme Court of the United States has given the following examples of materials which may satisfy this requirement:  (a) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; (b) patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.  In short, before you may find the material in question to be obscene, you must determine that, taken as a whole, they constitute such examples of 'hard core' sexual conduct.

The third component of obscenity is that the work in question lacks serious literary, artistic, political or scientific value. This requirement finds its roots in the First Amendment of the

United States Constitution, which protects freedom of expression as a fundamental right in our society. Thus, the law does not condemn the portrayal of sexual conduct if, taken as a whole, the work has serious social value. However, the constitutional right of freedom of expression does not extend to a work which depicts 'hard core' sexual conduct, such as the examples given above, when the work, taken as a whole, lacks serious literary, artistic, political or scientific value. In other words, the First Amendment does not protect what you find to be obscene in accordance with these instructions.

To reiterate, in order to find this third element has been satisfied, you must find, in accordance with present day community standards, that the work, taken as a whole, appeals to the prurient interests; that the work, taken as a whole, depicts or describes, in a patently offensive way, sexual conduct; and that the work, taken as a whole, lacks serious literary, artistic political or scientific value.

In order to establish guilt of the crime charged in (Count 2 of) the indictment, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant knowingly brought into the United States the materials in question.

Second, that the defendant knew, at the time of such use, the general contents, character and nature of the material which was marked.

Third, that the material charged in the indictment was "obscene" as I have previously defined.

The first element the government must prove beyond a reasonable doubt is that the defendant knowingly brought into the United States the materials in question.

The government need not prove that the defendant personally brought the materials in question into the United States. It is sufficient to satisfy this element if you find that he caused the materials to be transported into the United States and that they would travel in interstate commerce.

Interstate commerce means simply the transportation of materials between two states.

The second element which the government must prove beyond a reasonable doubt is that the defendant knew, at the time he caused the material in question to be brought into the United States the general contents, character and nature of the material.

In this regard, it is not necessary for the govenment to prove that the defendant knew the offending materials to be legally obscene, or believed them to be, in fact, obscene. It is sufficient to satisfy this element if you find that the defendant was aware of the general contents, character and nature of the materials carried in interstate commerce.

Respectfully submitted,

JOSEPH E. DIGENOVA
United States Attorney

By:

RONALD DIXON
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Government Requested Jury Instructions has been mailed postage prepaid to David Povich, Esq. and Richard Hoffman, Esq., Williams & Connolly, 839 17th Street, N.W., Washington, D.C.  20006, on this  11  day of June, 1986.

_____
RONALD DIXON
Assistant United States Attorney
Judiciary Center, 5th Floor
555 4th Street, N.W.
Washington, D.C.  20001

AO 89 (Rev. 10/82)

**SUBPOENA**

| **United States District Court** | **DISTRICT** District of Columbia |
|---|---|

| | **DOCKET NO.** 85-033 |
|---|---|
| United States of America | **TYPE OF CASE**  ☐ CIVIL   ☒ CRIMINAL |
| v. | **SUBPOENA FOR** |
| George A. Nader | ☒ PERSON   ☐ DOCUMENT(S) or OBJECT(S) |

**TO:**   Gwynneth M. Moolenaar

YOU ARE HEREBY COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above-entitled case.

| **PLACE** | **COURTROOM** Honorable John Garrett Penn |
|---|---|
| United States District Court 3rd Street and Constitution Avenue Washington, D.C. | **DATE AND TIME** July 22, 1986 10:00 a.m. |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s): [1]

☐ See additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| **U.S. MAGISTRATE(2) OR CLERK OF COURT**  JAMES F. DAVEY | **DATE** |
|---|---|
| **(BY) DEPUTY CLERK**  _Melinda L. Pugh_ | |

This subpoena is issued upon application of the:

☐ Plaintiff   ☒ Defendant   ☐ U.S. Attorney

**ATTORNEY'S NAME AND ADDRESS**
Richard S. Hoffman
Williams & Connolly
839 17th Street, NW
Washington, D.C. 20006

(1) If not applicable, enter "none."
(2) A subpoena shall be issued by a magistrate in a proceeding before him, but need not be under the seal of the court. (Rule 17(a), Federal Rules of Criminal Procedure.)

## RETURN OF SERVICE[3]

| RECEIVED BY SERVER | DATE 7/3/86 | PLACE 839 17th Street, NW, Washington, DC |
|---|---|---|
| SERVED | DATE 7/3/86 | PLACE 1101 14th Street, NW, Washington, DC |

| SERVED ON (NAME) | FEES AND MILEAGE TENDERED TO WITNESS[4] |
|---|---|
| Gwynneth M. Moolenaar, Esq. | ☒ YES   ☐ NO   AMOUNT $ 30.00/XX |

| SERVED BY | TITLE |
|---|---|
| WILLIAM TOLER | STAFF, WILLIAM & CONNALLY |

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| — | — | — |

### DECLARATION OF SERVER[4]

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on July 3, 1986
*Date*

William J. Toler
*Signature of Server*

839 17th St NW
*Address of Server*

ADDITIONAL INFORMATION

(3) As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(4) "Fees and mileage need not be tendered to the deponent upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(B) Federal Rules of Criminal Procedure)".

AO 89 (Rev. 10/82)

## SUBPOENA

| # United States District Court | DISTRICT   District of Columbia |
|---|---|
| | DOCKET NO.   85-033 |
| United States of America | TYPE OF CASE   ☐ CIVIL   ☒ CRIMINAL |
| George A. Nader | SUBPOENA FOR   ☒ PERSON   ☐ DOCUMENT(S) or OBJECT(S) |

TO:    Gwynneth M. Moolenaar

**YOU ARE HEREBY COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above-entitled case.

| PLACE | COURTROOM |
|---|---|
| United States District Court 3rd Street and Constitution Avenue Washington, D.C. | Honorable John Garrett Penn |
| | DATE AND TIME   July 22, 1986   10:00 a.m. |

**YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s): [1]

☐ *See additional information on reverse*

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| U.S. MAGISTRATE(2) OR CLERK OF COURT | DATE |
|---|---|
| JAMES F. DAVEY | |
| (BY) DEPUTY CLERK | |
| *Melinda L. Birch* | |

This subpoena is issued upon application of the:

☐ Plaintiff    ☒ Defendant    ☐ U.S. Attorney

| ATTORNEY'S NAME AND ADDRESS |
|---|
| Richard S. Hoffman Williams & Connolly 839 17th Street, NW Washington, D.C. 20006 |

(1) If not applicable, enter "none."
(2) A subpoena shall be issued by a magistrate in a proceeding before him, but need not be under the seal of the court. (Rule 17(a), Federal Rules of Criminal Procedure.)

| RETURN OF SERVICE(3) | | | |
|---|---|---|---|
| RECEIVED BY SERVER | DATE  7/3/86 | PLACE  839 17th Street, NW, Washington, DC | |
| SERVED | DATE  7/3/86 | PLACE  1101 14th Street, NW, Washington, DC | |

| SERVED ON (NAME) | FEES AND MILEAGE TENDERED TO WITNESS(4) |
|---|---|
| Gwynneth M. Moolenaar, Esq. | ☒ YES    ☐ NO    AMOUNT $ 30.00/xx |

| SERVED BY | TITLE |
|---|---|
| WILLIAM TOLER | STAFF, WILLIAM & CONNALLY |

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL — | SERVICES — | TOTAL — |

### DECLARATION OF SERVER(4)

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on  July 3, 1986
_Date_

William J. Toler
_Signature of Server_

839 17th St NW
_Address of Server_

ADDITIONAL INFORMATION

(3) As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(4) "Fees and mileage need not be tendered to the deponent upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

AO 89 (Rev. 10/82)

**SUBPOENA**

| 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔆𝔬𝔲𝔯𝔱 | DISTRICT   District of Columbia |
|---|---|

| | DOCKET NO.   85-033 |
|---|---|
| United States of America<br>v.<br>George A. Nader | TYPE OF CASE<br>☐ CIVIL        ☒ CRIMINAL |
| | SUBPOENA FOR<br>☒ PERSON        ☐ DOCUMENT(S) or OBJECT(S) |

TO:    Gwynneth M. Moolenaar

        YOU ARE HEREBY COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above-entitled case.

| PLACE<br><br>United States District Court<br>3rd Street and Constitution Avenue<br>Washington, D.C. | COURTROOM<br>Honorable John Garrett Penn |
|---|---|
| | DATE AND TIME<br>July 22, 1986<br>10:00 a.m. |

        YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s): [1]

☐ See additional information on reverse

        This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| U.S. MAGISTRATE(2) OR CLERK OF COURT<br>JAMES F. DAVEY | DATE |
|---|---|
| (BY) DEPUTY CLERK<br>*Melinda L. Pugh* | |
| This subpoena is issued upon application of the:<br>☐ Plaintiff    ☒ Defendant    ☐ U.S. Attorney | ATTORNEY'S NAME AND ADDRESS<br>Richard S. Hoffman<br>Williams & Connolly<br>839 17th Street, NW<br>Washington, D.C. 20006 |

(1) If not applicable, enter "none."
(2) A subpoena shall be issued by a magistrate in a proceeding before him, but need not be under the seal of the court. (Rule 17(a), Federal Rules of Criminal Procedure.)

| RETURN OF SERVICE[3] | | |
|---|---|---|
| **RECEIVED BY SERVER** | DATE 7/3/86 | PLACE 839 17th Street, NW, Washington, DC |
| **SERVED** | DATE 7/3/86 | PLACE 1101 14th Street, NW, Washington, DC |

| SERVED ON (NAME) | FEES AND MILEAGE TENDERED TO WITNESS[4] |
|---|---|
| Gwynneth M. Moolenaar, Esq. | ☒ YES   ☐ NO   AMOUNT $ 30.00/xx |
| SERVED BY WILLIAM TOLER | TITLE STAFF, WILLIAM & CONNALLY |

**STATEMENT OF SERVICE FEES**

| TRAVEL — | SERVICES — | TOTAL — |
|---|---|---|

**DECLARATION OF SERVER[4]**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ___July 3, 1986___
                    Date

_William T. Toler_
Signature of Server

839 17th St NW
Address of Server

ADDITIONAL INFORMATION

(3) As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(4) "Fees and mileage need not be tendered to the deponent upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 85-33 |
| v. | : | JUDGE JOHN G. PENN |
| GEORGE A. NADER | : |  |

**FILED**

**JUL 1 4 1986**

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

## GOVERNMENT MOTION FOR CONTINUANCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that the trial of this case, presently set for July 22, 1986, be continued. As grounds for this request the United States now says:

1. The United States has learned that an essential witness will not be available for trial on July 22, 1986.

2. The defendant, Mr. George Nader, has waived his right to a speedy trial, therefore, the granting of this continuance will not infringe upon that right.

3. On July 11, 1986, counsel for the United States spoke with counsel for Mr. Nader who stated they had no objection to a continuance.

4. Mr. Nader is free in the communtiy on his personal promise to return to Court.

5. The witness, Postal Inspector Robert Northrup, will be out of town and away from the area as of July 21, 1986. He expects to return on July 28.



6.   Inspector Northrup represents that these vacations plans were made in advance but without his knowledge.

7.   The Government would respectfully request that the trial date currently set in the instant case be converted to a status hearing at which the parties could select a new trial date.

8.   This request for a continuance is made in good faith and not to gain any advantage over Mr. Nader.

WHEREFORE, the United States respectfully requests that the trial of the instant case be continued.

Respectfully submitted,

JOSEPH E. DIGENOVA
United States Attorney

BY:

RONALD DIXON
Assistant United States Attorney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was mailed postage prepaid to the attorneys for the defendant, David Povich and Richard S. Hoffman, 839 Seventeeth Street, N.W., Washington, D.C. 20006, this ___14___ day of July, 1986.

RONALD DIXON
Assistant United States
Judiciary Center, Room 5154
555 Fourth Street, N.W.
Washington, D.C.  20001
(202) 272-9078

FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUL 15 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

United States of America          )
                                  )
                                  )
          v.                      )     Criminal No. 8500033
                                  )     Judge John Garrett Penn
                                  )
George A. Nader                   )
_____ )

SUPPLEMENTAL PROPOSED JURY INSTRUCTION

          Defendant respectfully requests that the Court include
the attached additional proposed jury instruction.

                              Respectfully submitted,

                              WILLIAMS & CONNOLLY

                              By: _____
                                  David Povich
                                  Richard S. Hoffman

                                  839 17th Street, N.W.
                                  Washington, D.C.  20006
                                  (202) 331-5000

Dated:  July 15, 1986

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000



DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 9

Even though the material defendant is charged with mailing and importing is obscene, and the defendant has so agreed, I instruct you that it is not a crime for a person to have this material in his or her home for their personal possession.

Stanley v. Georgia, 394 U.S. 557 (1969).

Granted _____
Denied _____

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006
———
AREA CODE 202
331-5000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing
Supplemental Proposed Jury Instruction was mailed by first-class
mail, postage prepaid, on July 15, 1986 to Ronald Dixon,
Assistant United States Attorney, 555 4th Street, N.W.,
Washington, D.C.  20001.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

FILED

JUL 22 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,       )
                                )
          v.                    )    Criminal No. 85-00033
                                )    Judge John Garrett Penn
GEORGE A. NADER,                )
                                )
          Defendant.            )
_____)

## MOTION IN LIMINE REGARDING USE OF THE SEIZED MATERIAL

Defendant, George A. Nader, by and through his undersigned counsel, hereby moves this Court pursuant to Rule 403 of the Federal Rules of Evidence for an order limiting, in the manner set forth below, the government's use of the magazines and film contained in the envelope that is the subject of this prosecution.

The grounds for this motion are:

1.    The defendant has offered to stipulate, and will concede at trial, that the envelope contains obscene material involving minors committing sexual acts.

2.    The government has refused to accept this stipulation and intends to display this material notwithstanding that obscenity will not be a factual issue.

3.    The material itself is so patently offensive that there is a substantial risk that the jury may convict the defendant based upon emotion for being the recipient of such



LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

JUL 22 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      )
                               )
              v.               )      Criminal No. 85-00033
                               )      Judge John Garrett Penn
GEORGE A. NADER,               )
                               )
              Defendant.       )
_____)

MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION IN LIMINE
REGARDING USE OF THE MATERIALS
IN THE CONTROLLED DELIVERY PACKAGE

The material contained in the envelope that forms the
basis for this indictment consists of six magazines, a film, a
film box cover and two loose photographs.  Defendant has offered
to stipulate, and will concede at trial even without a
stipulation, that material in the envelope is legally obscene.
The government has refused to accept such a stipulation unless
defendant will also agree that the government may display the
material in whatever manner it wishes to the jury.[1/]  We submit
that unrestricted display of the obscene publications contained
in the envelope amounts to the needless presentation of
cumulative evidence on an uncontested issue that will seriously
prejudice the defendant.  Accordingly, defendant offers the
alternative that the materials be admitted in a sealed condition

_____

[1/]    The government requested that defendant stipulate the
        magazines include depiction of children under the age of
        majority.  Defendant has agreed to so stipulate.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

as a method of fully advising the jury of the nature of the
material involved in this case while diminishing the risk that
defendant will be convicted merely because the jury finds the
material offensive, without regard to the issues of mailing and
bringing the material into the U.S. that are the proper focus of
this trial.

ARGUMENT

Although it is generally the rule that the defendant
cannot force the government to accept a stipulation, United
States v. Sampol, 636 F.2d 621, 679 (D.C. Cir. 1980); United
States v. Cockerham, 476 F.2d 542, 545 (D.C. Cir. 1973), neither
can the government by refusing to accept a stipulation on an
uncontested issue thereby guarantee that it can present whatever
evidence it wants on the subject.  United States v. Sampol, 636
F.2d at 680; United States v. Mohel, 604 F.2d 748, 752-54 (2d
Cir. 1979); United States v. Grassi, 602 F.2d 1192, 1197 (5th
Cir. 1979), vacated on other grounds, 448 U.S. 902 (1980), aff'd
on remand, 626 F.2d 444 (5th Cir. 1980), cert. denied, 450 U.S.
956 (1981).

The admissibility of evidence is always subject to the
limitations of Fed. R. Evid. 403, permitting the court to exclude
even relevant evidence where its probative value is outweighed by
its unfair prejudicial effect, confusion of issues, undue delay
or needless presentation of cumulative evidence.  The proper
application of Rule 403 where the defendant has offered to

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

stipulate to an issue was stated in <u>United States</u> v. <u>Grassi</u>, 602
F.2d at 1197:

> In formulating a rule for the application of
> Rule 403 in instances in which a stipulation
> is offered, we reject any per se approach.
> See Notes of Advisory Committee on Proposed
> Federal Rules of Evidence, 28 U.S.C.A. Rule
> 404 at 109.  Rather, as is the case with other
> applications of Rule 403, determining the
> weight to be given an offer to stipulate in
> the balancing process is committed to the
> sound discretion of the trial court, tempered
> by the particular facts presented. . . .  This
> discretion should be exercised to so balance
> probity against prejudice that the trial is
> fundamentally fair.  In achieving this
> balance, the court has the power to require
> the government to accept a tendered
> stipulation in whole or in part as well as to
> permit it to reject the offer to stipulate in
> its entirety.

Essentially the same test has been stated in this

Circuit.  In <u>Cockerham</u>, the appellate court stated that although

the decision to admit the government's evidence on a stipulated

issue was not reversible error, the district court had the power

to exclude or limit the evidence and "the advisability of

permitting certain testimony may be in doubt."  476 F.2d at

545.  Similarly, in <u>United States</u> v. <u>Sampol</u>, the court stated

that the district judge "wisely limited the number of witnesses

and type of proof that would be admitted" to prove an uncontested

issue.  636 F.2d at 680.  In <u>Sampol</u>, defendants offered to

stipulate that the murder victims were killed by a car bomb

explosion.  The court permitted the government to put on evidence

of eyewitnesses to the explosion and medical examiners who

performed autopsies on the victims.  This evidence was necessary

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

for the government to prove deliberation and premeditation --
issues <u>not</u> reached by defendant's proposed stipulation.
Nevertheless, the district court severely limited the number of
witnesses (only one) and use of photographs (only four of ten,
and excluding photos of the victims).  <u>Id</u>.

This court should restrict the government's use of the
materials contained in the envelope.  Defendant proposes that the
magazines be presented to the jury in a sealed (taped)
condition.  The covers and titles of the magazines themselves
reveal the nature of the contents and the pictures are
representative of what is contained inside.  There is no doubt
that receiving the magazines as evidence and an instruction that
the materials are obscene will provide the jury with a complete
understanding of what is at issue in this case.

Unrestricted display and access of the seized material
threatens the defendant with substantial <u>unfair</u> prejudice.
Unlike the murder scene in <u>Sampol</u>, the pictures in this case are
not relevant to any issue <u>but</u> the obscenity question.  The
contested issue in this case is whether it was the defendant who
mailed and/or brought the material into the United States.
However, the material seized is so offensive that there is a
substantial risk that a jury might convict defendant for merely
being the addressee of the material or because the material was
seized from his home, even though the possession of obscene
material in the home is not an offense under the statute and is
protected by the Constitution.  <u>Stanley</u> v. <u>Georgia</u>, 394 U.S. 557

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 4 -

(1969).  This is precisely the type of "unfair prejudice" Rule 403 seeks to prevent -- "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one."  United States v. Grassi, 602 F.2d at 1197, quoting Notes of the Advisory Committee on Proposed Federal Rules of Evidence, 28 U.S.C.A. Rule 403 at 102. [2/]

For that reason courts have been especially reluctant to permit the government to introduce evidence on an uncontested issue that also tends to suggest an improper basis for decision.  In United States v. Mohel, 604 F.2d 748, 754 (2d Cir. 1979), the Second Circuit held it was reversible error to admit other crimes evidence where the defendant offered to stipulate on the issue of intent:  "Given the dangerous prejudicial value of other-crime evidence, we cannot agree that the Government, by evading an unequivocal offer to stipulate, may create an issue as to intent and knowledge for the purpose of admitting the objected to evidence."  Accord United States v. Figueroa, 618 F.2d 934, 942-43 (2d Cir. 1980) (reversible error not to consider

---

[2/]   Moreover, since there is only one count each of mailing and importing -- applying to the same envelope -- the presentation of six magazines and a film is overkill, having no additional probative value and designed to inflame the jury for the maximum prejudicial effect.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

prejudicial effect of admitting proof on uncontested issue).[3/] So, too, here, unfettered display and testimony regarding the obscene material is not relevant to any contested issue; its sole purpose is to so offend the jury that they punish defendant merely for his association with it, without regard to the elements of the offense.

By properly limiting the government's use of the seized material -- permitting the magazines themselves to be admitted into evidence and displayed to the jury in a taped condition, the Court can insure the government's desire to present its case while at the same time taking steps to protect the defendant from a verdict based upon emotion rather than the legal and factual questions at issue in this trial.

Respectfully submitted,

WILLIAMS & CONNOLLY

By: _____
David Povich
Richard S. Hoffman

839 Seventeenth Street, N.W.
Washington, D.C.  20006
(202) 331-5000

Dated:  July 22, 1986

---

[3/]   An issue becomes uncontested where, as here, the defendant has unequivocally offered to stipulate and effectively removed the issue from the trial. United States v. Mohel, 604 F.2d at 754.  Indeed, the defendant in this case has submitted jury instructions that remove the obscenity issue from the jury's consideration by instructing them that obscenity has been established.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,       )
                                )
            v.                  )       Criminal No. 85-00033
                                )       Judge John Garrett Penn
GEORGE A. NADER,                )
                                )
            Defendant.          )
_____ )

## PROPOSED STIPULATION

     Defendant, George A. Nader, by and through counsel, and the United States, by and through the Assistant United States Attorney, hereby stipulate that material contained in the envelope marked as exhibit ___, that forms the basis for this indictment, contains pictures of minors committing sexual acts and is obscene.

Dated: July ___, 1986

_____
David Povich
Attorney for Defendant
  George A. Nader

Dated: July ___, 1986

_____
Ronald Dixon
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion in Limine Regarding Use of the Seized Material and Memorandum in Support was delivered by hand on July 22, 1986 to Ronald Dixon, Assistant United States Attorney, 555 4th Street, N.W., Washington, D.C. 20001.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

UNITED STATES OF AMERICA  :  CRIMINAL NO. 85-33

v.  :  JUDGE JOHN G. PENN

GEORGE NADER  :

JUL 24 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

## OPPOSITION TO MOTION IN LIMINE

The United States of America, by and through its attorney,
the United States Attorney for the District of Columbia, submits
the following memorandum in opposition to the defendant's motion
in limine.

1.  The defendant, Mr. George Nader, moves this Court to
force the Government to enter a stipulation or in the alternative
to limit the evidence it can produce.  We disagree.

2.  Simply stated, the United States, per se, cannot be
forced to accept a stipulation of fact advanced by a defendant,
United States v. Cockerham, 476 F.2d 542, 545 (D.C. Cir. 1973)
(Government can ignore stipulation and present evidence to rebut
defense theory and show that person charged is guilty); however,
the United States cannot take unfair advantage of a defendant
and present relevant but patently prejudicial evidence, Fed. R.
Evid. 403.

3.  In our Circuit Cockerham, supra, is quite clear and we
submit allows the United States to forego a stipulation and pro-
ceed with its evidence.  The Government can strike hard, fair,
blows with its evidence and avoid tactical maneuvers by the de-
fense that are calculated to dilute the force of its proof.
United States v. Sampol, 636 F.2d 621, 679 (D.C. Cir. 1980).

-2-

4.  Mr. Nader relies upon United States v. Mohel, 604 F.2d 748, 752-54 (2nd Cir. 1979) (factually dissimilar from the case at bar because it involves prejudicial other crimes evidence which was used to show intent and knowledge) to support his implication that the Government should be forced to accept his stipulation.  However, in Mohel the defendant was attempting, by stipulation, to limit the Government to the main offense and keep out evidence that corrobrated that offense and its sole witness.  Here, the only issues are whether Mr. Nader caused material that was obscene to be imported into the United States.

The controlled delivery and its contents as well as Mr. Nader's statements about the controlled delivery clearly show he ordered the items, he expected then to arrive and he knew what they contained.

5.  In United States v. Grassi, 602 F.2d 1192, (5th Cir. 1979) the Court of Appeals lays out an excellent analysis of the balancing process of keeping to a minimum unfair prejudice by having parties stipulate.  That Court went on to find, in an obscenity case quite similar to the case at bar, the prosecution has a duty to prove obscenity and can do so even when the defendant moves to stipulate to that fact.  Indeed, in order for Mr. Nader to prevail he must show unfair prejudice from the books and magazines.  What Mr. Nader has succeded in showing is is that the Governments evidence is detrimental to his case.

-3-

Mr. Nader intends to claim that since the controlled delivery was in the hallway of this <u>landlord's home</u> its possession is lawful because it was for his personal consumption. However, he ignores the fact that the Government must prove he ordered it, and caused it to be imported.

We submit that the Government can reject Mr. Nader's stipulation in whole or in part and submit to the jury, for its review, unsealed, the evidence in this case. Mr. Nader cannot have it both ways.

WHEREFORE, the United States submits that the defendant's motion should be denied.

Respectfully,

JOSEPH E. DIGENOVA
UNITED STATES ATTORNEY

RONALD DIXON
ASSISTANT UNITED STATES ATTORNEY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a copy of the foregoing motion has been mailed to counsels for the defendant, David Povich, Esquire, and Richard Hoffman, Esquire, Williams and Connolly, 839 17th Street, N.W., Washington, D.C. 20006, on this 24th day of July, 1986.

RONALD DIXON
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA            :    Criminal Case No. 85-33

           v.                    :    JUDGE JOHN G. PENN

GEORGE A. NADER                     :

**FILED**

JUL 24 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

### OPPOSITION TO MOTION TO STRIKE
### <u>PREJUDICIAL SURPLUSAGE IN INDICTMENT</u>

The United States of America, by its Attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant's motion to Strike Prejudicial Surplusage in the Indictment and states as a basis for its opposition the following:

1. Between on or about March 27, 1984, and on or about April 12, 1984, the defendant George A. Nader, caused obscene material to be imported into the United States.

2. That obscene material depicted children under the age of 18 in various states of undress and performing sexual acts.

3. The two count indictment returned against Mr. Nader contains the phrase, "Commonly Known as Child Pronography," which is used to further explicate his alleged violation of 18 U.S.C. 1461 and 1462. An information or indictment is requred to perform two primary functions: it should sufficiently apprise the accused of the charge



- 2 -

against him so that he might properly prepare his defense, and it should spell out the offense clearly enough to enable him to plead the judgment, whether conviction or acquittal, as a bar in the event of a subsequent prosecution for the same crime.  Russell v. United States, 369 U.S. 749 (1962); Powers v. United States, 75 U.S. App. D.C. 371, 128 F.2d 300 (1942).  Clearly, the indictment in its present form, informs Mr. Nader of the charges against him. The phrase in question does not blur any other issue presented but instead goes far in clarifying the allegations.

4.  If the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided it is legally relevant).  United States v. Climatempt, Inc., 482 F. Supp. 376, 391 (N.D. Ill. 1979).

5.  A motion to strike surplusage from an indictment should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflamatory and prejudicial language.  Darnow v. United States, 307 F.2d 545, 558 (8th Cir. 1962).

- 3 -

WHEREFORE, the United States submits that the defendant's motion should be denied.

Respectfully submitted,

JOSEPH E. diGENOVA
UNITED STATES ATTORNEY

By: _____
RONALD DIXON
ASSISTANT UNITED STATES ATTORNEY

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been mailed with postage prepaid to counsel for defendant, David Povich, Esquire and Richard Hoffman, Esquire, Williams and Connolly, 839 - 17th Street, N.W., Washington, D.C., this 2\_\_ day of July, 1986.

_____
RONALD DIXON
ASSISTANT UNITED STATES ATTORNEY



FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUL 25 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    )
                             )
         v.                  )    Criminal No. 85-00033
                             )    Judge John Garrett Penn
GEORGE A. NADER,             )
                             )
              Defendant.     )
_____)

### DEFENDANT'S PROPOSED VOIR DIRE

Defendant, George A. Nader, respectfully requests that the Court ask the voir dire questions below to prospective jurors on an individual basis out of the presence of other prospective jurors.  Counsel also request that they be permitted to ask follow-up questions to individual prospective jurors subject to the Court's discretion.

1.   Are you married?  How many children do you have?  Grandchildren?  What are their ages?

2.   What schools or colleges did you attend or are you attending?  What degree or diplomas have you received?  What was your college major or specialization?

3.   What is your occupation?  Where are you employed?  What is your title?  What is your spouse's occupation, place of business, and title?

4.   Are you in any way in the business of publishing, editing, manufacturing, or selling books, magazines, or

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000



newspapers?  Is any member of your family or close friend in such a business or do they have such an occupation?

5.   Are you, or any member of your family or close friend, employed by or connected with the police department or any other law enforcement agency?  Are you, or any member of your family or close friend, employed by a government or government agency?  If so, which ones?  Are you or any such friends or relatives employed by the Post Office Department or the Customs Service?

6.   Are you or have you been a member of an organization whose purpose is to encourage more vigorous enforcement of the obscenity laws, or to eliminate objectionable books, magazines, motion pictures, or television programs?

7.   Are you a member of a church or synagogue?  How often do you attend services?  How often do you attend meetings of other groups related in some way to your church or synagogue?

8.   Are you a member of a religious faith whose doctrines prohibit the seeing of certain movies or the reading of certain books depending on their treatment of sex?

9.   What newspapers or magazines do you have subscriptions to?  How many books per year would you say you read?  Can you remember the last book you read?

10.   Do you feel that there is too much sex in movies today?  In books and magazines?  On television?

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

11.   Are you or would you be offended by portrayal of a sexual act in a motion picture?  On the stage?  In a book or magazine?

12.   Are you offended by nudity in movies?  In magazines?

13.   Does the idea of sexual acts other than sexual intercourse offend you?

14.   Does the idea of oral sex offend you?

15.   Does the idea of homosexuality offend you?

16.   Does the idea of masturbation offend you?

17.   Do you feel you could see a motion picture, or a magazine, which contained depictions of those things which offended you, and still look at it with an open mind?  Do you feel that you could accept the idea that it is not illegal to possess something which offends and disgusts you personally?  Are you willing to base your judgment on the evidence you see and hear, and the instructions from the court, without regard for your personal tastes or opinions regarding the materials you will see?

18.   Do you believe that adults should be able to see or read whatever they want, regardless of sexual content?

19.   Do you have a personal opinion of people who receive or read books or movies about sex?  What is that opinion?

20.   Obscenity cases and obscenity law are frequently in the news.  Have you read any of these news stories?  Have you read about or are you familiar with the recently published

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 3 -

Attorney General's Commission on Pornography?  What are your views regarding the Commission's report or what you have heard about it?

21.  In the course of this trial, you are going to be required to see sexually explicit magazines which are part of this case.  On account of this, or the nature of this case, would you rather not act as a juror in this case?  Is there any other reason any of you would prefer not to be a juror in this case?

22.  Do you believe that consenting adults should be able to participate in whatever sexual acts they wish?

23.  In your opinion, should homosexuality be legal or illegal?

24.  Do you feel that laws should promote the moral codes of our society?

25.  Do you consider your views about sex to be about the same as most people's, more conservative, or more liberal?

26.  The Supreme Court has ruled that the Constitution permits people in this country to read whatever material they want in the privacy of their own home, even obscene material. Can you accept that instruction and make a determination in this case based on the facts and the legal instructions that I will give you.

27.  It is possible that the defendant may not testify in this case.  As a juror you are not to draw any inferences or conclusions if the defendant does not testify.  Can you abide by

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

this rule, or do you feel you will hold it against the defendant
if he does not testify?

Respectfully submitted,

WILLIAMS & CONNOLLY

By: _____
David Povich
Richard S. Hoffman

839 Seventeenth Street, N.W.
Washington, D.C.  20006
(202) 331-5000

Dated:  July 25, 1986

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 5 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Proposed Voir Dire was delivered by hand on July 25, 1986, to Ronald Dixon, Assistant United States Attorney, 555 4th Street, N.W., Washington, D.C.  20001.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 6 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

JUL 28 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA       )
                       v.      )
GEORGE A. NADER                )      Criminal No. 85-33
                               )      Judge John G. Penn
                               )

## GOVERNMENT'S PROPOSED VOIR DIRE QUESTIONS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following as its proposed voir dire questions:

1.  Do any members of the prospective jury panel believe you could not return a fair and impartial verdict in a case involving what is commonly known as pornography?

2.  Do any members of the prospective jury panel believe that you could not return a fair and impartial verdict in a case involving pornography that depicts children under the age of 18 having sex (oral sex and anal)?

3.  Do any members of the prospective jury panel believe that a person who possesses child pornography has a right to cause such pornography to be brought into the United States for his personal use?

4.  Do any members of the prospective jury panel believe that the law goes to far in regulating pornography?

COURTRAN

5.  Do any members of the prospective jury panel belong to groups that advocate the banning of all pornography?

6.  Do any members of the prospective jury panel belong to groups that advocate the repeal of all pornography laws?

7.  Would any member of the prospective jury panel feel uncomfortable if you as a member of this jury were called upon to view any evidence to determine if it  is  pornographic?

                        Respectfully submitted,

                        JOSEPH E. DIGENOVA
                        United States Attorney

BY:     _____

                        Ronald Dixon
                        Assistant United States Attorney
                        500 Indiana Avenue N.W.
                        Washington D.C. 20001


CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing was mailed postage prepaid to the attorneys for the defendant, David Povich and Richard S. Hoffman, 839 Seventeeth Street, N.W. Washington D.C. 20006, this  28  day of July, 1986.

                        Ronald Dixon
                        Assistant United States Attorney
                        500 Indiana Avenue N.W.
                        Washington D.C. 20001
                        202 272-8046

PRAECIPE

# United States District Court
# for the District of Columbia

the _____28th_____ day of _____July_____ 19__86__

FILED

JUL 28 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

United States of America

vs.

George A. Nader

Civil/Criminal
Action No. ___85-00033___

The Clerk of said Court will ____withdraw the appearance of Gwynneth M. Moolenaar as counsel for the defendant.  Ms. Moolenaar may be testifying as a witness and pursuant to DR5-102 files this notice of withdrawal.  Substitute counsel, David Povich and Richard S. Hoffman, Williams & Connolly, have already entered their appearance for the defendant.

COURTROOM

Address __1101 Fourteenth Street__

Phone No. __289-7777__

Attorney for __George Nader__

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

JUL 28 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    )
                             )
          v.                 )    Criminal No. 85-00033
                             )    Judge John Garrett Penn
GEORGE A. NADER,             )
                             )
          Defendant.         )
_____)

## MOTION TO EXCLUDE EVIDENCE

Defendant, George A. Nader, by and through his
undersigned counsel, hereby moves this Court pursuant to Rules
402, 403 and 404 of the Federal Rules of Evidence for an order
excluding any and all statements of defendant concerning
ownership of magazines and other materials unlawfully seized from
defendant's residence by the government, and previously
suppressed by this Court.

The grounds for this motion are:

1.   Any statements by defendant concerning his
ownership or ordering of the magazines and other materials
unlawfully seized are not relevant to this case and do not serve
to show motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident on the
part of defendant.   Thus, any such statements are not admissible
under Fed. R. Evid. 402 or 404.

2.   Even if found to be sufficiently relevant to this
case, the unfair prejudice and a confusion of issues that would
result from admitting such statements will substantially outweigh

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

any probative value the statements may have.  Therefore the evidence must be excluded under Fed. R. Evid. 403.

In support of this motion, defendant relies on the Federal Rules of Evidence cited above, the memorandum of law attached hereto, and the arguments of counsel and evidence produced at any hearing ordered by the Court.

Respectfully submitted,

WILLIAMS & CONNOLLY

By: _____
David Povich
Richard S. Hoffman

839 Seventeenth Street, N.W.
Washington, D.C.  20006
(202) 331-5000

Dated:  July 11, 1986

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

— 2 —

FILED

JUL 28 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      )
                               )
            v.                 )      Criminal No. 85-00033
                               )      Judge John Garrett Penn
GEORGE A. NADER,               )
                               )
                Defendant.     )
_____)

### MEMORANDUM OF LAW IN SUPPORT
### OF MOTION TO EXCLUDE EVIDENCE

      This memorandum is submitted in support of defendant's motion to exclude from evidence in this trial any statements allegedly made by defendant concerning magazines and other materials that, as the Court has found previously, were unlawfully seized from defendant's residence by government agents.

### FACTS

      Defendant submits that the facts necessary to determine that the alleged statements must be excluded are not in dispute.

      These statements are claimed to have been made at an interview with Customs agents where defendant was confronted with all the materials previously seized from his residence. In a previous order, this Court determined that the search that resulted in the seizure of these materials was in violation of defendant's fourth amendment rights and thus that the evidence seized during this search, except for the six items described with particularity in the search warrant, was to be suppressed.

LAW OFFICES
**WILLIAMS & CONNOLLY**
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

During the interview with Customs agents, statements were allegedly elicited from defendant concerning both the contents of the envelope that remains admissible in this trial, and how he came to possess the materials which the Court has suppressed.  It is this latter group of statements which the defendant now seeks to have excluded from this trial.

1.    Defendant's Statements Concerning
      Materials Unlawfully Seized Are
      Not Relevant in this Case.

Pursuant to Fed. R. Evid. 402, evidence that is not relevant is not admissible.  The evidence the prosecution will seek to introduce here, statements allegedly made by defendant concerning magazines illegally seized from his residence by the government that are not part of the indictment, have absolutely no bearing on the specific issues in this case: whether the defendant knowingly used the mails for the mailing of non-mailable matter, Indictment at 1 (18 U.S.C. § 1461), or whether he knowingly brought into the United States certain non-importable matter.  Id. at 2 (18 U.S.C. § 1462).  In short, whether the defendant stated that he owned, possessed, or ordered these other materials does not tend to show that it is more probable or less probable that defendant knowingly used the mails or knowingly brought into the United States the envelope that is the subject of this prosecution.

It is expected that the prosecution will attempt to introduce the alleged statements under authority of Fed. R. Evid.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 2 -

404(b).  That rule provides that "[e]vidence of other crimes,
wrongs, or acts . . . may . . . be admissible for . . .
purposes[] such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or
accident."  Fed. R. Evid. 404(b).  As such, Rule 404(b) is a
"specialized rule of relevancy."  <u>United States</u> v. <u>Moore</u>, 732
F.2d 983, 987 (D.C. Cir. 1984).  Here it is presumed that the
government will attempt to show that these statements prove that
the defendant knowingly used the mails to obtain the materials
involved here or that he knowingly brought them into this
country.

It is well established, however, that when a prior bad
act is relied upon "to prove intent or knowledge, similarity
between the two events must be shown to establish the threshold
requirement of relevance."  <u>United States</u> v. <u>Foskey</u>, 636 F.2d
517, 524 (D.C. Cir. 1980) (citation omitted); <u>see also</u> <u>United
States</u> v. <u>Gustafson</u>, 728 F.2d 1078, 1083 (8th Cir. 1984), <u>cert.
denied</u>, 105 S.Ct. 380 (1984) ("evidence must relate to wrongdoing
'similar in kind and reasonably close in time to the charge at
trial'") (citation omitted).  Moreover, where the evidence
offered is intended to show defendant's degree of intent, "the
extrinsic offense requires the same intent as the charged
offense."  <u>United States</u> v. <u>Mitchell</u>, 666 F.2d 1385, 1389 (11th
Cir.), <u>cert. denied</u>, 457 U.S. 1124 (1982).  In sum, when
introduced on the issue of defendant's <u>mens rea</u>, other acts of
evidence cannot be considered relevant and is thus inadmissible,

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 3 -

whenever the extrinsic act "is dissimilar from the crime for
which defendant [is] on trial with respect to precisely the
relevant element -- intent." Foskey, 636 F.2d at 524.

In this case, the fact that defendant allegedly admitted
that he owned or ordered various magazines and other materials
illegally seized by the government does not at all establish that
he knowingly used the mails or brought into the U.S. obscene
materials as proscribed by federal law.  As a consequence of the
Court's earlier ruling suppressing the actual materials, all the
government may now attempt to introduce into evidence in this
case are defendant's alleged statements that he owned or ordered
various magazines and other materials.  The prosecution may not,
of course, attempt to describe the materials that elicited these
alleged statements by defendant, because to do so would be to
introduce into this trial the exact evidence which the court has
properly suppressed.  Without doubt, if the fourth amendment
requires the suppression of these materials themselves, then the
prosecution can not attempt to circumvent its mandate by placing
a description of the materials before the jury.[1]  Nor can the
prosecution make a blanket characterization of the materials as
obscene, because defendant does not concede obscenity of the

---

[1]   The statements attributed to the defendant do not include
oral descriptions of the content of the magazines or films,
only that he owned or ordered the material illegally seized
by the government and the manner in which he became familiar
with the availability of such material from Holland.  Thus,
the statements do not provide a means for determining
whether the magazines were obscene.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 4 -

suppressed material and the magazines are not themselves available for the jury to review.[2/]

Thus, the prosecution is reduced to using no more than defendant's statements regarding his ownership or ordering of various undescribed materials. These statements would offer the jury no guidance whatsoever on defendant's knowledge or intent to transport obscene materials or to use the mails to obtain such matter. For this reason, the alleged statements are not the least bit relevant and should not be admitted into evidence. See, e.g., United States v. Chilcote, 724 F.2d 1498, 1501-02 (11th Cir. 1984) (defendant charged with conspiracy to import and distribute cocaine; court excludes defendant's statement that he had once before flown plane to Columbia and back because, without evidence indicating purpose of trip, "it cannot be determined that his intent in making the trip was the same as his intent in committing the offenses involved [here] and, therefore, it cannot be determined that the extrinsic act evidence was relevant to the issue of appellant's intent. Failing this initial hurdle . . .

---

[2/] For the same reasons, the government also must not be permitted to reveal that it seized these materials or that the materials were in the possession of the government when defendant's statements were elicited. If the government were permitted to reveal this information, defendant would be irreparably injured by the innuendo that the materials were obscene or otherwise illegal, thus warranting seizure by the government. Permitting the government to reveal this information would also permit it to benefit directly from its unlawful search and seizure.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 5 -

the evidence was inadmissible under Rule 404(b).), <u>cert. denied</u>, 467 U.S. 1218 (1984).

Exclusion of these alleged statements is also proper because the District of Columbia Circuit has established that "the relevancy of other bad acts is contingent upon whether the other acts actually occurred," <u>United States</u> v. <u>Lavelle</u>, 751 F.2d 1266, 1276 (D.C. Cir. 1985), <u>cert. denied</u>, 106 S.Ct. 62 (1985), and to so demonstrate the government is required to present "clear and convincing proof to support a jury finding that the bad act alleged in fact occurred." <u>Id</u>.  <u>See</u> <u>also</u> <u>Moore</u>, 732 F.2d 983, 988 (D.C. Cir. 1984) (same).  Defendant's alleged statements alone, free of government characterization of the suppressed materials, could never support a verdict that defendant had imported or used the mails to acquire obscene material.  Even if the government were permitted to characterize the material, it is highly unlikely that this standard requiring clear and convincing proof of defendant's other acts could be met by an uncorroborated admission by the defendant to a "bad act."  <u>Bowles</u> v. <u>United States</u>, 439 F.2d 536, 544 n.8 (D.C. Cir. 1970)(Bazelon, dissenting); <u>Scarbeck</u> v. <u>United States</u>, 317 F.2d 546, 565 (D.C. Cir. 1963);  <u>Cf</u>. <u>United States</u> v. <u>Engleman</u>, 648 F.2d 473, 479 (8th Cir. 1981) (proof of defendant's involvement in other bad acts is sufficient because it consists of defendant's admissions "which are corroborated by other evidence").

Finally, before other bad acts evidence may be admitted, it is also necessary to show that such acts have occurred in

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 6 -

essentially the same time period.  See Moore, 732 F.2d at 988;
Gustafson, 728 F.2d at 1083; Foskey, 636 F.2d at 524; James, 555
F.2d at 1000.  Yet there is no indication whatsoever that
defendant came into possession, or especially that he mailed or
imported, the other materials which were the subject of his
purported statements at any time close to the time it is that he
allegedly committed the acts which are the subject of this
prosecution.

        At bottom, admission of the alleged statements of
defendant here, without government embellishment as to the nature
of the suppressed materials, would amount to no more than a
transparent effort to suggest to the jury that defendant may have
been involved in previous episodes of mailing or importing
materials proscribed by federal law.  But it is settled law that
"evidence of other crimes is inadmissible to show criminal
propensity or to demonstrate that the defendant is a bad
person."  United States v. Shelton, 628 F.2d 54, 56 (D.C. Cir.
1980).  See also United States v. James, 555 F.2d 992, 998-99
(D.C. Cir. 1977) (bad act evidence not admissible to "show the
likelihood that, having once fallen into sin, a second slip is
likely").

2.   Prejudicial Effect of the Evidence Far
     Outweighs Any Probative Value It May Have

        Even if the Court determines that the alleged statements
at issue have some relevance to this case, these statements must
still be excluded because their potential for unfair prejudice

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

and considerable confusion of the issues substantially outweighs this marginal probative value.  See Chicago College of Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1346 n.14 (7th Cir. 1983) (evidence on past similar incidents, "[a]lthough not totally irrelevant to this case," was properly excluded under Rule 403).

In this Circuit, it is well established that the "relevance of other-crimes evidence is always to be balanced against its prejudicial effect in the process of determining admissibility." United States v. Rippy, 606 F.2d 1150, 1155 n.35 (D.C. Cir. 1979) (emphasis in original); see also United States v. Lavelle, 751 F.2d 1266, 1278 (D.C. Cir. 1985) (same); United States v. Day, 591 F.2d 861, 877 (D.C. Cir. 1978) (same); United States v. Whetzel, 589 F.2d 707, 712 n.24 (D.C. Cir. 1978) (same).  Moreover, as the court held in United States v. Foskey,

> [r]ules 403 and 404(b) are not obstacles to be cleared at all costs, even by cutting around corners whenever it is possible to do so. These rules were designed to ensure a defendant's fair and just trial based upon the evidence presented, not upon impermissible inferences of criminal predisposition or by confusion of the issues.

636 F.2d at 525.  A court must be especially guarded in its admission of other bad acts evidence because of the "danger that the jury may punish the defendant for the extrinsic offense and not for the charged offense, the danger that the evidence -- though relevant to, for example, intent -- will be used by the jury primarily for the impermissible purpose of inferring guilt

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

from a general defect in character, and the danger that the evidence will influence the jury into reaching an uninformed and irrational verdict." Lavelle, 751 F.2d at 1278. See also Shelton, 628 F.2d at 56 ("juries prove to draw illogical and incorrect inferences" from evidence of other bad acts).

In this case admission of the statements allegedly elicited from defendant concerning the suppressed materials would serve to severely prejudice defendant and greatly confuse the issues in this trial. As discussed supra at 4-5, the prosecution cannot present to the jury the illegally seized material or any subjective characterizations of the materials unlawfully seized. Nevertheless, to the extent the prosecution is permitted to introduce any statements concerning materials other than the envelope specifically at issue here -- whether described or not -- the jury will likely assume the other materials have a pornographic flavor or were otherwise illegal and therefore subject to seizure by the government, and that the prosecution is introducing these statements to demonstrate the extent to which the defendant is a social deviant and should be punished. As a consequence the defendant will be irreparably -- and impermissibly -- prejudiced by his characterization as a "bad person," see Shelton, 628 F.2d at 56, and the jury will be confused as to the basis on which it is to determine whether defendant should be punished. Considering the minimal, if any, probative value of this evidence, it becomes clear that under Fed. R. Evid. 403 the statements regarding material not charged

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

in the indictment should not be admitted in this case.  <u>See</u>
<u>Lavelle</u>, 751 F.2d at 1278 ("[g]enerally, the similarity of other
bad acts evidence to the charged offenses increases the danger
that the jury will confuse the issues necessary to convict the
defendant.").

CONCLUSION

For all the foregoing reasons, defendant respectfully
requests that the defendant's statements concerning the materials
unlawfully seized should be excluded from evidence in this case.

Respectfully submitted,

WILLIAMS & CONNOLLY

By: _____
David Povich
Richard S. Hoffman

839 Seventeenth Street, N.W.
Washington, D.C.  20006
(202) 331-5000

Dated:  July 11, 1986

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion to Exclude Evidence and Memorandum in support were mailed, first-class, postage prepaid this 11th day of July, 1986, to Ronald Dixon, Assistant United States Attorney, 555 4th Street, N.W., Washington, D.C.  20001.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JUL 28 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          )
                                   )
            v.                     )     Criminal No. 85-00033
                                   )     Judge John Garrett Penn
GEORGE A. NADER,                   )
                                   )
            Defendant.             )
_____)

### MOTION TO STRIKE PREJUDICIAL SURPLUSAGE IN INDICTMENT

Defendant, George A. Nader, by and through his undersigned counsel, hereby moves this Court pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure for an order striking from the indictment the phrase "commonly known as child pornography."  This phrase now appears in both Count 1 and Count 2 as an extra-statutory description of the materials that are the subject of this prosecution.

The grounds for this motion are:

1.   The phrase is highly inflammatory and prejudicial.

2.   The phrase is wholly irrelevant, unnecessary and immaterial to charges in the indictment.

In support of this motion, defendant relies on the Federal Rule of Criminal Procedure cited above, the memorandum of law attached hereto, and the arguments of counsel and evidence produced at any hearing ordered by the Court.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000



Respectfully submitted,

WILLIAMS & CONNOLLY

By: _____
    David Povich
    Richard S. Hoffman

    839 Seventeenth Street, N.W.
    Washington, D.C.   20006
    (202) 331-5000

Dated:   July 11, 1986

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

JUL 28 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,       )
                                )
            v.                  )       Criminal No. 85-00033
                                )       Judge John Garrett Penn
GEORGE A. NADER,                )
                                )
            Defendant.          )
_____)

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE PREJUDICIAL SURPLUSAGE IN INDICTMENT

This memorandum is submitted in support of defendant's motion to strike the phrase "commonly known as child pornography" from Count 1 and Count 2 of the Indictment.

### Indictment

The indictment in this case charges that defendant (1) "knowingly did use and caused to be used the mails for the mailing . . . of . . . obscene, lewd, lascivious and filthy magazines, pictures and films, commonly known as 'child pornography,'" and (2) "did knowingly bring and cause to be brought into the United States . . . obscene, lewd, lascivious and filthy magazines, pictures and films, commonly known as 'child pornography.'"

### Argument

Under Rule 7(d) of the Federal Rules of Criminal Procedure, a "court on motion of the defendant may strike surplusage from the indictment or information." According to the

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

notes of the advisory committee, this rule "protect[s] the
defendant against immaterial or irrelevant allegations in an
indictment . . . which may . . . be prejudicial."  Fed. R. Crim.
P. 7, Note of Advisory Committee to Subdivision (d).  See also
United States v. Poore, 594 F.2d 39, 41 (4th Cir. 1979) ("purpose
of Rule 7(d) is to protect a defendant against prejudicial
allegations that are neither relevant nor material to the charges
made in an indictment . . . or not essential to the charge . . .
or unnecessary, or inflammatory").  Courts have held, moreover,
that the "inclusion of clearly unnecessary language in an
indictment that could serve only to inflame the jury, confuse the
issues, and blur the elements necessary for conviction . . .
surely can be prejudicial."  United States v. Bullock, 451 F.2d
584, 888 (5th Cir. 1971); United States v. Climatemp, Inc., 482
F. Supp. 376, 391 (N.D.Ill. 1979)(same), aff'd, 462 U.S. 1134
(1983).

     According to one noted authority, "[p]rosecutors have
been known to assert unnecessary allegations for 'color' or
'background' hoping that they will stimulate the interest of the
jurors.  The proper course is to move to strike the
surplusage . . . ."  1 C. Wright, Federal Practice and Procedure
§ 127 (1982).  Here, it is undeniable that the terminology
"commonly known as child pornography" is unnecessary "color"
designed to inflame and prejudice the jury against defendant.  As
one judge in this district has held, "the use of such colorful
words to describe the allegations in the indictment is improper

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 2 -

where less colorful and more accurate words would suffice . . . .
[T]he Court finds such words to be prejudicial and unnecessarily
loaded." United States v. Hubbard, 474 F. Supp. 64, 83 (D.D.C.
1979).  Use of loaded terms, or even a characterization of the
defendant's acts with a degree of detail that is immaterial to
the crime alleged, may unduly prejudice the defendant if, at the
very inception of the trial and before a word of testimony is
heard, [the words] are read to the jury.

In this case retention of the phrase "commonly known as
child pornography" in the indictment would be severely
prejudicial to defendant.  Because of the intense government and
media attention to obscenity and pornography in recent months,
terms such as "child pornography" have become highly inflammatory
and thus their use in the indictment would tend to cause feelings
of revulsion and scorn on the part of the jury deliberating on
this case.  Moreover, the indictment charges that these materials
are "commonly known" as child pornography.  The term "commonly
known" implies that there is a guiding definition of "child
pornography" and that the materials here qualify under it.  The
phrase "commonly known as child pornography" is an incendiary and
loaded term, the only purposes of which appear to be to place the
defendant in the worst possible light and increase the likelihood
that the jury will desire to punish defendant for mere possession
of the materials involved in this case, even though possession in
his home for personal use is protected by the Constitution.
Stanley v. Georgia, 394 U.S. 557 (1969).

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006
———
AREA CODE 202
331-5000

- 3 -

In fact, use of the phrase in the indictment is
completely unnecessary, irrelevant and immaterial to the charges
brought in this case.  The Supreme Court has held that the
statutory provisions at issue in this case only proscribe only
the mailing or importation of "obscene" material, and that
prosecution based upon the remainder of the terms in the statute
is unconstitutional.  See Roth v. United States, 354 U.S. 476
(1975).  It is not a grounds for prosecution under this statute
that material is pornographic -- the legal question is whether
the material is obscene.  Nor does this statute contain any
special proscriptions about the use or depiction of children in
such material.  Thus, in order to convict under these provisions
it is not necessary or sufficient to allege or prove that the
materials involved constitute "child pornography"; the question
is whether the materials are "obscene."[1/]

Perhaps more importantly, defendant has offered to
stipulate that the materials at issue here are obscene and that
they are covered by the statute.  Thus there is no reason
whatsoever to further characterize in any way these materials.
See, e.g., Poore, 594 F.2d at 41 (court holds that nature of
prior felony conviction must be stricken from indictment because

---

[1/]   The government appears to be utilizing the language of the
Child Protection Act of 1984, 18 U.S.C. § 2254, which
existed at the time of indictment and does outlaw child
pornography even if not otherwise obscene.  But defendant
here is not charged under that statute, and could not be,
because the law was enacted after the mailing that forms the
basis of this indictment.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 4 -

defendant agreed to stipulate to the prior conviction and because the nature of the conviction is not a necessary element of the statutory offense charged); <u>United States</u> v. <u>Kemper</u>, 503 F.2d 327, 329 (6th Cir. 1974)(same), <u>cert. denied</u>, 419 U.S. 1124 (1975).

### Conclusion

For all the foregoing reasons defendant respectfully requests that the phrase "commonly known as child pornography" be stricken from both counts in the indictment.

Respectfully submitted,

WILLIAMS & CONNOLLY

By: _____
    David Povich
    Richard S. Hoffman

    839 Seventeenth Street, N.W.
    Washington, D.C.   20006
    (202) 331-5000

Dated:  July 11, 1986

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 5 -

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion to Strike Prejudicial Surplusage in Indictment and Memorandum in support were mailed, first-class, postage prepaid this 11th day of July, 1986, to Ronald Dixon, Assistant United States Attorney, 555 4th Street, N.W., Washington, D.C.  20001.

Richard S. Hoffman

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUL 29 1986

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    )
                             )
            v.               )      Criminal No. 85-00033
                             )      Judge John Garrett Penn
GEORGE A. NADER,             )
                             )
            Defendant.       )
_____)

### DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL

Defendant, George A. Nader, hereby moves pursuant to Fed. R. Crim. Pro. 29 at the close of the government's case for a judgment of acquittal. The grounds for this motion are:

1. The government has failed as a matter of law to present evidence sufficient to sustain a conviction under 18 U.S.C. § 1461. Section 1461 does not apply to those who receive and order obscene material through the mails.

2. The government has failed as a matter of law to present evidence sufficient to sustain a conviction under 18 U.S.C. § 1462. Section 1462 does not apply to use of the United States mails and there is no evidence of any other method of transportation in this case.

In support of this motion, defendant relies on the statutes cited, the memorandum in support of this motion, and the arguments of counsel at any hearing held by this Court.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 1 -

Respectfully submitted,

WILLIAMS & CONNOLLY

By: _____
David Povich
Richard S. Hoffman

839 Seventeenth Street, N.W.
Washington, D.C.   20006
(202) 331-5000

Dated:   July 29, 1986

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

— 2 —

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    )
                             )
         v.                  )      Criminal No. 85-00033
                             )      Judge John Garrett Penn
GEORGE A. NADER,             )
                             )
            Defendant.       )
_____)

MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR
A JUDGMENT OF ACQUITTAL

     The government's case against defendant George Nader is
based upon the theory that Mr. Nader violated 18 U.S.C. §§ 1461
and 1462 by allegedly ordering for his personal possession and
use, without an intent to distribute, the contents of an envelope
mailed from Holland to Washington, D.C.  The evidence against Mr.
Nader consists solely of a statement allegedly made by the
defendant and the fact that his last name and address appear on
the envelope.  Because even if the court accepts the
prosecution's evidence, the statutes under which Mr. Nader is
charged do not make it a crime to order obscene material for
personal use, the defendant is entitled to a verdict of acquittal
as a matter of law.

     I.   Section 1461 Does Not Prohibit Receiving
         Or Ordering Obscene Material For Personal Use

     Section 1461 criminalizes the sending of obscene
material, not receiving such material.  United States v. Sidelko,
248 F. Supp. 813 (M.D.Pa. 1964).  In Sidelko the government

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

charged that the defendant "knowingly caused certain obscene material to be delivered to him by mail." Id. at 813.  The court dismissed the indictment at the close of the evidence, holding that the statute "was not intended to apply to persons who order and receive such matter for personal use and consumption." Id. at 815.  The court explained that prior to 1958, Section 1461 provided criminal penalties for "whoever knowingly deposits for mailing or delivery" unmailable matter. Sidelko, 248 F. Supp. at 813 (emphasis in original).  The offense "was confined to the sender" of the obscene material and for that reason used the word "deposit" in the mails. Id.

In 1958 Congress changed the statute to substitute the phrase whoever knowingly "uses the mails" rather than " deposits" in the mail.  The amendment was in response to the decision in United States v. Ross, 205 F.2d 619 (10th Cir. 1953), which held that an accused could only be prosecuted in the place of deposit of obscene material. Sidelko, 248 F. Supp. at 813.  In Reed Enterprises v. Corcoran, 354 F.2d 519, 521 (D.C. Cir. 1965), this Circuit specifically recognized that "[i]t was to reverse the Ross-imposed limitation on venue under the obscenity statutes that Congress passed the 1958 amendment." Accord, Reed Enterprises v. Clark, 278 F. Supp. 372, 378-79 (D.D.C. 1967) (three-judge court)("The legislative history of those amendments leaves no doubt that what Congress was trying to do was to . . . avoid the impact of the Ross case."), aff'd, 390 U.S. 457 (1968) (per curium).  The three-judge court in Clark reviewed the

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 2 -

legislative history in depth and conclusively established that
the sole purpose of the amendment was to make mailing obscene
material a continuing offense.  278 F. Supp. at 377-80.  The
focus of Congress was decidedly on the "promoters" of obscene
material and the legislation applied only to "those who seek
profit from pornography."  Id. at 379, quoting 104 Cong. Rec. at
8043-46 (May 19, 1958).

 Based upon the legislative history, the court in Sidelko
concluded:

> Therefore, it appears that the 1958 Amendment
> was designed to offset the holding of the Ross
> case to the effect that under section 1461, as
> then interpreted, the unlawful act was the
> deposit for mailing and not a use of the mails
> which may follow such deposit.  According to
> the legislative history mentioned herein,
> Congress amended section 1461 to include "use
> of the mails" rather than the "deposit" so
> that one who deposited obscene matter in the
> mails could be prosecuted not only at the
> place of deposit, but also in any district
> from, through, or into which the mail matter
> moves . . . . There is nothing in the
> amendment or its legislative history to
> indicate that Congress intended to expand the
> class of offenders to those recipients who
> order and receive nonmailable materials
> through the mails for purely private
> consumption.

United States v. Sidelko, 248 F. Supp. at 815 (emphasis in
original).

 Sidelko also rejected the government's argument that the
phrase "causes to be delivered according to the direction
thereon" could be used to expand the coverage of the statute to
include one who ordered the material for personal use:

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

> I conclude that the statutory language
> "(w)hoever . . . knowingly causes to be
> delivered by mail according to the direction
> thereon . . ." was not intended to apply to
> persons who order and receive such matter for
> personal use and consumption.  If Congress had
> intended such coverage it could have been
> spelled out very easily in appropriate
> language.  That such was not the Congressional
> intention is demonstrated by the fact that the
> statute does make special reference to those
> who take nonmailable matter from the mails,
> but only where it is taken for the purpose of
> circulating or otherwise disposing of it.

Id. (emphasis added). [1]/

The decisions in Sidelko, Corcoran and Clark remain the law today.  Section 1461 has always been restricted in its application to those who send and distribute non-mailable matter.  The amendment to the statute to include the phrase "use the mails" merely expended the venue for such prosecution, it did not expand the class of offenders.  The evidence presented against Mr. Nader for allegedly violating that statute by ordering and receiving obscene magazines is insufficient as a matter of law and a judgment of acquittal must be entered.

---

1/  This conclusion is buttressed by the fact that in 1984, after the events charged in this indictment, Congress adopted the Child Protection Act, 18 U.S.C. § 2252, which specifically provides criminal penalties for any person who "knowingly receives" material depicting minors engaged in sexually explicit conduct.  18 U.S.C. § 2252(a)(2).  That change in the law had not yet been enacted and cannot apply to this case.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

## II.   Section 1462 Does Not Apply To Mailings

The government fares no better under its § 1462 charge.  Section 1462 applies to "[w]hoever brings into the United States . . . or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce" obscene material.  The precursor of § 1462 was passed in 1897 as a supplement to the Comstock Act, which had prohibited mailing of obscene material since 1873.  29 Stat. 512, 54th Cong., 2d Sess. (1897); see Schauer, The Law of Obscenity at 171 (1976).  The new section was designed to "complete the exercise of federal power in the obscenity area" by outlawing methods of transporting obscene material not already covered by then-existing law.  See Schauer, The Law of Obscenity at 21.

In 1905 Congress amended the common carrier statute to add the language prohibiting bringing obscene material into the United States.  33 Stat. 705, 58th Cong., 3d Sess. (1905).  The legislative history of that amendment indicates clearly that Congress was not providing additional regulation of use of the mails, but was legislating regarding interstate and foreign shipment by other means.  After moving for passage of the bill, the Senate sponsor engaged in the following colloquy:

> Mr. CLAPP.  From the Committee on Interstate Commerce I report back favorably, without amendment, the bill (H.R. 9493) to amend the act of February 8, 1897, entitled "An act to prevent the carrying of obscene literature and articles designed for indecent and immoral use from one State or Territory into another State of Territory," so as to prevent the importation and exportation of the same, and I

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

> ask unanimous consent for its present
> consideration.
>
> The Secretary read the bill.
>
> The PRESIDENT pro tempore. Is there objection
> to the consideration of the bill?
>
> .   .   .
>
> Mr. LODGE.  Can the Senator tell me what the
> purpose of the bill is?
>
> Mr. CLAPP:  It is to apply the same
> restrictions on the carriage of obscene matter
> by express companies, etc., that are now
> applied under the postal laws to the carriage
> of that matter by mail carriers.
>
> Mr. LODGE.  I have no objection to the bill.
>
> Mr. KEAN.  Let the bill be again read.
>
> Mr. GALLINGER.  It applies to express
> companies particularly.
>
> Mr. KEAN.  It is all right, Mr. President.
> There being no objection, the bill was
> considered as in Committee of the Whole.
> The bill was reported to the Senate without
> amendment, ordered to a third reading, read
> the third time, and passed.

39 Cong. Rec. 1624 (58th Cong., 3d Sess. 1905) (emphasis

supplied).  This colloquy confirms that Congress did not intend

to alter the scope of the prohibition on mailing obscene

material, covered by section 1461, when it amended section

1462.  The regulation of the use of the mails was already

accomplished to the extent desired by Congress under section

1461.  The statute that is now section 1462 applies to other

methods of transportation -- either a person bringing material

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

into the United States or use of a common carrier to transport prohibited material.[3/]

The interpretation that § 1462 applies to bringing obscene material into the United States by means other than the mails is also supported by several principles of statutory construction and the language of the two statutes.

First, "the Court has stressed repeatedly that 'when choice has to be made between two readings of what Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.'" Dowling v. United States, 105 S. Ct. 3127, 3132 (1985), quoting Williams v. United States, 458 U.S. 279, 290 (1982); see also United States v. Bass, 404 U.S. 336, 347 (1971)(same). Second, as the Court made clear in Dowling, where there is a specific statute governing the defendants conduct that does not make it criminal, the courts should not construe a more general language in another statute to criminalize the same conduct. 105 St. Ct. at 3136-39 (where copyright act did not include criminal penalties for infringement, Court would not construe generally prohibition on

---

[3/]   In the more than 100 years since the Comstock Act was enacted there have been hundreds of prosecutions under § 1461 and its predecessor statutes for illegally using the mails to transport in interstate or foreign commerce obscene material; but there is not a single reported prosecution under § 1462 for "importation" by mailing.  There are, however, many prosecutions under § 1462 for using common carriers to ship prohibited items.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

transporting goods taken by fraud to include transporting pirated material).  Third, it is settled that statutes governing similar conduct should be read consistently so as not to make any portion of the companion statute superfluous.  See generally 2A Sutherland Statutory Construction § 51.03 at 298-300 (1973).  All three of these principles support the view that section 1462 does not apply to mailings.

Section 1461 provides comprehensive regulation of the sending of obscenity through the mail.  Congress determined to punish the sender of material, not the receiver, unless the person who takes material from the mails does so with an intent to distribute.  See Sidelko, 248 F. Supp. at 815.  To interpret the words "brings into the United States" to include someone who orders through the mail for private use would destroy this statutory framework by criminalizing conduct Congress left out of the mailing statute.

Moreover, there is clear evidence that Congress intended § 1462 to be consistent with, not contradict, the scope of § 1461.  Prior to 1958, section 1462 prohibited the "depositing of" obscene material with an express company or common carrier.  The statute was amended at the same time as the mailing statute and for exactly the same purpose -- to expand the venue provisions to reverse the effect of United States v. Ross, 205 F.2d 619 (10th Cir. 1953).  See Reed Enterprises v. Corcoran, 354 F.2d at 521, 522; 1958 U.S. Code Cong. & Admin. News at 4012-15.  The common carrier section of the statute, just as the mailing statute, applies to those who deposit obscene material for shipment in

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

- 8 -

interstate commerce.  <u>See</u> <u>United States</u> v. <u>Gold</u>, 378 F.2d 588, 594 (9th Cir. 1967)("we conclude the interstate commerce is 'used' and a crime committed under section 1462 when proscribed material has been deposited with a common carrier . . .").  Thus, both sections focus on the distributor or sender of obscene material.

Finally, where transportation of obscene material is by other than personal delivery, Congress in both sections 1461 and 1462 specifically dealt with one who "knowingly takes from" the mails or common carrier such material.  If "bringing" had meant mailing, presumably Congress would have included a provision for "taking" material brought into the United States so as to keep that term consistent with the language of both statutes when a third-party carrier is used to transport the prohibited items.  There is no parallel provision for the phrase "brings into the United States" because that phrase applies to a person carrying prohibited material into the country and not use of the mails.

The government's prosecution of Mr. Nader under § 1462 for allegedly ordering through the mail obscene material is an attempt to get around the limited scope of the mailing statute.  Because mailing is not covered by § 1462, defendant is entitled to a judgment of acquittal.

## CONCLUSION

For the reasons stated, defendant George Nader is entitled to a judgment of acquittal on both Counts I and II of the indictment.

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

Respectfully submitted,

WILLIAMS & CONNOLLY

By: _____
    David Povich
    Richard S. Hoffman

    839 Seventeenth Street, N.W.
    Washington, D.C.  20006
    (202) 331-5000

Dated:   July 29, 1986

LAW OFFICES
WILLIAMS & CONNOLLY
HILL BUILDING
WASHINGTON, D.C. 20006

AREA CODE 202
331-5000

**SUBPOENA**

| **United States District Court** | **DISTRICT** District of Columbia |
|---|---|

| United States of America | **DOCKET NO.** 85-00033 |
|---|---|
| | **TYPE OF CASE** ☐ CIVIL ☒ CRIMINAL |
| **v.** | |
| George A. Nader | **SUBPOENA FOR** ☒ PERSON ☐ DOCUMENT(S) or OBJECT(S) |

TO:

Gwynneth M. Moolenaar

**YOU ARE HEREBY COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above-entitled case.

| PLACE | COURTROOM |
|---|---|
| United States District Court 3rd Street and Constitution Avenue Washington, D.C. | Honorable John Garrett Penn |
| | **DATE AND TIME** July 30, 1986 10:00 a.m. |

**YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s): [1]

☐ See additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| U.S. MAGISTRATE(2) OR CLERK OF COURT JAMES F. DAVEY | DATE July 25, 1986 |
|---|---|
| (BY) DEPUTY CLERK Melinda L. Pugh | |

This subpoena is issued upon application of the:

☐ Plaintiff   ☒ Defendant   ☐ U.S. Attorney

ATTORNEY'S NAME AND ADDRESS
Richard S. Hoffman
Williams & Connolly
839 17th Street, N.W.
Washington, D.C.

(1) If not applicable, enter "none."
(2) A subpoena shall be issued by a magistrate in a proceeding before him, but need not be under the seal of the court. (Rule 17(a), Federal Rules of Criminal Procedure.)

## RETURN OF SERVICE[3]

| RECEIVED BY SERVER | DATE July 25, 1986 | PLACE WILLIAMS & CONNOLLY |
| --- | --- | --- |
| SERVED | DATE July 25, 1986 | PLACE WILLIAM & CONNOLLY |

| SERVED ON (NAME) Gwynneth Moolenaar | FEES AND MILEAGE TENDERED TO WITNESS[4]  ☒ YES  ☐ NO  AMOUNT $ 30 (fees previously tendered for 7/22 subp.) |
| --- | --- |
| SERVED BY RICHARD S. HOFFMAN | TITLE ATTORNEY |

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
| --- | --- | --- |
| — | — | — |

### DECLARATION OF SERVER[4]

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ___7/28/86___
Date

Signature of Server

839 17TH ST. NW , WASH DC 20006
Address of Server

ADDITIONAL INFORMATION

(3) As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(4) "Fees and mileage need not be tendered to the deponent upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

**SUBPOENA**

| 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱 | DISTRICT District of Columbia |
|---|---|
| United States of America | DOCKET NO. 85-00033 |
| v. | TYPE OF CASE  ☐ CIVIL   ☒ CRIMINAL |
| George A. Nader | SUBPOENA FOR  ☒ PERSON   ☐ DOCUMENT(S) or OBJECT(S) |

TO:

Gwynneth M. Moolenaar

**YOU ARE HEREBY COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above-entitled case.

| PLACE | COURTROOM |
|---|---|
| United States District Court 3rd Street and Constitution Avenue Washington, D.C. | Honorable John Garrett Penn |
| | DATE AND TIME July 30, 1986 10:00 a.m. |

**YOU ARE ALSO COMMANDED** to bring with you the following document(s) or object(s):[1]

☐ See additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| U.S. MAGISTRATE(2) OR CLERK OF COURT  JAMES F. DAVEY | DATE July 25, 1986 |
|---|---|
| (BY) DEPUTY CLERK  *Melinda L. Pugh* | |

ATTORNEY'S NAME AND ADDRESS
Richard S. Hoffman
Williams & Connolly
839 17th Street, N.W.
Washington, D.C.

This subpoena is issued upon application of the

☐ Plaintiff   ☒ Defendant   ☐ U.S. Attorney

(1) If not applicable, enter "none."
(2) A subpoena shall be issued by a magistrate in a proceeding before him, but need not be under the seal of the court. (Rule 17(a), Federal Rules of Criminal Procedure.)

## RETURN OF SERVICE(3)

| | | | |
|---|---|---|---|
| **RECEIVED BY SERVER** | DATE July 25, 1986 | PLACE | WILLIAMS & CONNOLLY |
| **SERVED** | DATE July 25, 1986 | PLACE | WILLIAM & CONNOLLY |

**SERVED ON (NAME)**

Gwynneth Moolenaar

**FEES AND MILEAGE TENDERED TO WITNESS(4)**

☒ YES   ☐ NO   AMOUNT $ 30

(fees previously tendered for 7/22 subp.)

**SERVED BY**

RICHARD S. HOFFMAN

**TITLE** ATTORNEY

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| — | — | — |

### DECLARATION OF SERVER(4)

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ___7/28/86___
　　　　　　　　*Date*

*Signature of Server*

839 17TH ST. NW , WASH DC 20006
*Address of Server*

**ADDITIONAL INFORMATION**

(3) As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(4) "Fees and mileage need not be tendered to the deponent upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 86-3008

United States of America

v.

David Henry Fuller,
                    Appellant

**FILED**

**AUG 2 6 1986**

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

September Term, 1985
CR 85-00088-01

United States Court of Appeals
For The District of Columbia Circuit

**FILED   AUG 26 1986**

GEORGE A. FISHER
         CLERK

Before:  Wald, Chief Judge

### O R D E R

Upon consideration of appellant's motion to dismiss appeal pursuant to Fed. R. App. Pro. 42(b), and appellant having set forth in a statement that he understands a voluntary dismissal "...mean(s) that my conviction shall become final...", it is

ORDERED, by the Court, that the aforesaid motion is granted and this appeal is dismissed.

The Clerk is directed to transmit a certified copy of this order to the District Court in lieu of formal mandate.

COURTRAN

A true copy:
    Test: George A. Fisher
    United States Court of Appeals
    for the District of Columbia Circuit

By: *Rosemary Costigan* ___ Deputy Clerk

**DEFENDANT'S EXHIBIT**

CRIMINAL NO. 85-00033

Atty = Gabriel Fornia

George A. Nobles
v.
U.S

CO-101
Rev 10/79

| NUMBER | | MARKED FOR IDENTIFICATION | RECEIVED INTO EVIDENCE | WITNESS | EXHIBITS SENT TO JURY DATE & TIME |
|---|---|---|---|---|---|
| 1 | Subpoena - Request for appearance - to Mortensen | 2-7-86 | 2-10-86 | | |
| 2 | Copy of Search Warrant Inventory | 2-7-86 | " | | |
| 3 | 1 page Notes of Mortensen (blue) | 2-7-86 | — | | |
| 4 | Copy of Search Warrant Inventory obtained by Mortensen | 2-7-86 | 2-10-86 | | |
| 5 | Notes on Yellow paper (7 sheets) of Mortensen | 2-7-86 | " | | |
| 6 | Memorandum or Notibag of interview | 2-7-86 | 2-10-86 | | |
| 7 | Notes | 2-7-86 | 2-10-86 | | |

Admitted to Jury Dismissed 1-30-50

CO-101
Rev 10/79

CRIMINAL No. 85-00033

U.S.
v.
George A. Nader

AUSA - Ron Dixon, AUSA

| EXHIBIT NUMBER | | MARKED FOR IDENTIFICATION | RECEIVED INTO EVIDENCE | WITNESS | EXHIBITS SENT TO JURY DATE & TIME |
|---|---|---|---|---|---|
| 1 | Waiver | 2-7-86 | 2-10-86 | | |
| 2 | Affidavit in support of search warrant | 2-7-86 | " stipulation of defense | | |
| 3 | Three (3) color slides of postdrop | 2-10-86 | — | | |
| | | | | | |
| | Returned to Counsel 7-30-86 (JMC) | | | | |

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

JOHN GARRETT PENN
Judge

P. Hayden
Deputy Clerk

CRIMINAL    BLOTTER

Page_____ of _____ pages

May 16, 1986
Date

Court Reporter

FPI-MI—8-20-74-600 PADS-2588

| Case No. | Deft. Status | Title | Entry |
|---|---|---|---|
| 85-33 | | GEORGE A. NADER | Memorandum. (N) |
| | | | |
| COURTRAN | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

UNITED STATES ~~DISTRICT~~ COURT FOR THE DISTRICT OF COLUMBIA

PENN, J.
_Judge_

MOORE
_Deputy Clerk_

CRIMINAL BLOTTER

Page_____ of _____ pages

2-7-86
_Date_

H. Deutsch
_Court Reporter_

| Case No. | Deft. Status | Title | Entry |
|---|---|---|---|
| 85-3~~ ~~ | J | JAMES PITTMAN<br>G - Robert McDANIEL<br>D - ARTHUR LEVIN | ARR: PG to information;<br>ref + Sentence set 3/18/86,<br>1:30 PM; deft. comm. comm.<br>issued. |
| | | | Waiver of Trial by Jury,<br>Approved (FIAT) |
| | | | Waiver of Indictment<br>Approved (FIAT) |
| 85-33 | PR | George A. NADER<br>G - Ron Dixon<br>D - David Povich<br>Richard S. Hoffman<br>wit =<br>G - Gwynneth Moolenaar<br>D - Jock Garrante<br>G - Robert Northrop | Motion of deft to suppress<br>statements, heard and<br>respited until 1:30 PM,<br>2-10-86; PR |